**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT
WESTERN DIVISION**

Franklin Woods
15802 State Route 104 N
Chillicothe, Ohio 45601

       Plaintiff,

Vs.

Aramark Correctional Services LLC
2400 Market Street
Philadelphia Pa, 19103-3041

       Defendant,
And

Jane/John Doe "Aramark Supervisor"
5787 State Route 63
Lebanon Ohio, 45036

       Defendant,

Jane Doe known as "Ms.Woods"
5787 State Route 63
Lebanon Ohio, 45036

       Defendant,

And

Wanza Mitchell –Jackson
5787 State Route 63
Lebanon Ohio, 45036

       Defendant,


And

Case No: 2:22-CV-04420

Judge: Marbely
Magistrate Judge: Deavers

**SECOND AMENDED
CIVIL COMPLAINT**

**JURY DEMAND ENDORSED**

1

Isaac Bullock
5787 State Route 63
Lebanon Ohio, 45036

     Defendant,
And

 Sgt. J. Maggard,
5787 State Route 63
Lebanon Ohio, 45036

     Defendant,
And

Steven Williams
5787 State Route 63
Lebanon Ohio, 45036

     Defendant,
And

Rodney Macintosh
5787 State Route 63
Lebanon Ohio, 45036

     Defendant

And

Jane Doe known as "Case Manager Kearns
5787 State Route 63
Lebanon Ohio, 45036

     Defendant,
And

Karen Stanforth,
4545 Fisher Rd.,
Columbus Ohio, 45321.

     Defendant,

And

Captain David Agee
5787 State Route 63
Lebanon Ohio, 45036

       Defendant,
And

Captain Jason Back,
5787 State Route 63
Lebanon Ohio, 45036

       Defendant,
And

Lt. Tim Tatman,
5787 State Route 63
Lebanon Ohio, 45036

       Defendant,
And

Lt. David Sandridge "Sandman"
5787 State Route 63
Lebanon Ohio, 45036

       Defendant,
And

"C.O Koch",
5787 State Route 63
Lebanon Ohio, 45036

       Defendant,
And

C.O John Wells
5787 State Route 63
Lebanon Ohio, 45036

       Defendant,
And

C.O Ms. Sedlitz
5787 State Route 63
Lebanon Ohio, 45036

   Defendant,

And

Meredyth McLaughlin
5787 State Route 63
Lebanon Ohio, 45036

   Defendant,

And

Sky Murray
5787 State Route 63
Lebanon Ohio, 45036

   Defendant,

And

Rachel Allen
5787 State Route 63
Lebanon Ohio, 45036

   Defendant,

And

Dr. William Harlan
5787 State Route 63
Lebanon Ohio, 45036

   Defendant,

And

Dr. Raymond Corbett
5787 State Route 63
Lebanon Ohio, 45036

   Defendant

C.O Ms. Kimberly Panunzio
5787 State Route 63
Lebanon Ohio, 45036

   Defendant,

And

Deputy Warden Douglas Luneke,
5787 State Route 63
Lebanon Ohio, 45036

      Defendant.

C.O Fredrick Epperson,
5787 State Route 63
Lebanon Ohio, 45036

      Defendant.

C.O Larry Farmer,
5787 State Route 63
Lebanon Ohio, 45036

      Defendant,

Lt. Kayla Stebelton
5787 State Route 63
Lebanon Ohio, 45036

      Defendant,

Deputy Warden Robert Welch
5787 State Route 63
Lebanon Ohio, 45036

## JURISDICTION

¶ 1. This court has jurisdiction over civil rights violations U.S section 1983 cases.

## PLAINTIFF PARTIES

¶ 2. Franklin Woods, is a Plaintiff in this action whose address is P.O box 5500 Chillicothe Ohio, 45601, Plaintiff was an inmate housed at Warren Correctional Institution.

## DEFENDANT PARTIES

¶ 3. Aramark Correctional Services, is a Defendant in this action who's address 5787 State Route 63 Lebanon Ohio, 45036 this Defendant is being sued in its individual and official capacity.

¶ 4. Jane Doe known as "Ms. Woods", is a Defendant in this action who's address 5787 State Route 63 Lebanon Ohio, 45036 this Defendant is being sued in her individual and official capacity. This Defendant was employed by Aramark Correctional Service LLC as a manager.

¶ 5. Jane or John Doe, Aramark Supervisor is a Defendant in this action who's address 5787 State Route 63 Lebanon Ohio, 45036 this Defendant is being sued in their individual and official capacity. This Defendant was employed by Aramark Correctional Service LLC as a supervisor over the food coordinator's and inmates overseeing the operation of Aramark within the institution at WCI.

¶ 6. Wanza Mitchell –Jackson, is a Defendant in this action who's address 5787 State Route 63, Lebanon Ohio, 45036. This Defendant is being sued in her individual and official capacity. This Defendant was employed as the Warden of Warren Correctional Institution.

¶ 7. Isaac Bullock, is a Defendant in this action who's address 5787 State Route 63, Lebanon Ohio, 45036. This Defendant is being sued in his individual and official capacity. This Defendant was employed by Ohio Department of Rehabilitation and Corrections as an institutional inspector at Warren Correctional Institution.

¶ 8. "Sgt. J. Maggard", is a Defendant in this action who's address 5787 State Route 63, Lebanon Ohio, 45036, this Defendant is being sued in his individual and official capacity. This Defendant was employed by Ohio Department of Rehabilitation and Corrections, as a Correctional Officer Sergeant at Warren Correctional Institution.

¶ 9. "Unit Manager" Steven Williams, is a Defendant in this action who's address 5787 State Route 63, Lebanon Ohio, 45036, this Defendant is being sued in his individual and official capacity. This Defendant was employed by Ohio Department of Rehabilitation and Corrections as a Correctional Officer Unit Manager at Warren Correctional Institution.

¶ 10. "Case Manager" Ms. Kearns, is a Defendant in this action who's address, 5787 State Route 63, Lebanon Ohio, 45036, this Defendant is being sued in her individual and official capacity. This Defendant was employed by Ohio Department of Rehabilitation and Corrections as a Correctional Officer Case Manager at Warren Correctional Institution.

¶ 11. Karen Stanforth, is a Defendant in this action who's address 4545 Fisher Rd., Columbus Ohio, 45321, this Defendant is being sued in her individual and official capacity. This Defendant was employed by Ohio Department of Rehabilitation and Corrections. Acting on behalf of the Chief Inspector Office as Assistant Chief Inspector for Medical.

¶ 12. David Agee, is a Defendant in this action who's address 5787 State Route 63, Lebanon Ohio, 45036, this Defendant is being sued in his individual and official capacity. This Defendant was employed by Ohio Department of Rehabilitation and Corrections as a Correctional Officer Captain at Warren Correctional Institution.

¶ 13. Lt. Tim Tatman, is a Defendant in this action who's address, 5787 State Route 63, Lebanon Ohio, 45036, this Defendant is being sued in his individual and official capacity. This Defendant was employed by Ohio Department of Rehabilitation and Corrections as a Correctional Officer Lieutenant at Warren Correctional Institution.

¶ 14. Lt. David Sandridge, is a Defendant in this action who's address 5787 State Route 63, Lebanon Ohio, 45036, this Defendant is being sued in his individual and official capacity. This Defendant was employed by Ohio Department of Rehabilitation and Corrections as a Correctional Officer Lieutenant at Warren Correctional Institution.

¶ 15. C.O Koch, is a Defendant in this action who's address 5787 State Route 63, Lebanon Ohio, 45036, this Defendant is being sued in his individual and official capacity. This Defendant was employed by Ohio Department of Rehabilitation and Corrections as a Correctional Officer at Warren Correctional Institution.

¶ 16. C.O Fredrick Epperson, is a Defendant in this action who's address 5787 State Route 63, Lebanon Ohio, 45036, this Defendant is being sued in his individual and official capacity. This Defendant was employed by Ohio Department of Rehabilitation and Corrections as a Correctional Officer at Warren Correctional Institution.

¶ 17. C.O Larry Farmer, is a Defendant in this action who's address 5787 State Route 63, Lebanon Ohio, 45036, this Defendant is being sued in his individual and official capacity. This Defendant was employed by Ohio Department of Rehabilitation and Corrections as a Correctional Officer at Warren Correctional Institution.

¶ 18. C.O John Wells, is a Defendant in this action who's address 5787 State Route 63, Lebanon Ohio, 45036, this Defendant is being sued in his individual and official capacity. This Defendant was employed by Ohio Department of Rehabilitation and Corrections as a Correctional Officer at Warren Correctional Institution.

¶ 19. C.O Ms. Sedlitz is a Defendant in this action who's address 5787 State Route 63, Lebanon Ohio, 45036, this Defendant is being sued in her individual and official capacity. This Defendant was employed by Ohio Department of Rehabilitation and Corrections as a Correctional Officer at Warren Correctional Institution.

¶ 20. Meredyth McLaughlin is a Defendant in this action who's address 4545 Fisher Rd., Columbus Ohio, 45321, this Defendant is being sued in her individual and official capacity. This Defendant was employed by Ohio Department of Rehabilitation as the" Health-Care Administrator"

¶ 21. Nurse Practitioner "Sky Murray" worked on the 5th of December is a Defendant in this action who's address 4545 Fisher Rd., Columbus Ohio, 45321, this Defendant is being sued in her individual and official capacity. This Defendant was employed by Ohio Department of Rehabilitation and Corrections.

¶ 22. Nurse Practitioner "Rachel Allen" worked on the 5th of December is a Defendant in this action who's address 4545 Fisher Rd., Columbus Ohio, 45321, this Defendant is being sued in her individual and official capacity. This Defendant was employed by Ohio Department of Rehabilitation and Corrections.

¶ 23. Dr. William Harlan of December is a Defendant in this action who's address 4545 Fisher Rd., Columbus Ohio, 45321, this Defendant is being sued in his individual and official capacity. This Defendant was employed by Ohio Department of Rehabilitation and Corrections.

¶ 24. Dr. Raymond Corbett of December is a Defendant in this action who's address 4545 Fisher Rd., Columbus Ohio, 45321, this Defendant is being sued in his individual and official capacity. This Defendant was employed by Ohio Department of Rehabilitation and Corrections.

¶ 25. C.O. Ms. Kimberly Pannunzio, is a Defendant in this action who's address 5787 State Route 63, Lebanon Ohio, 45036, this Defendant is being sued in her individual and official capacity. This Defendant was employed by Ohio Department of Rehabilitation and Corrections as a Correctional Officer at Warren Correctional Institution.

¶ 26. Captain Jason Back, is a Defendant in this action who's address 5787 State Route 63, Lebanon Ohio, 45036, this Defendant is being sued in his individual and official capacity. This Defendant was employed by Ohio Department of Rehabilitation and Corrections as a Correctional Officer "Captain" at Warren Correctional Institution.

¶ 27. Unit Manger Chief Rodney Macintosh is a Defendant in this action who's address 5787 State Route 63, Lebanon Ohio, 45036, this Defendant is being sued in his individual and official capacity. This Defendant was employed by Ohio Department of Rehabilitation and Corrections as a Correctional Officer "Chief Unit Manager" at Warren Correctional Institution.

¶ 28. Deputy Warden Douglas Luneke, is a Defendant in this action who's address 5787 State Route 63, Lebanon Ohio, 45036. This Defendant is being sued in his individual and official

capacity. This Defendant was employed as the Deputy Warden of Warren Correctional Institution.

¶ 29. "Deputy Warden Robert Welch, is a Defendant in this action who's address 5787 State Route 63, Lebanon Ohio, 45036. This Defendant is being sued in his individual and official capacity. This Defendant was employed as the Deputy Warden of Warren Correctional Institution.

¶ 30. Lt. Kayla Stabelton is a Defendant in this action who's address 5787 State Route 63, Lebanon Ohio, 45036. This Defendant is being sued in his individual and official capacity. This Defendant was employed as the Lieutenant of Warren Correctional Institution.

## STATEMENTS OF FACTS

¶ 31. On or about November 27, 2021, Plaintiff Franklin Woods, (hereinafter "Plaintiff") was housed at Warren Correctional Institution (hereinafter "W.C.I.") in dorm 1-A, when the dorm was released for institutional dinner.

¶ 32. Plaintiff arrived in the dining hall, retrieved a tray from the serving line by Defendant Aramark and its employees, ate the food off of the tray and returned to his unit where he was housed.

¶ 33. Defendant's Aramark, Aramark's supervisor Jane /John Doe, Aramark's Correctional Service LLC "Manager Woods" and ODRC Correctional Officer's knowingly served or allowed to be served contaminated food to Plaintiff and other inmates of which was removed from a contaminated trash can.

¶ 34. Plaintiff hours later around 9:30 pm at night after he was locked in his cell, started to suffer an upset stomach, with cramping pains, severe diarrhea and vomiting.

¶ 35. Defendant's Aramark, Aramark's supervisor Jane /John Doe, Aramark's Correctional Service LLC "Manager Woods" and ODRC Correctional Officer's, recklessly or with wanton disregard for the Plaintiff and other inmate's health and Safety stood by while the inmates ate the contaminated food.

¶ 36. Defendants Aramark Correctional Service LLC personnel failure to practice good food handling procedures and sanitation to prevent outbreaks of food poisoning Ohio Department of Rehabilitation Corrections (herein after ODRC) Policy 68-MED-04 (G) ref Food Poisoning. Institution safety and health coordinators shall monitor this issue within their institutions as outlined in ODRC Policy 10-SAF-08, Facility Sanitation and Inspection Practices.

¶ 37. Plaintiff followed the recommendation given to him at orientation[1] inmates are discouraged from kiting Medical unless absolutely required, to help enforce this policy ODRC, charges inmates a co-pay for just sending in the request to be seen.

¶ 38. Plaintiff attempted to wait out the illness believing he would just get better, to avoid going to medical and being charged a $3.00 co-pay and being told by the staff he was wasting their time as that behavior is frowned upon within the institution.

¶ 39. The following days Monday to on or about Wednesday, Plaintiff continued to experienced abnormal bowel movements, pain in his stomach and vomiting. He sent in a paper Medical request form to be seen by Medical. Where He wrote on it "My stomach is upset and I have been having pains for the past couple days". He turned in the written request. [2]

¶ 40. Plaintiff repeatedly informed his friends and family of the discomfort he was experiencing during the time frame. WCI's phone calls are recorded and call records can be obtained to show the discussions.

¶ 41. On December 01, 2021 Lt. Kayla Stebelton reviewed the video footage of the Aramark incident and completed an incident report. In her report Lt. Kayla Stebelton acknowledges that,

¶ 42. "On 12/01/2021 I, Lt. Stebelton reviewed video footage of an alleged incident that occurred in rear food service on 11/27/2021. While reviewing the footage the following was found; on 11/27/2021 at 6:20pm on WCI-food service Cook area2 camera, inmate Smith (743-659) dumps food from the serving container into the trash can. It appears they realized after dumping the food that they still needed it. At 6:25pm Aramark Manager Woods is observed using the pitcher and scooping the food out of the trash can into an empty container that inmate Smith is carrying. Inmate Smith is then observed carrying the food to the serving line in the small chow hall and the food is served to the inmates coming to chow. At 6:26 pm a rear food service porter is seen sweeping the floor and dumping the dust pan into the same trash can containing the remains of the discarded food. At 6:27 PM Aramark Woods brings in another empty container near the trash can for inmate Burton (667-877) to scoop more food from the trash can that has now had trash dumped on top from the porter who swept the floor. Aramark Woods stirs in water to the food in the container that came from the trash can and at 6:30 PM inmate Burton takes the food to the main chow hall to be served. Aramark Woods is responsible for serving inmates food from the trash can which is a major health code violation. Both inmates involved have been removed from food service. Video footage has been captured and Deputy Warden Welch was notified". End of report. There is a signature of the Managing Officer dated on 12/03/2021. A copy of the incident report and video will be attached with this Second Amended complaint. See Exhibit (1) incident report and video footage of Aramark incident.

¶ 43. Lt. Kayla Stebelton became aware of Plaintiff's housing unit being exposed to contaminated food, yet never informed the Plaintiff to seek medical attention for food poisoning.

---

[1] Inmates are given orientation when they arrive at each institution, where they are provided rules and procedures to follow in case of an emergency or an issue.

[2] Inmates must turn in their Medical request forms in a box when they go eat.

Lt. Kayla Stebelton acted with deliberate indifference to Plaintiff health and safety when she failed her duties to make Plaintiff aware of the food being contaminated which was the reason he was ill.

¶ 44. Lt. Kayla Stebelton, was deliberate indifferent to the Plaintiff's health and safety when she failed her duties and allowed W.C.I administration to falsely quarantine the Plaintiff when he sought medical attention for his illness. Lt. Kayla Stebelton and W.C.I administration attempted to cover up the fact the Plaintiff has been intentionally food poisoned by Defendant Aramark Manger Woods. Lt. Stebelton never requested medical attention for the Plaintiff.

¶ 45. Deputy Warden Robert Welch was emailed a copy of the incident report that was filed on 12/01/2021 by Lt. Stebelton. Deputy Warden Robert Welch never informed the Plaintiff that he was exposed to contaminated food due to it being in the trash can and having trash that was swept from the prison floor dumped on top of it. Deputy Warden Robert Welch was deliberate indifferent to Plaintiff's health and safety when he didn't issue W.C.I. administration to escort the Plaintiff to medical immediately upon his knowing of this incident. Deputy Warden Robert Welch at least signed the incident report on 12/03/2021 and yet the Plaintiff did not go to medical until 12/05/2021 allowing the continued suffering. Plaintiff ate the contaminated food on 11/27/2021.

¶ 46. Deputy Warden Robert Welch was deliberate indifferent to the Plaintiff health and safety when he allowed the continued suffering for a week before he was escorted to medical. Plaintiff had to send several Health service requests forms, was harassed and intimidated by W.C.I. staff all prior to being escorted to the medical department.

¶ 47. Deputy Warden Robert Welch, Lt. Kayla Stebelton, Aramark Correctional Services LLC, ODRC, and W.C.I administration each attempted, and has engaged in collusion, and engaging in a pattern of corrupt activity when they failed to release names, times, and dates when Plaintiff was exposed to and ate the contaminated food. This is all an effort to protect Aramark and ODRC at all costs. Even at the cost of Plaintiff's health and safety, the Defendants each and together have violated the Plaintiff's constitutional rights to be free from Cruel and Unusual Punishment, and Equal Protection under the law.

¶ 48. On Thursday December 02, 2021 the Plaintiff was informed by staff after a conversation was held where he indicated to the Correctional Officer that he was seriously ill of some sort of food poisoning or virus, after he shared his symptoms of what he experienced. The staff member inquired about the time frame and asked if he had eaten dinner on the night the discomfort started. Plaintiff conceded that he did and was informed that on that same night inmates Edward Smith, and Richard Burton, who were not known to him both worked at Aramark as inmate workers, and alerted Lieutenant "Sandman" Sandridge, and Correctional Officer Ms. Sedlitz that Defendant Jane Doe known as "Ms. Woods" Aramark Correctional Services LLC Food Manager, had retrieved beans from a contaminated trash can, and had them placed on trays to be served.

¶ 49. Plaintiff was informed inmates Smith, and Burton, were placed in Segregation in an attempt to silence them.

¶ 50. Defendant's named in Paragraphs 3 through 30 (as if fully rewritten herein) acted recklessly or with wanton disregard for the Plaintiff and other inmate's health and safety attempted to cover up that Plaintiff and other inmates were served contaminated food retrieved from a trash can.

¶ 51. Also on December 02, 2021 Plaintiff filed an Informal Complaint Reference number WCI1221000220 explaining to the Deputy Warden, what occurred on November 27, 2021. The Defendant Isaac Bullock, who worked as the Institutional Inspector, replied "The following issue has been verified and addressed. Corrective actions have been taken. Defendant Bullock stated "You will need to complete a Health Service request form to address your medical needs". Instead of directing staff to send Plaintiff to Medical as he could have done knowing the inmates are at a level 3 "not free to move around" and would not be seen for at least a couple days, allowing continued suffering. See Exhibit (2) Informal complaints.

¶ 52. Defendant's named in Paragraphs 3 through 30 (as if fully rewritten herein) acted recklessly or with wanton disregard for the Plaintiff and other inmate's health and Safety attempted to avoid conversation relating to the contaminated food served.

¶ 53. Plaintiff by this time was suffering worse than he had days prior instead of getting better.

¶ 54. Defendant's named in Paragraphs 3 through 30 (as if fully rewritten herein) at no time openly attempted to notify the infected inmate population that they had eaten or been served contaminated food, even after medical received complaints of illness, from numerous inmates regarding an upset stomach, cramping pains, diarrhea and vomiting.

¶ 55. Defendant's named in Paragraphs 3 through 30 (as if fully rewritten herein) staff never offered or attempted to offer at any time an apology to Plaintiff or the other affected population in regards to them being served contaminated food.

¶ 56. Plaintiff after sending in an Informal Complaint Resolution, known as an "ICR" did as he was instructed by the Inspector to contact Medical even though he had already sent in his first request to be seen. So Plaintiff filed another "Health Service" request form explaining his illnesses and pains, this time he specifically indicated that he believed he had been poisoned (sickened) by digesting contaminated food served to him by Aramark and requested to be seen.

¶ 57. Plaintiff repeatedly requested for the Defendant's Lt. and Aramark worker's names which Defendant Bullock and other Defendant's intentionally with-held attempting to restrict Plaintiff from learning their identities, even though Defendant Bullock was aware the Defendant's Lt. and other C.O.s allowed the contaminated food to be served after they were placed on notice of what occurred and reacted by placing inmates in segregation for objecting to the food being served.

¶ 58. Defendant's ODRC's medical Staff again refused to see Plaintiff attempting to aid in covering up that Plaintiff had been served contaminated food, to avoid diagnosing him, even

12

though Medical had learned that his block location 1-A was fed food out of a contaminated trash can, and had received his previous Medical Health request form, where he indicated what he was experiencing, amounting to a form of bacterial infection, and his most recent Medical Health form.[3] Which placed Medical on direct notice of his knowledge of the cause of his illnesses.

¶ 59. Medical refused to see Plaintiff or the other inmates knowingly disregarding their health and safety, knowing what they were experiencing: stomach aches, vomiting and diarrhea, clear signs of food poisoning or a bacterial infection related to something digested, Medical attempting to not diagnose the inmates with any illnesses related to the Defendant Aramark worker's feeding them out of a contaminated trash can. Thereby covering for the Defendant's allowing Plaintiff and the other inmates to suffer.

¶ 60. Medical without permission of the Plaintiff or other inmates provided a list to the Correctional Officer's, Capt.'s and Lt's. of all inmates housed in 1-A who reported stomach aches, vomiting or continued diarrhea, in violation to Plaintiff's right to privacy.

¶ 61. On Sunday December 05, 2021 approximately 6:30am Defendant C.O. Koch was making his first range check of that morning, where he informed the Plaintiff that he and the other inmates could-not come out of their cells until he and the other inmates are spoken to by the "White Shirt" referring to one of the Defendant's be it, a Major, a Captain, a Lieutenant or a Sergeant. All other inmates whose names were not provided by Medical to the Defendant C.O. Cook, were permitted out of their cells with regular movement. This can be seen by the cameras in 1-A.

¶ 62. The Defendant" Health-Care Administrator" Meredyth McLaughlin of The Medial Department violated the Health Insurance Portability and Accountability Act ("HIPPA") ODRC Policy 07-ORD-11 when they informed the C.O.s and Staff of Plaintiff's and other inmates protected health information. Medical provided the list names of each inmate that desired to be seen by them to the Defendant's Institutional Inspector Isaac Bullock, Captain Agee, Lieutenant Tatman, all without the inmate's consent.

¶ 63. Defendant David Agee, retaliated against Plaintiff and the other inmates who reported upset stomach, cramping pains, severe diarrhea or vomiting related to the Aramark food served.

¶ 64. Defendant David Agee, self-proclaimed that he personally sent in Defendant Lieutenant Tatman, as in the Plaintiff informal complaint resolution WCI1221001929. See Exhibit (1) Informal complaints.

¶ 65. On December 05, 2021 at approximately 6:45am Defendant Lieutenant Tatman entered Unit 1-A and began screaming, yelling that he has a bunch of inmates in here on some "bull-shit" who are acting like "bitches" and yelled, "I'm locking the entire Unit down, because we fired the bitch what else do you want us to do?" He continued to yell, "Your sick so what... sleep it the fuck off" He can be seen on the camera's in 1-A walking around ranting.

---

[3] The Medical box is emptied twice a day.

¶ 66. Defendant Lt. Tim Tatman, went around to the cells in unit 1-A that requested to be seen by Medical, trying to intimidate the inmates from going to Medical or further reporting what they were experiencing, he was saying "shit rolls downhill." If my staff gets in trouble over that Aramark bitch I will make your life hell. If you go to medical your ass is locked the fuck down" "it's your choice!" This can be seen by the cameras and recalled by the other inmates. See Exhibit (3) attached Affidavits.

¶ 67. Defendant Lt. Tim Tatman, threats of lock down and making inmates lives hell resulted in some inmates being intimidated into not going to Medical for fear of retaliation even though they were sick.

¶ 68. Defendant Lt. Tim Tatman, stated "I've seen what each of you mother-fuckers wrote to medical", which is confidential according to ODRC's Policy 07-ORD-11 Release of Medical Records.

¶ 69. Plaintiff and the other inmate's family and friends called up to the institution and demanded that the inmates be seen by medical or they would contact the State Troopers.

¶ 70. At approximately 9:30 am Plaintiff and (9) nine other inmates were escorted to medical by Defendant Jane Doe C.O. Ms. Kimberly Pannunzio, this can be seen by the dorm cameras in Unit 1-A and by the cameras located in Medical.

¶ 71. Defendant C.O Kimberly Panunzio escorted the Plaintiff to Medical with the group of inmates, where his blood pressure was tested as a mush fake screening. Plaintiff informed Defendant "Sky Murray" a Nurse Practitioner and another Nurse Practitioner "Rachel Allen" both of the Medical Department, of his symptoms, reporting abnormal bowel movements, pain in his stomach and that he had vomited twice, receiving no response, besides the nurse saying well we seen you.

¶ 72. Defendant "Sky Murray", a Nurse Practitioner of the Medical Department with another Nurse Practitioner "Rachel Allen" refused to provide medication or to recommend transport to an outside hospital to be checked by a doctor, regarding bacteria or other infections the Plaintiff and other inmates may have been suffering due to eating the contaminated food.

¶ 73. Defendant "Sky Murray", a Nurse Practitioner of the Medical Department with another Nurse Practitioner "Rachel Allen" are in clear violation of ODRC Policy 68-MED-04 section (G) (2) Which states Surveillance for suspected cases of food poisoning shall include:

> a.) Collection of stool sample and or food samples for examination by the local health department, in collaboration with the infection control manager;

> b.) The laboratory will coordinate submission of such samples with the Ohio Department of Health, in accordance with accepted guidelines.

¶ 74. Defendant's "Sky Murray", a Nurse Practitioner of the Medical Department and other Nurse Practitioner's "Rachel Allen", while in Medical were making jokes with the C.O.'s and laughing about the inmates being fed out of the trash cans by Aramark and being sick. "Saying this is what you signed up for coming to prison!" instead of providing care or assistance to the needs of the inmate's pain.

¶ 75. Plaintiff and the other inmates were seen by Medical then they were taken back to their unit, locked in their cells and were placed on "quarantine status" as a punishment for speaking up, the Defendant's Medical Staff and W.C.I administration staff were deliberate indifferent to the Plaintiff's health and safety, denying him medical treatment.

¶ 76. On or around November 27, 2021- January 10, 2022 Defendant's C.O Fredrick Epperson and C.O Larry Farmer whom were the Plaintiff full-time unit 1-a C. O's that failed their duties as 2nd shift Correctional Officer's and were deliberate indifferent to the Plaintiff health and safety when they disregarded multiple requests from the Plaintiff to call medical because he was extremely sick to the point he couldn't make it out of the bed, knowingly allowing the continued suffering.

¶ 77. On or around November 27, 2021- January 10, 2022 Defendant's C.O Fredrick Epperson and C.O Larry Farmer whom were the Plaintiff full-time unit 1-a C. O's that failed their duties as 2nd shift Correctional Officer's and were deliberate indifferent to the Plaintiff health and safety when they refused multiple requests on behalf of the Plaintiff to provide the names of the staff that was directly responsible for his illness.

¶ 78. On or around November 27, 2021- January 10, 2022 Defendant's C.O Fredrick Epperson and C.O Larry Farmer whom were the Plaintiff full-time unit 1-a C. O's that failed their duties as 2nd shift Correctional Officer's and were deliberate indifferent to the Plaintiff health and safety when they only allowed the Plaintiff out of his cell for 15 minutes a day to shower, make phones, check his communications regarding kites and informal complaints, or to make his meals for the day.

¶ 79. Defendant David Agee, attempted to blame COVID-19 for his reason for locking down the Plaintiff and other inmates which conflicted with Lieutenant Tim Tatman's statements and actions as "the only people" who went to medical related to upset stomachs, diarrhea, and vomiting were retaliated against by placing them on lockdown claiming COVID-19.

¶ 80. Defendant's ODRC's with the named Defendant's in Paragraphs 3 through 30 (as if fully rewritten herein) have a policy or practiced procedure in place that if an inmate is suspected of having COVID-19, that inmate will be tested and if they test positive for COVID-19, then that inmate and their institutional housing unit will be locked down "quarantined" and any other inmates that came in contact "Contact Tracing" with that inmate will be quarantined.

¶ 81. Plaintiff with the other inmates were placed on lockdown treated like they had COVID-19, for staff to justify locking them down, even though no one was tested for COVID-19 by Medical nor had any COVID-19 related symptoms.

¶ 82. Plaintiff while locked down "quarantined" was restricted from generating new Informal Complaint Resolutions "ICR's" or Grievances, where the J-pay Kiosk was restricted to prevent him from filing ICR's or Grievances against ODRC, or Medical's staff. The Kiosk allowed inmates to send Kites (other non-formal forms of communication) to read or write correspondences from family/friends. Plaintiff could read or respond to ICR's or Grievances he had already started but could not generate new ones the J-pay had a system warning and said "you are currently restricted from creating this type of communication".

¶ 83. The other inmates who also ate the contaminated food and were sick but refused to go to medical after the threats by Defendant Lt. Tim Tatman, were not placed on quarantine status nor punished in any way continuing general operations. See exhibit (3) Attached Affidavits.

¶ 84. Defendants Ms. Kimberly Pannunzio a C.O whom was the daily 1st shift officer in the Plaintiff's dorm whom was informed of inmates being harassed and tormented, due to them writing health service request forms, and writing their informal complaints regarding Aramark and ODRC staff. C.O Ms. Kimberly Pannunzio stood by idle and watch as the mistreatment took place. Ms. Kimberly Pannunzio was deliberate indifferent to Plaintiffs health and safety when she learned of the Plaintiff suffering and did nothing to aide in his wellbeing, allowing him to get worse.

¶ 85. Ms. Kearns whom was the Plaintiff case manager in his housing unit, was deliberate indifferent to the Plaintiff's health and safety. Defendants Ms. Kearns was presented with complaints about the conduct of Aramark and ODRC's staff. Defendants Ms. Kearns was informed of inmates being harassed and tormented, due to them writing health service request forms, and writing their informal complaints regarding Aramark and ODRC staff. Defendant Ms. Kearns stood by idle and watch as the mistreatment took place.

¶ 86. Defendant Ms. Kearns and Ms. Pannunzio could have prevented these violations from occurring within their housing unit. Plaintiff was harassed, bullied, and intimidated until he was transferred to Chillicothe Correctional Institution. Defendant Ms. Kearns witnessed the Plaintiff's false quarantine, witnessed the actions of their co-workers.

¶ 87. Plaintiff personally complained to Defendant C.O Ms. Kimberly Panunzio about the mistreatment they were receiving by the departments staff whenever they were able. Defendant C.O Ms. Kimberly Panunzio stood idle and watched the egregious behavior and did nothing to aide in ensuring the Plaintiff's health and safety, showing she was indifferent.

¶ 88. Plaintiff and other inmates who reported to medical were harassed, tormented, and intimidated because of their complaints regarding Aramark Correctional Services LLC and ODRC, Medical staff. Most of these inmates regularly went to Ms. Kearns whom was the case manager of the inmates that were affected by the contaminated food served by Aramark Correctional Services LLC and its employee's. Ms. Kearns stood by and observed day in and day out the violations occurring upon the inmates in her housing unit.

¶ 89. On Monday December 06, 2021 the Plaintiff was escorted back to the Medical department to be seen by Defendant William Harlan or Raymond Corbett, after Plaintiff demanded to the C.O.'s to be seen by a doctor, saying that the staff knew the inmates had food poisoning and not COVID-19 where Defendant C.O. responded "Nobody says you all have COVID-19" and would not answer as to why they were locked down when no-one else was.

¶ 90. Defendant William Harlan or Raymond Corbett, were deliberate indifferent to the Plaintiff health and safety when they failed to diagnose Plaintiff, even after the Plaintiff had communicated to the Dr. that he has intestinal issues, his stomach still hurts extremely bad, also he couldn't keep any fluids down, and still had diarrhea. The Dr. was deliberately indifferent to the Plaintiff's medical needs by not providing care, only quarantined Plaintiff and allowed his pain and misery to continue.

¶ 91. Plaintiff, while waiting to be seen by Defendant Doctor William Harlan, or Raymond Corbett in Medical Department, Defendant Warden Wanza Mitchell-Jackson, arrived and was speaking with the medical staff.

¶ 92. Plaintiff and the other inmates tried to speak with Defendant Mitchell-Jackson, but she was very frustrated, yelling about having to come in early because of "us" she refused to converse.

¶ 93. Defendant's named in Paragraphs 3 through 30 (as if fully rewritten herein) each failed to follow the policy's regarding food poisoning, Medical at no time attempted to collect stool or take food sample for examination to the local health department in collaboration with the infection control manager or according to ALP.

¶ 94. Defendant's named in Paragraphs 3 through 30 (as if fully rewritten herein) (as if fully rewritten herein) each failed to provide notification in order to cease possible causative agents from being distributed to the remaining unit in disregard to Plaintiff's health and safety.

¶ 95. Defendant William Harlan, Raymond Corbett refused to properly diagnosis Plaintiff or the other inmates even with their clear symptoms, knowing they were fed out of a contaminated trash can and kept them on "Quarantine Status" until Thursday December 09, 2021.

¶ 96. Defendant's would later deny quarantining Plaintiff and the other inmates related to COVID-19. Shown by a kite sent by Lance King inmate no: a717661 ref # WCI1221001222 who was subjected to the same behavior for reporting illness related to the contaminated food served by Aramark. See exhibit (2) informal complaints.

¶ 97. The Health Care Administrator "HCA" replied back to this kite which stated" in review of your medical file, I do not see a diagnosis for covid-19. you were assessed for influenza like illness related to reported symptoms due to the time frame from the chow hall incident" Signed (Meredyth McLaughlin).

¶ 98. On or around December 09, 2021- January 10, 2022 Defendant Deputy Warden "Douglas Luneke" held a "town hall meeting" during that meeting he stated that inmates weren't transferring institutions for at least 8 weeks, doors were to remain closed, and he wasn't answering any questions regarding "Aramark". The attendees of that meeting were Defendant's "Captain Jason Back", "Unit Manager Steven Williams", "Chief Unit Manager Rodney Macintosh", "C.O John Wells", and several other C. O's.

¶ 99. On or around December 09, 2021- January 10, 2022 Defendant" Health-Care Administrator Meredyth McLaughlin and or Employee for Medical" came into unit 1A and retrieved medical paper work held at the desk area of the unit which contained inmate's information during their quarantine status. C.O. Ms. Morris was working second shift when it occurred, it was approximately 4:30 pm- 9:00 pm.

¶ 100. Defendant's Lt. Tim Tatman, David Agee, Isaac Bullock and other's each intentionally lied in responses to the informal complaints filed by Plaintiff, attempting to cover up for Aramark Correctional Services LLC, Lt. Sandridge and C.O. Ms. Sedlitz that allowed the Plaintiff to eat the contaminated food served.

¶ 101. Defendant, Bullock and other's each intentionally refused to corporate in response to the informal complaints refusing to provide the names or information of the Aramark employee who fed him and the others contaminated food, attempting to block Plaintiff from pursuing a criminal investigation against her or the others responsible for allowing him to eat the contaminated food ref #WCI1221000220, 12-07-2021, 12-21-2021, and again on Ref#WCI1221002506,12-24-2021. See exhibit (2) informal complaints.

¶ 102. Defendant, Bullock continuously harassed Plaintiff on other occasions as stated in his informal complaint December 21, 2021, ref#WCI1221002129. Defendant Bullock was at the end of the chow line and kept aggressively staring at the Plaintiff. When the plaintiff made it to the end of the line Defendant Bullock asked the Plaintiff if there was a problem? The Plaintiff showed the Defendant the unappetizing tray of food, over cooked parsley noodles and the uncooked main, and the inspector said kite the dietician and the Plaintiff said it wasn't the diet and the Defendant repeatedly said "goodbye" the Plaintiff is emotionally distressed and mentally unstable over not able to eat a balanced and safely cooked food. See exhibit (2) informal complaints.

¶ 103. Defendant, Bullock and other's each intentionally refused to corporate in response to the informal complaints refusing to provide the names or information of the ODRC employees, such as name of the Jane/John Doe Lt. Sedlitz, and C.O. Ms. Sedlitz who instead of stopping the contaminated food from being served locked up the inmates who reported the Aramark worker actions.

¶ 104. Defendant's Lt. Sandridge, C.O. Ms. Sedlitz were deliberate indifferent to the Plaintiffs health and safety when they allowed the Plaintiff and other inmates to eat contaminated food knowing it had been reported to them that the food was retrieved from a trash can.

18

¶ 105. Defendants are in violation of ODRC Policy 68-MED-04 (G) Food Poisoning, 10-SAF-08 Sanitary Conditions violation of the Fourteenth Amendment of the United States Constitution "equal protection", First Amendment Violation "retaliation".

¶ 106. On or around January 10, 2022 all of the inmates in 1-A were being transferred to Chillicothe Correctional Institution on an emergency ride-out, even after being told prior there would be no ride outs, only 10 of the 100 inmates were classified to actually be transferred to Chillicothe Correctional Institute.

¶ 107. On January 12, 2022 the Defendant Steven Williams Unit Manager, ordered Plaintiff to come down stairs to do his pack up to be transferred.

¶ 108. Plaintiff explained to Defendant Steven Williams Unit Manager he needed to speak with the Inspector because he was awaiting his permission to have a legal box. As he had previously requested through the Institutional kite system Ref#WCI0122000939, Ref#WCI0122000952 on 01-10-2022 Plaintiff listed all open and active cases, Plaintiff also kited the Deputy warden on 01-11-2022 ref# WCI0122000992. See exhibit (2) informal complaints.

¶ 109. Defendant Steven Williams, Unit Manager became very aggressive calling Plaintiff a "dumb motherfucker" and stating "he isn't getting any legal box". This went on for about 10-15 minutes until Defendant Isaac Bullock, Institutional Inspector walked in.

¶ 110. Defendant Isaac Bullock, and Unit Manager Steven Williams, started talking about the Plaintiff, referring to him as an "ass hole" and a "bitch" as if he wasn't present. Isaac Bullock stated he has had copies of his informal complaints for two weeks but because he is an asshole, he wasn't getting them until he is transferred to another institution and stated "I'm not giving him a fucking legal box, fuck him." "Tell his family to call about that."

¶ 111. Defendant Isaac Bullock, refused to look at Plaintiff's organized list of open cases or amount of legal material he possessed in accordance with ODRC Policy 59-LEG-01. Defendant Bullock stated "your bitch-ass should not have gone to medical".

¶ 112. Defendant Isaac Bullock, was approached directly in-front of Plaintiff by two inmates asking can they have permission to have a legal box, Defendant asked them "Are You one of the people who ate the contaminated food?" when they answer "no" he said "I approve you for a legal box then." Bullock did not even examine their material or determine if they had open cases, this equated to four inmates in all receiving legal space to transfer with them, at the end of this very abusive verbal scourging the Plaintiff went through for over an hour he went to check on the kite he sent to the warden and at 11:00am a reply was sent back that this issue has been resolved by the UM and IIS ref# WCI0122001022, 01-11-2022. See exhibit (2) informal complaints.

¶ 113. Defendant Isaac Bullock and the other staff members each retaliated against Plaintiff and the other inmates to punish them for filing informal Complaints, going to medical and requesting information regarding Aramark Correctional Services LLC.

¶ 114. Defendant's retaliation consisted of locking the inmates down, not answering their questions, not allowing them to have recreation, when recreation was given it consisted of Plaintiff being allowed out of his cell for a 15 min window to get on the restricted Kiosk or to shower. Most of the time mail was with-held, or not picked up to prevent it from being sent out by the staff.

¶ 115. Defendant Isaac Bullock, was the only known staff person who had the authority to restrict Plaintiff's Kiosk from generating new informal complaint resolutions "ICR's" or grievances.

¶ 116. Plaintiff filed an informal complaint resolution in paper form after he realized he was restricted on the Kiosk against medical for refusing to see him timely and for intentionally not diagnosing him in an attempt to cover-up him being fed contaminated food by Defendant's Aramark and ODRC. Which was never addressed.

¶ 117. Plaintiff requested information concerning the paper ICR's and was ignored by Defendant Isaac Bullock prior to transferring.

¶ 118. Defendant's named in Paragraphs 3 through 30 (as if fully rewritten herein) each acted together to prevent Plaintiff and the other inmates from exposing that they were fed contaminated food by Aramark which resulted in them being poisoned.

¶ 119. Plaintiff relied on Defendant Aramark and its employees to provide safe and healthy meals, as this company is his only source of food or option to receive a balanced meal while incarcerated.

¶ 120. Plaintiff since eating the contaminated food has experienced extreme emotional distress, loss of trust in Defendant's Aramark and its employees to provide safe and healthy meals, resulting in him being overly conscious, and has raised anxiety levels because of the food served by Defendant's Aramark, and its employees, and experiencing regularly a loss of appetite requiring himself to force eat to avoid becoming ill or malnourished.

¶ 121. Plaintiff since this experience has lost trust and faith in Defendant's Medical staff and ODRC to act in his best interest concerning his health and safety where his needs were ignored and disregarded.

¶ 122. Plaintiff had to write grievances about his mistreatment, harassment, intimidation and about the retaliation concerning the release of medical information to non- medical employees he was receiving from ODRC employees.

¶ 123. Plaintiff sent the grievance concerning these matters to the Defendant Assistant Chief Medical Officer Karen Stanforth, she was unmoved and Deliberately Indifferent to Plaintiff's health and safety, and medical concerns. Defendant even went as far to speculate that the Plaintiff was committing some sort of violation, when he wrote the grievance concerning the inmates in his dorm contracting food poisoning.

¶ 124. Plaintiff since eating the contaminated food has experienced a heightened emotional level of stress, pertaining to Defendant's Aramark and ODRC's staff including Medical's staff consisting of all Defendant's named in this complaint in paragraphs 31 through 146 as if fully rewritten herein, based on their attempts to cover-up, avoid address, with-hold Medical treatment, with-hold information, and willingness to wrongfully punish Plaintiff and other inmates for being fed contaminated food and seeking help.

¶ 125. Plaintiff since this ordeal, has sought and been receiving counseling from Mental Health to cope with what he has experienced from the Defendant's listed in paragraphs 31 through 146 (as if fully rewritten herein), as he is required to continue to eat food served by Aramark and its employee's contrary to his fears.

¶ 126. Plaintiff has exhausted all remedies unless prevented by the Defendant's as stated above.

¶ 127. Defendants in this action clearly violated Plaintiffs Eighth Amendment Constitutional Right to be free from cruel and unusual punishment, Fourteenth Amendment "Equal Protection" and First Amendment "Retaliation" they also violated ODRC's Policy 68-MED-04 (G) Food Poisoning, 07-ORD-11 Release of Medical Records, 10-SAF-08 Sanitary Conditions.

¶ 128. Defendant's named in Paragraphs 3 through 30 (as if fully rewritten herein) each acted together with their conduct in relation to equal protection and how the Defendant's abridged that protected right concerning their actions in restricting Plaintiff from being permitted from using the kiosk, recreation, or dayroom time, and phone time, and seeking out the Plaintiff in the Chow hall and being very indifferent all amounts to retaliation and harassment.

¶ 129. Plaintiff only came out of his cell for 15 minutes to shower and to use the microwave for commissary food, during the false quarantine, when the Plaintiff attempted to file complaints about the treatment he received the kiosk instructed him "you are currently restricted from creating this type of communication".

¶ 130. Although, other inmates were permitted to use the kiosk machines. This is an extreme effort on the part of Defendants to prevent Plaintiff from filing anymore grievances against the Prison institution, as well as medical, Aramark, and ODRC staff.

¶ 131. Plaintiff was prevented from filing grievances on the continuing harassment of him and retaliation against him when he did file previous grievances. Plaintiff was harassed and retaliated against when he went to medical to report being food poisoned, this shows a clear violation of the Fourteenth Amendment equal protection under the Constitution. Plaintiff like every other prisoner has a constitutional right to equal protection under the law which includes access to health care services and the grievance procedure.

¶ 132. Plaintiff was prevented from filing grievances against not only IHS (Inmate Health Services) but also Aramark and some of the other Defendants as expressed in the complaint. A prisoner's constitutional right of access to the courts extends to the prison grievance procedures

21

and "hinges on his ability to access the prison grievance system." Prison officials may not punish an inmate for using disrespectful language in a written grievance, even if that language is "hostile, sexual, abusive or threatening.

¶ 133. Due to the policies and customs of Aramark Correctional Services LLC Plaintiff can explain their conduct as a company and how it shows that they should be held liable for the conduct of their employees. Even assuming Aramark is a state actor, however, a private corporation like Aramark is liable under § 1983 only when its official policy or well-settled custom causes the alleged deprivation of federal rights.

¶ 134. This Circuit held that § 1983 municipal-liability jurisprudence distinguishes between 'policy' and 'custom. The United States Supreme Court has held "municipal liability may attach for policies promulgated by the official vested with final policymaking authority for the municipality

¶ 135. Additionally, this Circuit has aligned to the Supreme Courts holding. A custom, on the other hand, refers to an informal rule or way of doing things that "has not received formal approval through official decision making channels

¶ 136. The custom must be "so permanent and well settled as to constitute a 'custom or usage' with the force of law." Id. Aramark has well-settled policies and customs of which aided in the causation of the deprivation of Plaintiff's Federal Constitutional rights as they were the "moving force" behind the alleged deprivation.

¶ 137. In a law journal written by Amanda Chan* and Anna Nathanson** Reported by 29 Wm. & Mary Bill of Rts. J. 1009. Cites, most of the bad prison food that makes the news is about private prison food contractors such as Aramark. Aramark contracts with states to provide prison food. Although a state is not bound by federal prison administrative regulation nor other states' administrative regulations, states often model their own prison food policy after the federal ones. Michigan repeatedly made headlines when it encountered systemic problems in prison food with Philadelphia-based private food vendor Aramark.

¶ 138. For example, one Aramark employee fed prisoners actual trash. The Aramark employee had thrown out leftover food, but upon realizing that there were more prisoners to feed, the employee retrieved the food from the trash, reheated it, and served it to the prisoners.

¶ 139. This report that was published by Wm. & Mary Bill of Rts. J. 1009. May of 2021. However, Plaintiffs incident happened in November of 2021, within Six months 2 known occurrences happened that involved employees of Aramark feeding inmates actual trash.

¶ 140. That was another incident by Aramark completely separate from the incident the Plaintiff experienced at W.C.I in November, 2021 yet it shows the same "MODUS OPERANDI" where Defendant Aramark and employees violate Constitutional Rights of inmates across the United States not just here in Ohio, and certainly not at W.C.I were the Plaintiff along with a dorm full of other incarcerated adults were fed food after it had been discarded as trash. This

incident is almost exactly like the incident reported in a law journal written by Amanda Chan*
and Anna Nathanson** Reported by 29 Wm. & Mary Bill of Rts. J. 1009.

¶ 141. In Ohio, under contract with Aramark, inmates discovered maggots in four
prisons, which prompted state officials to launch a statewide investigation. In a federal lawsuit,
sixteen prisoners from Kent County alleged that Aramark served rotten chicken tacos and
poisoned about 250 prisoners. *

¶ 142. Defendant Aramark has well-settled policies and customs of which aide in the
causation, and deprivation of Plaintiff's Federal Constitutional Rights as they were the "moving
force" behind the alleged deprivation. Aramark has an established incentive policy, and bad
business practices where the company receives incentives "quarterly" if the company saves
money, then the Managers receive bonuses in return. However, this is the slippery slope where
managers often risk the health and safety of incarcerated adults for company profits and
incentives.

¶ 143. These incentives and profits are generated by not providing the daily adequate
nutritional value inmates are required to eat, and or not complying with proper sanitation this can
be accomplished in a variety of ways although the nutritional value, caloric diet, and sanitation is
always at risk when Managers are profit driven.

¶ 144. Defendant's named in Paragraphs 3 through 30 (as if fully rewritten herein)
Aramark, Aramark Supervisor, Aramark Coordinator Ms. Woods, ODRC, and all ODRC
employees addressed in this complaint, should not be able to cite to the Eleventh Amendment
immunity, because the Defendants used their official capacity when violating Plaintiffs
constitutional rights. Defendants knew of the well-established Federal Law, meaning Plaintiff's
First Amendment, Eight Amendment, and Fourteenth Amendment.

## CLAIM ONE
### (Deliberate Indifference)

¶ 145. The Defendant's in paragraphs 31 through 144 as if fully rewritten herein, have
knowingly disregarded the risk of harm to Plaintiff's life and body through his health and safety,
amounting to cruel and unusual punishment; acted recklessly to the substantial risk of harm or
death by consciously and through their actions disregarded the harm that one's own actions could
do to the interests or rights of the Plaintiff in violation of his Eight Amendment right. As he was
incarcerated and cannot nor could not care for himself, "prison officials must ensure that inmates
receive adequate food, clothing, shelter, and medical care and have each failed to do so or failed
to prevent the others to do so.

## CLAIM TWO
### (Failed to Train)

¶ 146. The Supervisory Defendant's in paragraphs 31 through 144 as if fully rewritten
herein have actively engaged in official duties, through the official's own individual actions, have
violated the Constitution; the supervisors have abdicated their specific job responsibility, with

the 'active performance of the supervisor's individual job function, directly resulting in the constitutional injury. To wit: Implicitly authorized, approved, or knowingly acquiesced" to the underlying constitutional violation, or knowingly acquiesced in the unconstitutional conduct of the offending subordinate against the Plaintiff.

## CLAIM THREE
(Concurrent Negligence)

¶ 147. The Defendant's in paragraphs 31 through 144 as if fully rewritten herein were each negligent when two or more of them acted independently causing or whose actions contributed to the same damage as the others.

## CLAIM FOUR
(Culpable Negligence)

¶ 148. The Defendant's in paragraphs 31 through 144 as if fully rewritten herein acted at times negligently in their conduct, involved a disregard of the consequences likely to result to Plaintiff from their actions.

## CLAIM FIVE
(Emotional Distress)

¶ 149. The Defendant's in paragraphs 31 through 144 as if fully rewritten herein each either intended to cause emotional distress, or knew or should have known that their actions would result in serious emotional distress; Defendant's conduct was so extreme and outrageous as to go beyond all possible bounds of decency, and would be considered utterly intolerable in a civilized community; Defendant's actions proximately caused injury to Plaintiff resulting in mental anguish suffered was serious and of such a nature that no reasonable person could be expected to endure. To Wit: Each caused emotional distress to the Plaintiff by their actions or lack of.

## CLAIM SIX
(Equal Protection)

¶ 150. The Defendant's in paragraphs 31 through 144 as if fully rewritten herein each violated Plaintiff's equal protection rights guaranteed by the Fourteenth Amendment of the United States Constitution, when they intentionally targeted and discriminated against him treating him differently than others similarly situated without any rational basis for the difference.

## JURY DEMAND ENDORSED

¶ 151. Plaintiff respectfully demands a jury trial on all triable issues herein.

## RELIEF REQUESTED
(Permanent damages)

24

¶ 152. The Defendant's in paragraphs 31 through 144 as if fully rewritten herein, are the responsible parties that caused damages for past, present, and future harm that cannot be avoided or remedied. Resulting in Plaintiff Franklin Woods, being entitled to *Compensatory damages* where some or all Defendant's caused damages sufficient in an amount to indemnify the injured person for the loss suffered; *Punitive damages*, where some or all Defendant's, acted with recklessness, malice, or deceit specific to the result of Plaintiff, and *Nominal damages*, where some or all Defendant's, were negligent to the point that a trifling sum should be awarded to Plaintiff where a legal injury has been suffered if the court finds no substantial loss or injury is to be compensated.;

¶ 153. To be awarded a sum of no less than $ 9,000,000 (nine million dollars) for the above damages to be paid jointly and or separately by each named Defendant in this action.

¶ 154. Plaintiff request for the named Defendant's in this action to pay jointly and or separately for the cost of this action.

¶ 155. Plaintiff request for the named Defendant's in this action to pay jointly and or separately reasonable attorney fees, if Plaintiff hires/employs an attorney to handle this actions.

¶ 156. Plaintiff Franklin Woods states the statements in this civil complaint are true to the best of his knowledge and belief under the penalty of perjury.

_Franklin Woods_

Franklin Woods

_10/10/23_

Date

## Audit Request #270116021

Profile Photo:



Audit Photo:

### Inmate Info

Name: FRANKLIN WOODS (1981-12-09)
Booking #: A730633
Nationality:
Submitted Date: 08/04/23 17:51
Submitted from Location/Room: CCI,F,F1,304,T/UNIT-F1
Submitted Facility: ODRC Chillicothe CI
Current Location/Room: CCI,F,F1,357,T/UNIT-F1
Current Facility: ODRC Chillicothe CI
MAC ID: 08:E9:F6:E5:97:BC
Device ID: 08E9F6E597BC

*Exhibit 1*
*Public record request*

### Form Info

Category: Warden's Office
Form: Kite - Warden AA

### Request Info

Status: CLOSED by Shane.M.Stevens
Facility Deadline: 08/11/23 23:59
Summary of Request:
Re: Norm Evans (W.C.I.) public records official.
Details of Request:
**Please state the nature of your kite. Be specific.:**

Mr.Evans I'm requesting documentation regarding an incident that occurred on 2021-2022.

I'm requesting these documents pursuant the O.R.C. 149.43

1. Roll call for November 27, 2021, Decmeber 05, 2021 December 06, 2021 for 1st shift and 2nd shift.
2. Post assignments for November 27, 2021, December 05, 2021 December 06, 2021 1st shift a 2nd shift.
3. Emails relating to an isolated incident on these days, pertaining to Aramark, Medical.
4. Documents that A former Aramark worker was relived of her duties regarding an incident on November 27, 2021.
5. Video footage of the incident regarding Aramark employee feeding inmates out of a garbage can November 27, 2021 530- 630 pm. This could be sent to C.C.1 investigator that way it could be reviewed.

☐ **Mark the form as confidential**

# INCIDENT REPORT

| Report Date (will be set when report is signed): |
|---|
| 12/1/2021 |

| Work Location: | | Location of Incident: |
|---|---|---|
| Warren Correctional Institution | | Food Service |

| Name of Reporting Staff: | Title: | INCIDENT DATE: |
|---|---|---|
| Kayla Stebelton | Correctional Lieutenant | Nov 27, 2021 |

| Involves: | INCIDENT TIME: |
|---|---|
| Aramark Manager Woods | 6:20 PM |

## Check Item Indication Subject Of This Report:

☒ Employee Action   ☐ Facility Maintenance   ☐ Medical   ☐ Recommendations

☐ Inmate/Offender Affairs   ☐ Security   ☐ Victim Issue   ☐ Crisis Intervention Team (CIT)

☐ Use of Force   ☐ Workplace Violence   ☐ Equipment Issue   ☐ Other: _____

## Description of Incident:

On 12/1/2021 I, Lieutenant Stebelton reviewed video footage of an alleged incident that occurred in rear food service on 11/27/2021. While reviewing the footage the following was found; on 11/27/2021 at 6:20 PM on WCI-Food Service Cook Area2 camera, Inmate Smith (743-659) dumps food from the serving container into the trash can. It appears they realized after dumping the food that they still needed it. At 6:25 PM Aramark Woods is observed using a pitcher and scooping food out of the trash can into an empty container that Inmate Smith is carrying. Inmate Smith is then observed carrying the food to the serving line in the small chow hall and the food is served to inmates coming to chow. At 6:26 PM a rear food service porter is seen sweeping the floor and dumping the dust pan into the same trash containing the remains of the discarded food. At 6:27 PM Aramark Woods brings another empty container near the trash can for Inmate Burton (667-877) to scoop more food from the trash can that has now had trash dumped on top from the porter who swept the floor. Aramark Woods stirs in water to the food in the container that came from the trash can and at 6:30 PM Inmate Burton takes the food to the main chow hall to be served. Aramark Woods is responsible for serving inmates food from a trash can which is a major health code violation. Both inmates involved have been removed from food service. Video footage has been captured and Deputy Warden Welch was notified. End of report.

Exhibit 1a

| Signature of Reporting Staff Member: | | Date: |
|---|---|---|
| Kayla Stebelton | | 12/1/2021 |

## Action Taken:

1. Notification to DWSS.
2. Video footage captured and incident report completed.
3. Inmates involved removed from food service.

K. Stebelton

| Signature of Managing Officer: | Date: 12/3/2021 |
|---|---|

Distribution: **ALL COPIES TO MANAGING OFFICER** who will check appropriate distribution list below and distribute the copies.

☑ Operations   ☐ Administration   ☑ Special Services   ☐ Department Head _____

☐ Investigator   ☐ EEO   ☐ Personnel Officer   ☐ Administrative Assistant

☐ Record Officer   ☐ Medical   ☐ Health & Safety   ☐ Officer of Victim Services

| Shift Commander _E. Kendrick_ | | 2nd Shift | | Saturday November 27 2021 | Officers on 11 Overtime 1 |
|---|---|---|---|---|---|
| Captain: | | Lieutenant: Sandridge 227 | | Lieutenant: | Henness 221 |
| Captain: | | Lieutenant: Barrett 212! | | Lieutenant: | |
| Captain: | | Lieutenant: Kriss 214 | | Lieutenant: | |
| | | | | | |

| | | On Grounds | | Off Grounds | |
|---|---|---|---|---|---|
| POST | OFFICER | Total Posts: 41 | Relief | Good Days | Leaves |
| Unit 1A | Donthnier | Added Post | Morehouse, M.*** | Kaufman, K. | Vacation Lv. |
| Unit 1A | McIntosh | RH REC: Firman | | Cates, B. | Cunningham, S. |
| Unit 1B | Shostak (OT) | | Deegan, J. | Fulmer, P. | O'Connor, K. |
| Unit 1C | Lane | RH Esc: Frazier (OT | | Epperson, F. | Avery, E.*** |
| Unit 1C | Loughman | | Donthnier, B. | Rumpler, E. | Kerns, D. |
| Unit 1D | Rucker (OT) | 3D ESC: Finley, T. | | Robinson, E. | Henniss |
| Unit 1D | Heilshorn (VF) | | Couzens, A.*** | Cates, J. | Anderson - R |
| Unit 2A | Closed | | | Montgomery, J. | |
| Unit 2A | Closed | Visiting Williams, K. | Huddleston, T.*** | Reedy, M. | Personal Lv. |
| Unit 2B | Lipsky | (VF) | Morris, A.*** | Robinson, B. | Calhoun - 2 |
| Unit 2B | Quinn | | Lane, C. | Dunn, K. | |
| Unit 2C | Chevalier | | Loughman, A. | Robertson Jr, T. | |
| Unit 2C | Chambers | | Lipsky, L. | Foster, K. | Sick Lv. |
| Unit 2D | Randall, M. | | Jones, J. | James, J. | ███████ |
| Unit 2D | Adams | | Davis, J. | Weybright, J. | |
| Unit 3A | CLOSED | | | Hill, H. | |
| Unit 3A | CLOSED | | | Mann, B. | |
| Unit 3B | Ballard, C. | | McIntosh, J. | Starkey, B. | |
| Unit 3B | Saggus, J. | | Chambers, D. | Knick, J. | |
| Unit 3C | Collins, R.! | | Firman, A. | Long, T. | Military Lv. |
| Unit 3C | Austin | | Chevalier, E.*** | Anderson, C.$ | Winning, C. |
| Unit 3D | Zimmerman, D.$ | | Quinn, A. | | Kasten, J. |
| Unit 3D | Wheeler, M. | | Adams | | Webb, R. |
| Unit 3DXTRA | Edwards, G. | | Austin | | Perry, S. |
| Medical | Morris | | Sommer | | Luker, J. |
| TPU | Sommer | On-Site Training | | | Other Leaves |
| TPU | Jones, A. | Merbs, K. | | | Miller, S. |
| TPU | Shinno, D. | | | | ███████ |
| North Util | Deegan | | | | |
| South Util | Morehouse | | | | |
| East Util | Huddleston | | | | |
| West Util | Couzens | | | | |
| High Side Veh | Harrison (OT) | | | | |
| Low Side Veh | Cates B. (OT) | | | | |
| Front Entry | Emery (VF) | | | | |
| Front Entry | Closed | | | | |
| Recreation | Jones, J | | RTWP | | TWL |
| Recreation | Davis | | Godby | | |
| 1 pm - 9 pm | 1 pm - 9 pm | | Anderson | | |
| Control | Mayhold (6) | | Langfeld | | KEY |
| Control | Tipton (OT) | | | | !: SRT |
| Food Service | Goody K (VF) | | | | $: C.I.T. |
| Food Service | Sedlitz, M.*** | | | | *** Female |

Exhibit 1b "Roll Call"

28

**Shift Commander** _Captain_    **1st Shift**    Sunday, Dec 05, 2021    Officers on Overtime ___7

Captain: D Agee 120    Lieutenant: M. Kiser 215
Lieutenant: T. Tatman 230    Lieutenant: S Vetere 216
Lieutenant:

Supervisor VAC

| POST | OFFICER | Added Post (On Grounds 12 / 14) | Relief | Good Days (Off Grounds) | Leaves |
|---|---|---|---|---|---|
| Unit 1A | Pannunzio, K*** | 3DX: Howard | Beaach, K | Landis, M | Vacation Lv. |
| Unit 1A | Koch | 3D Escort: Combs | | Hewitt, V | Barrett, C. |
| Unit 1B | Shostak, R | TPU Rec Util: CLOSED | | Jones, D | Burke, D $ |
| Unit 1C | Crawford | | | Brennan, R | Carpenter, J |
| Unit 1C | Briggs, D | 1C Watch: Dowler | McKenzie, W | Davison, D | Williams, K |
| Unit 1D | Halsey OT | | Howard, S | Wetzel, J | |
| Unit 1D | Baker | | Leazier, B | Barnett, B | |
| Unit 2A | CLOSED | | Howe, A | Moody, C | N. LANE |
| Unit 2A | CLOSED | | Edwards | Borck, M | Personal Lv. |
| Unit 2B | Keith (OT) | | | Heineman, C | |
| Unit 2B | Burris, A $ | | Milner, N | Eagle, L | |
| Unit 2C | Spicer, B | | Rittenhouse, M | Wolf, L | |
| Unit 2C | Lindsey, J | Deegan | Soedyk, J | Watson, B | Sick Lv. |
| Unit 2D | Milner | Dowler | LIPSKY | Clarkson, N | |
| Unit 2D | Lipsky | Koch | Baker | Gilland, E | |
| Unit 3A | CLOSED | | | Kallschmidt, M | |
| Unit 3A | CLOSED | | | Rookin | |
| Unit 3B | Deegan | | | | |
| Unit 3B | Harrison, A | | | | |
| Unit 3C | Williams, T | | | | |
| Unit 3C | Davenport, J | | Resigned | | Ext Sick Lv |
| Unit 3D | Snelling, J | | Wilson | | |
| Unit 3D | Howe | | Heilshorn | | |
| Medical | Goodyk | | Estep | | |
| TPU | Leazier | | | | |
| TPU | Rittenhouse | | | | Other Leaves |
| TPU | Eltzroth, K | | | | Wadlington, W milt |
| North Util | W. Barrett (OT) | In-Service | | | Luker - milt 8/1/22 |
| South Util | Sedtiz OT | Deems, W | Freeze List | | |
| East Util | McKenzie | | | | LANBB - Mid |
| West Util | Emery, D | | | | |
| High Side Veh | Bakuzonis (OT) | | | | |
| Low Side Veh | Rucker (OT) | | | | |
| Front Entry | Branch | | | | TWL |
| Front Entry | CLOSED | | | | |
| Recreation | Beaue (OT) | | | | |
| Recreation | Edwards | | | | |
| 5 am - 1 pm | | Special Details | | SRT/STAR | |
| Control | Janiszewski, M* | | | | |
| Control | Mowery | | RTWP | | KEY |
| Food Service | Tipton | | Bailey | | !: SRT |
| Food Service | | | | | $: Crisis (CIT) |
| Total Posts: 44 | | | | | ^: ESA |

24

Exhibit 1C "Roll Call"

| Shift Commander *Capt Teague* | | | 2nd Shift | Sunday December 5 2021 | Officers on Overtime __11__ |
|---|---|---|---|---|---|
| **Captain:** | Teague 112 | | **Lieutenant:** Barrett 212! | **Lieutenant:** | |
| **Lieutenant:** | Harrison 228S | | **Lieutenant:** Kriss 214 | **Lieutenant:** | |
| | | | | | |
| | | | | | |

| POST | OFFICER | On Grounds | | | Off Grounds | |
|---|---|---|---|---|---|---|
| | | Total Posts: 42 | Relief | Good Days | Leaves | |
| Unit 1A | *Firman* | **Added Post** | Morehouse, M.*** | Kaufman, K. | **Vacation Lv.** | |
| Unit 1A | *Morris* | RH REC: *Herzog (OT)* | Avery, E.*** | Cates, B. | Finley, T. | |
| Unit 1B | *SHOSTAK (VF)* | | | Fulmer, P. | Robertson Jr, T. | |
| Unit 1C | *Loughman* | RH Esc: *Couzens* | Godby, R. | Epperson, F | Mann, B. | |
| Unit 1C | *RUMPLER (OT)* | | Couzens, A.*** | Rumpler, E. | **Henness 221!** | |
| Unit 1D | *BRIGGS (VF)* | 3D ESC: *DAVENPORT* | Donthnier, B. | Robinson, E. | *Leslie - ))S* | |
| Unit 1D | Foster, K. | *(VF)* | | Reedy, M. | | |
| Unit 2A | **CLOSED** | | | Robinson, B.$ *J CATES* | | |
| Unit 2A | **CLOSED** | PM Chap. *Huddleston* | Huddleston, T.*** | Dunn, K.$ | **Personal Lv.** | |
| Unit 2B | *Onan* | | Morris, A.*** | James, J. | | |
| Unit 2B | *Godby* | *16 Cw! McIntosh* | | Cunningham, S. | | |
| Unit 2C | *Ewen* | | Loughman, A. | Miller, S. | | |
| Unit 2C | *Sommer* | | | Starkey, B. | **Sick Lv.** | |
| Unit 2D | *Lengefeld* | | Jones, J. | Calhoun, J!. | | |
| Unit 2D | *BAKER (OT)* | | Davis, J. | Webb, R. | | |
| Unit 3A | **CLOSED** | | Ewen, T. | Zimmerman, D.$ | | |
| Unit 3A | **CLOSED** | | Lengefeld, H. | Herzog, A. | | |
| Unit 3B | Ballard, C. | | McIntosh, J. | O'Connor, K. | | |
| Unit 3B | Saggus, J. | | Chambers, D. | Jones, A. | | |
| Unit 3C | Collins, R.! | | Firman, A. | Wheeler, M | **Military Lv.** | |
| Unit 3C | Anderson, F. | | Chevalier, E.** | | Winning, C. | |
| Unit 3D | *Austin* | | | | Kasten, J. | |
| Unit 3D | *Chambers* | | ~~Adams, C.~~ | | Perry, S. | |
| Unit 3DXTRA | *Davis* | | ~~Austin, L.~~ | | | |
| Medical | *Chevalier* | | ~~Sommer~~ | | | |
| TPU | *Adams* | **On-Site Training** | ~~Onan~~ | | **Other Leaves** | |
| TPU | Shinno, D. | Anderson, C.$ | | | Montgomery, J. | |
| TPU | Hill, H. | | | | | |
| North Util | *Morehouse* | | | | | |
| South Util | *CHAMBLIN (OT)* | | | | | |
| East Util | *KOCH (VF)* | | | | | |
| West Util | *Avery* | | | | | |
| High Side Veh | Kerns, D. | **CTA** | | | | |
| Low Side Veh | *B.CATES (OT)* | | | | | |
| Front Entry | *Donthier* | | | | | |
| Front Entry | *Closed* | | | | | |
| Recreation | Long, T.$ | | | | **TWL** | |
| Recreation | *J.Jones* | | **RTWP** | | | |
| 1 pm - 9 pm | 1 pm - 9 pm | | | | | |
| Control | *WHITE (OT)* | | | | **KEY** | |
| Control | *ENGLEHARD (OT)* | | | | !: SRT | |
| Food Service | Weybright, J. | | | | $: C.I.T. | |
| Food Service | Sedlitz, M.*** | | | | *** Female | |

*Exhibit Ha Kelley*

*J. Jones late for work*
*Shinno late for work*

(30)

**Shift Commander** *CAPT Agee* — **1st Shift** — Monday, Dec 06, 2021 — Officers on Overtime 2

| | | |
|---|---|---|
| aptain: | D Agee 120 | Lieutenant: S Vetere 216 — Supervisor VAC |
| Lieutenant: | T. Tatman 230 | |
| Lieutenant: | D. Lane 211 (7-3) | |

| POST | OFFICER | Added Post | Relief | Good Days | Leaves |
|---|---|---|---|---|---|
| Unit 1A | Pannunzio, K*** | 3DX :Burke, D $ | Branch, K | Hewitt, V | **Vacation Lv.** |
| Unit 1A | Wells | 3D Escort: Closed | Mowery | Gilland, E | Williams, K ! |
| Unit 1B | Shostak, R | TPU Rec Util: Closed | Wells | Ross, C | Tipton, D*** |
| Unit 1C | Crawford, J $ | | Lambe, D | Kallschmidt, M | Lail, S*** |
| Unit 1C | Briggs, D | IC Worth: Landis | McKenzie, W | Davison, D | Spicer, B |
| Unit 1D | Moore C | | Howard C | Wolf, L | |
| Unit 1D | Ibezue VF | | Howe, A | McDonough, A*** | |
| Unit 2A | CLOSED | Edwards | Wadlington, W | Milner, N | |
| Unit 2A | CLOSED | | Dawson B | Heineman, C | **Personal Lv.** |
| Unit 2B | Mowery | | Koch TK | Deems, W | |
| Unit 2B | Burns | | Baker, Sam | Hoffer, C | |
| Unit 2C | Baker | | | Leazier, B | |
| Unit 2C | Lindsey, J | | | Snelling, J | **Sick Lv.** |
| Unit 2D | Edwards | | | Watson, B | |
| Unit 2D | Carpenter, J | | | Heilshern, O*** | |
| Unit 3A | CLOSED | | | Rittenhouse, M | |
| Unit 3A | CLOSED | | | Rook, N | |
| Unit 3B | Wadlington | | Resigned | Degran, J | |
| nit 3B | Harrison, A | | Wilson | Lipsky, L | |
| Unit 3C | Davenport, J | | | | |
| Unit 3C | Williams, T | | | | **Ext Sick Lv** |
| Unit 3D | Howard | | | | |
| Unit 3D | Branch | | | | |
| Medical | Borck, M | | | | |
| TPU | Eltzroth, K | | | | |
| TPU | Ross | | | | **Other Leaves** |
| TPU | Howe | | | | Luker - milt 8/1/22 |
| North Util | Dowler | | | **InService** | Lamb - Milt |
| South Util | Brennan, R $ | | | Goodyk, J*** | |
| East Util | McKenzie | | | Hineman (OT) | |
| West Util | Emery, D | | | Snelling (OT) | |
| High Side Veh | Jones, D | | **Freeze List** | **InS.Instruct.** | |
| Low Side Veh | Eagle, L*** | | | Wetzel | |
| Front Entry | Closed | | | | **TWL** |
| Front Entry | Bakazonis 10TI | | | | |
| Recreation | Barnett, B $ | | | **SRT/STAR** | |
| Recreation | Clarkson, N | | | Leazier, B | |
| **5 am - 1 pm** | | **Special Details** | | | |
| Control | Wetzel | Combs - orientation | **RTWP** | | |
| Control | Janiszewski, M* | | Landis, M 1D | | **KEY** |
| Food Service | Koch | | Bailey | | !: SRT |
| ood Service | Barrett, C. | | | | $: Crisis (CIT) |
| | Total Posts: 44 | | | | ^: ESA |

| Shift Commander _Gn53_ | | | 2nd Shift | Monday December 6 2021 | Officers on Overtime _9_ |
|---|---|---|---|---|---|
| Captain: | Teague 112 | | Lieutenant: Harrison 228$ | Lieutenant: | Kriss 214 |
| Captain: | | | Lieutenant: | Lieutenant: | |
| | | | | | |
| | | | | | |
| | | **On Grounds** | | **Off Grounds** | |
| **POST** | **OFFICER** | Total Posts: 42 | **Relief** | **Good Days** | **Leaves** |
| Unit 1A | Fulmer, P. | Added Post | Morehouse, M.** | Cunningham, | Vacation Lv. |
| Unit 1A | Epperson, F. | RH REC: CLOSED | Avery, E.*** | Miller, S. | |
| Unit 1B | Don Panior | | | Calhoun, J. | Robertson Jr, T. |
| Unit 1C | CRAWFORD (VF) | RH Esc: Morhause | Godby, R. | Webb, R. | Mann, B. |
| Unit 1C | BRIGGS (VF) | | Donthnier, B. | Zimmerman, | Henness 221! |
| Unit 1D | ELTZROTH (VF) | 3D ESC: Huddleston | | Herzog, A. | Weybright R |
| Unit 1D | Foster, K. | | Gauzens. A.** | O'Connor, K. | STARKEY |
| Unit 2A | CLOSED | 1C works! Cates | | Jones, A. | HUDDLESTON -3n vAc Q |
| Unit 2A | CLOSED | | | Wheeler, M. | Personal Lv. |
| Unit 2B | Godby | | Morris, A.*** | Sedlitz, M.*** | |
| Unit 2B | Saniter | | Loughman, A. | Edwards, G. | |
| Unit 2C | Meros | | | Finley, T. | |
| Unit 2C | Ewen | | Jones, J. | Godby, R. | Sick Lv. |
| Unit 2D | Lengefeld | | Davis, J. | Lane, C. | |
| Unit 2D | BAKER (VF) | | Ewen, T. | Chevalier, E. | |
| Unit 3A | CLOSED | | Lengefeld, H. | Quinn, A. | |
| Unit 3A | CLOSED | | McIntosh, J. | Adams, C. | |
| Unit 3B | Ballard, C. | | | Austin, L. | |
| Unit 3B | Mans | | Sommer | Drum | |
| Unit 3C | Collins, R.! | | | Firman | Military Lv. |
| Unit 3C | Anderson, F. | | | | Winning, C. |
| Unit 3D | McIntosh | | | | Kasten, J. |
| Unit 3D | Davis | | | | Perry, S. |
| Unit 3DXTRA | Couzens | | | | |
| Medical | James, J. | | | | |
| TPU | Shinno, D. | On-Site Training | | | Other Leaves |
| TPU | Hill, H. | Robinson, E. | CIM | | |
| TPU | LT. LANE (OT) | | Sagers | | |
| North Util | EDWARDS (VF) | | | | |
| South Util | Dunn, K.$ | | | | |
| East Util | CARPENTER (VF) | | | | |
| West Util | Avery | | | | |
| High Side Veh | Kerns, D. | | | | |
| Low Side Veh | Cates, B. | CTA | | | |
| Front Entry | Kaufman, K. | Anderson -HNT | RTWP | | |
| Front Entry | DOWLER (VF) | | Cates, J.-1D | | |
| Recreation | Long, T.$ | | | | TWL |
| Recreation | Knick, J. | | | | |
| 1 pm - 9 pm | 1 pm - 9 pm | | | | |
| Control | Robinson, B.S | | | | KEY |
| Control | WETZEL (VF) | | | | !: SRT |
| Food Service | Loughman | | | | $: C.I.T. |
| Food Service | J. Jones | | | | *** Female |

32

| | |
|---|---|
| D#: a730633 | Name:WOODS,FRANKLIN |
| Form:Appeal | Subject:Deputy Warden Administration |
| Urgent:No | Time left:n/a | Status:Closed |

Description:Other

## Original Form

1 of 2

This is in regards to the Aramark isssue where we were serve beans from the trash can and the aramark worker has been relived of her duties.

Monday - Wednesday I had been having abnormal bowel movements , and this may be the very cause .

Please look into these issues for me .

Exhibit 2

## Communications / Case Actions

The following issue has been verified and addressed. Corrective actions have been taken.

You will need to complete a Health Service Request form to address your medical concerns.

Due to being incarcarated and to preserve my constitutional rights I must follow the proper procedure to exaust my remedies at this level.

This Is a very important issue and needs further action taken , This is not a isolated incident this type of behavior has been on going for years.

Thank you for your time and Cooporation I hope this does'nt result in any type of retalitory conduct on behalf of Atamark employees or from any Prison Officals.

Your grievance fails to meet the guidelines established in AR 5120-9-31 (The filing of the notification of grievance- step two).

Additional issues raised in the grievance that were not raised in the ICR will not be addressed in this disposition.

Therefore, your grievance is denied. This office will take no further action regarding this matter.

Information is being with held from us due to the Aramark situation , I would like the name of the Lt that was over he chow hall the night of 11/27/21.

We was subjected to cruel and unsusal punishment a violation of the 8th amendment, being feed out of a trash can is deliberate indifference to my heath and safety.

The adminastarion is contributory neqigence

The office of the Chief Inspector is in receipt of your Appeal to the Chief Inspector. A thorough review of your appeal has been completed. Please be advised that the Inspector is reconsidering your complaint and will issue a supplemental disposition of grievance.

Based on this review, the decision rendered by the Inspector is hereby: Modified with an additional response required. This office will take no further action on this matter at this time.

The Office of the Inspector of Institutional Services is in receipt of your grievance.

The grievance is being granted. The issues listed in your grievance were verified and are against policy and administrative rules. Appropriate corrective actions were taken to address the issue that occurred within food service.

As stated above your grievance is granted and this office will take no further action regarding this matter.

To be in compliance to the prison litigation reform act inmates proceeding with a 42 U.S.C 1983 muct first exhaust all administrative remedies.

Issues unresolved due to administration not releasing the names of the food sevice coordinator the violated the right of the inmates by serving beans from a contaminated trash can.

Inmated Woods has requested the names of the coordinator involved , the name of the Lieutenant that was working the chow hall on 11-27-21.

This information has yet to be released , in fact the inmates that files Health service request forms was retaliated against and placed on quarantine .

Unmated Woods is seeking redress for the deliberate indifference the Aramark employess and the staff at warren correction has shown him.

The staff is in violation of his eighth amendment right and is to be free from cruel and unusal pinishment.

-33-

The action from Aramark and th estaff shows a complete disregauard for inmates health and saftey.
Thank you for your time .
Franklin Woods

2 of 2

No further action will be taken regarding the Supplemental Disposition of Grievance requested by this office as you have exhausted your appeal pursuant to administrative rule 5120-9-31. If you believe an injury or illness exist because of this claim, you should contact Medical Services at your institution for an appointment.

Exhibit 2

-34-

Page:

| Ref# WCl1221000396 | Housing:1A215LA | Date Created:12/04/2021 |
|---|---|---|
| ID#: a730633 | Name:WOODS,FRANKLIN | |
| Form:Kite | Subject:Food Service | Description:Food Service |
| Urgent:No | Time left:n/a | Status:Closed |

Original Form

Mr Welch ,
This is in rgards to the incident with former "ARAMARK" employee Mrs Woods retrieveing BEANS from a trash can and feeding them to unit 1A on Saturday November 27th ,can you please send me information of the specfic time stamp that recorded on the surveilence footage.
Thank you for your cooporation.
God Bless

Manual Fill-In

Exhibit 2a

| ID#: a730633 | Name:WOODS,FRANKLIN | |
|---|---|---|
| Form:Appeal | Subject:Shift 1 Captain | Description:Other |
| Urgent:No | Time left:n/a | Status:Closed |

Original Form

On Dec 05 2021 at approximately 6:45 am Lt Tateman entered into unit 1A and went to cell number 111 and 112 and advised the inmates if they went to medical for stomach pains they would be locked down due to covid symptoms.
Lt Tateman proceed ed and locked the whole block down.
When asked why inmates was being locked down Lt Tateman said because they inmates are on some "bullshit".
around 9:30 am 9 inmates was escorted to medical because the had been experencing diareah and stomach pains.
after the check up inmates was escorted back to the block and went on a 72 hour quantine , because of
" INFLUENZA " inmates was locked in there cell for over 72 hours ..
The inmates that filed informal complaints was targeted for exercising there right acordding to the PLRA.
These inmates have been subjected to cruel and unusal punishment which directly violates there eighth amendment.
these issues are unresolved and redress is sought for the damages done.
Thank you for your time and cooperation
Franklin Woods

Communications / Case Actions

Multiple inmates were reporting symptoms consistent with the COVID-19 virus currently causing a worldwide pandemic. The unit was placed on quarantine status to slow the spread of the virus. Lt. Tatman was following my orders which were mandated by our medical policy which is in place to slow the spread of said virus.
Captain Agee

So you gave Lt Tatman orders to place unit 1A in quarantine status prior to being seen by medical ?
because as stated before in my original complaint at 630 am on sunday 12 -05-21 I was instructed that I was not able to have dayroom time until i was seen by medical ( per C.O. Cook) .
at 645 Lt Tatman tells the entire unit that these inmates are on some bullshit and are the reasons they are being placed on quarantine.
9 inmates went to see medical ver possible food posioning symptoms and never gave covid19 symptoms, as in sortness of breathe and no smell or taste , my symptoms was diareeha and stomachs pains
Tatman said he would lock us down if we went to medical , and he proceeded with that threat , which is a violation of 5120-09-04(b) harrasment , inappropriate supervision
there was inmates that went to medical earlier in the week and never was placed on quarantine .
so my medical records were relaesed with out my permission , and because I went to seek medical attention at the advise of Inspector Bullock , I was retaliated against.
The institution in in violation of my eighth admendment rights to be free from cruel and unusal punishment, and there is a deliberate indifference to my health and safety.
Medical had no right relasing my personnel medical records with my permission.
Administration had there mind made u to quarantine inmates the morning of 12-05-21 prior to being seen by medical.
Inmates was never checked for covid 19 , and no tests were ever run for food posioning.
Redress is sought for deliberate indifference, negligence , and violation on constitutional right .

The Office of the Inspector of Institutional Service is in receipt of your grievance. The grievance alleges on December 5, 2021, Lieutenant Tatman placed 1A on lock down due to COVID symptoms. The grievance alleges Lieutenant Tatman locked the unit down out of retaliation of inmates complaining of food poisoning.

Exhibit 2b

The following were reviewed to investigate your grievance:
ODRC policy 64-DCM-01
Administrative Rule 5120-9-31

2 of 2

Spoke with the Operations Deputy and Health Care Administrator.
While investigating your grievance this Inspector spoke with the Health Care Administrator. She advised medical had received a lot of complaints from 1A regarding the offender population related to COVID symptoms. The HCA and Deputy of Operations stated as a precautionary measure unit 1A was placed on quarantine status. Be advise WCI goal is to protect the health and safety of our population and staff. Furthermore, it's important to understand changes were designed to provide a safe environment for our population.
Based off the above there is no merit within your grievance. Your grievance is denied. This office will take no further action regarding this matter.

LT Tatman is clearly in violation of 64-DCM-01 and 5120-09-4 (B).
The reason set forth are all the symtoms given in the Heath sevice request forms , were at the advise from the Inspector himself.
All the compaints is from a direct incident to 11/27/21 Inspector and Lt Tatman knew about the complaints filed.
Which is why he came into 1A on he morning of the fifth of December 2021 and went to offender Nottingham and offender Rich cel and state if the go to medical he is locking the them down.
Officer Cook refused offender Woods from coming out of his cell at 630 am .
The minds of staff was already made up .
The offenders went to medical and was placed on a 72 hour quarantine, because the filed informal complaints of food posioning because they had been fed food that had been through away, in the trash can.
Administation knew about the complaints and knew that the HSR forms was related to that specfic incident
The is a clear violation of the eighth amendment cruel and unusal punishment , debliberate indifference, to the health and saftey of the inmates , violation of the Adminstative rule 5120-09-04 (B) Inappropriate supervison and 64 -DCM- 01 ( Harrasment).

Affirmed.
The Office of the Chief Inspector has reviewed your grievance concerning a decision to "lock down" or medically isolate your dorm area on December 5, 2021. This was done due to a large number of the residents in this area exhibiting suspect signs and symptoms of either the Covid or Flu virus, both of which are highly contagious in a confined population.
Additionally, there was no release of your medical records to any unauthorized employee or other individual. You were also not provided information about other patients. With that said, you profess to know that nine people in your dorm had food poisoning without validation. If you are discussing actual individuals names, you yourself could be participating in the spread of confidential medical information depending on how you gained this information.
The involved staff were following CDC guidelines as well as state and federal recommendations. As in the community population, decisions are being made on an hourly basis since the entire Covid pandemic is something not experienced before in the past. There are no indications you have been treated with deliberate indifference or negligence by any staff member during this situation. Everything done and every decision made was an attempt to protect you and others in your environment. Please continue to follow all guidelines for which you have been educated as we continue to manage this difficult situation.
Karen Stanforth, Assistant Chief Inspector, Medical
Karen Stanforth, Assistant Chief Inspector, Medical

Exhibit 2b

| Ref# WCI122-1002129 | Housing: 1A2 19LA | Date Created: 12/21/2021 |
|---|---|---|
| ID#: a730633 | Name: WOODS, FRANKLIN | |
| Form: Grievance Against the Inspector | Subject: Inspector of Institutional Services | Description: Violation of Administrative Rule |
| Urgent: No | Time left: n/a | Status: Closed |

## Original Form

A.R 5120-9-29 (D)

States The inspector should conduct regular inspection of institutional services and serve as a liason between the inmate population and institutional personnel.

On 12-20-21 at 4:45 Inmate Woods was exciting the chow hall line and inspector Bullock ask if there was a "PROBLEM" Woods showed the inspector the tray or inproperly made noodles and Bullock stated to kite the dietian , Inmate Woods stated that is was the diet  it was that they was improperly preparded, and that was substituted from( parsley rice ) . Inspecotr bullock dismissed Woods by repeatedly saying "GOODBYE".

The inpestor at W.C .I is unapproachable and does not serve as a liason between inmates and adminstration, He has shown a complete disreguard from the health and well being of our 2500 calorie diet , he has been systematically Bias towards the inmates, during these complicated time for them .

Since 11-27-21 Inmates has been targeted for complaining about Aramark , and Adminstration.

Inspector Bullock is in direct violation of A.R 5120-9-29 (D)

## Communications / Case Actions

Mr. Woods, upon review of your complaint and administrative rule 5120-9-31, I find the requirement to show the inspector of institutional services was personally and knowingly involved in a violation of law, rule or policy, or personally and knowingly approved or condoned such a violation has not been met.

Since you were unable to resolve your concern verbally, I recommend filing an Informal Complaint on the quality of food in the dinning hall. In accordance with administrative rule 5120-9-31, if you are not satisfied with an ICR response or a response is not forthcoming, you may escalate the ICR to a grievance for further review and response. Likewise, if you are not satisfied with a grievance response or a response is not forthcoming, you may escalate your grievance to an appeal with my office at OSC for further review and response.

Accordingly, pursuant to administrative rule 5120-9-31, this grievance is DENIED. This office will take no further action.

Exhibit 2c

-38-

| ID#: a730633 | Name:WOODS,FRANKLIN | |
|---|---|---|
| Form:Kite | Subject:Inspector | Description:Inspector |
| Urgent:No | Time left:n/a | Status:Closed |

## Original Form

This is in regard to the previous issues we had with aramark , I had requested the names of the personnel that over saw the the chow hall the evening of 11/27/21.

I have the understanding that Mrs Woods was the name of the food service coordinator the was relieved of her duties and walked out due to Serving Beans from the Trash can, also I would like the name of the Lt and correction officers that was in the chow hall that night.

I respectfully request this information pursuant to the O.R.C 149.43 public records request, IM only requesting the names of the individuals involved NOT ADDRESS only names.

Respectfully

Franklin Woods

## Communications / Case Actions

Be advise the Institutional Inspector does not process public records request.

Exhibit 2d

Page:

| Ref# WCI0122000939 | Housing:1A215LA | Date Created:01/10/2022 |
| ID#: a730633 | Name:WOODS,FRANKLIN | |
| Form:Kite | Subject:Inspector | Description:Inspector |
| Urgent:No | Time left:n/a | Status:Closed |

## Original Form

Mr Bullock ,
Im sure by now your aware ofthe mass ride out from unit 1A .
I would like to request a legal box due to the excess legal materials I have obtained , since Im currently fighting an( open ) case .
I currenty have an open Habeas Corpus Case ,and half of my box takes up trial transcripts , and the other half is school books from me being currently enrolled in an outside BLACKSTONE PARALEGAL STUDIES. so could you please authorize a legal box so i can take my legal materials.
Respectfully
Franklin Woods

## Communications / Case Actions

The following process (below) is in place for a legal box.  Do to you transferring within the next two days, you did not take the necessary steps to obtain an approved legal box from this office.  You are being encouraged to adjust your property so that you are 2.4 compliant.
• General and personal legal materials shall be maintained within the inmate's overall 2.4 cubic feet property limitation as provided in Administrative Rule 5120-9-33, Packages and Property Restriction, and applicable institutional policies. General legal materials are subject to the general possession limits applicable to books, law books, stationery, or writing materials, etc. as provided in Administrative Rule 5120-9-33, Packages and Property Restrictions, and Department Policy 61-PRP-01, Offender Personal Property, and applicable institutional rules and policies.
• Inmates are required to keep personal legal materials organized by title and case number. Each document associated with a particular case shall be identified with at least the correct case number.
• Inmates may be required to produce a list of their active cases any time such materials are packed up and placed in storage for any reason. This list shall identify each active case by title of the case, case number, and the court in which the action is pending.

## Manual Fill-In

Exhibit 2e

-40-

Page: 1

| Ref# WCI0122000952 | Housing:1A215LA | Date Created:01/10/2022 |
|---|---|---|
| ID#: a730633 | Name:WOODS,FRANKLIN | |
| Form:Kite | Subject:Inspector | Description:Inspector |
| Urgent:No | Time left:n/a | Status:Closed |

Original Form

Mr Bullock,
here is the following cases that Im still litigating.
FRANKLIN WOODS
V
WARDEN
warren correctional insitution
case number
1:20-cv-618
HABEAS CORPUS
FRANKLIN WOODS
V
MELODY LINTON
CASE NUMBER
2014-PT-71
Mr Bullock , by all due resepct I need this legal box , I've sent the approriate cse numbers to the open caes that im still in the process of continous litigation, I hope that your reasoning for denying me the proper legal is in any way retaliation for or differences through out this last month , considering that in still waiting on my copies of the informal complaints I asked about on 1-3-22 and you said I would get them through the institutional mail and I still havent received them .
Mr Bullock I need to transfer my legal materials with me , and I was advised that you also approved 2 legal boxes today for offeners that is transfering.
Respectfully
Franklin Woods

Communications / Case Actions

Previously answered on reference number WCI0122000939.

Manual Fill-In

_____

_____

_____

_____

_____

Exhibit 2f

-41-

Page:

| Ref# WCI0122000992 | Housing:1A215LA | Date Created:01/11/2022 |
|---|---|---|
| ID#: a730633 | Name:WOODS,FRANKLIN | |
| Form:Kite | Subject:Deputy Warden Operations | Description:Deputy Warden Operations |
| Urgent:No | Time left:n/a | Status:Closed |

Original Form

This is in regards to the mass ride out in 1A , I requested a legal box yesterday and was denied .
I have 2 open cases and explained this to the inspector, and he is being uncooperating, all this is due to the prior encounter we have had , and the informal complaints Ive filed for harrassment and inappropriate supervision.
O.D.R.C policy 59-LEG-01 provides an exception to personal property restriction and llows an inmate to request extra personal storage space to accomodaye his personal legal files if he accumalates more than can be stored in the standard 2.4 cubic meter footlocker.
however , the policy only allows extra storage space to accomodate excess legal files for cases that are still active and requores the inmate to provide a list of active cases.

Communications / Case Actions

Sir, the inspector does not report to the DWO, the inspector is responsible for the legal mail storage. I would suggest tha you work and identify what material you need now.
thank you
DL

Manual Fill-In

Exhibit 29

−42−

Page:

| Ref# WCI0122001022 | Housing:1A215LA | Date Created:01/11/2022 |
|---|---|---|
| ID#: a730633 | Name:WOODS,FRANKLIN | |
| Form:Kite | Subject:Warden | Description:Warden |
| Urgent:No | Time left:n/a | Status:Closed |

Original Form

Mrs Wanza-Jackson,

Im sure your aware that unit 1A is moving ahaead with the mass ride out to CCI.

I have requested a legal box rom your inspector and to no avail , there has been no legal box provided to me.

I have informed Mr Bullock that O.D.R.C ploicy 59-LEG-01 , provides an exception to personal property restriction and allows an inmate to request extra storage space to accomodate more than can be stored in the standard 2.4 box.

However I am aware the policy only allows extra storage space to acccomodate excess legal files for cases that are still active and requires the inmate to provide a list of cases .

I have provided the list of cases to Inspector Bullock and he has still denied me of the extra legal box.

Franklin Woods

v

Warden

Wanza-Jackson

1:20-cv-618

HABEAS CORPUS

this is an open case and im a pro se litigant and need my legal materials .

I feel totally violated and have been subjected to the most unsual behavior from staff and adminstration, and it seems lik the behavior continues all the way out the door.

I have no chocie to belevie this behavior is a direct result from from greviences and informal complant filed because inmates has been subjected to food posioning because they was fed food out of a trash can and when myself and the inmates went to medical we was pinished , that day 12-06-21 whwen we seen you we told you what was happening . all im asking for is a legal box to transfer with me

Franklin Woods

PROSE

Communications / Case Actions

This issue has been resolved by the UM and IIS.

Manual Fill-In

Exhibit 2 h

-43-

**STATE OF OHIO )**
                                  **)SS:**
**ROSS COUNTY )**

I, state that the following is true to the best of my knowledge and belief and against the penalty of perjury:

I, Douglas Thompson      , am currently incarcerated at Chillicothe Correctional Institution. On November 27, 2021, I was housed at the Warren Correctional Institution, In Cell "113". On the above evening in question, I ate the scheduled dinner in the chow hall. Within The next few days, I experienced stomach pains and irregular bowel movements. I kited the Medical Department and the Institution Inspector, explained to him what happened. I notified them, stated that I wasn't feeling to well, it most likely was due to the fact that we were fed beans out of the trash, that were contaminated. At one point, those beans were garbage. Not even fit for a dog. An inmate blew the whistle, he was punished for doing so. These actions were actually caught on camera, as I'm sure your aware of. I was advised to fill out an HEALTH SERVICE REQUEST FORM, which I did.

On Sunday December 05, 2021 Lieutenant Tatman entered into our unit, which was "1A". At the time I was being housed there. He started yelling about the inmates being on some "bullshit", because we chose to speak up due to concerns over our health. Lieutenant Tatman aggressively proceeded to make his rounds through-out our unit, yelling, threatening to lock the whole unit down if inmates went to medical.          Exhibit 3a

-44-

Lieutenant Tatman and the Administration at W.C.I are known for abusing inmates, Using Excessive Force. Lieutenant Tatman repeatedly screamed, threatened, "is this what you guys really want to do?".

Lieutenant Tatman then went to cell 111 (inmate Andy Nottingham) and cell 112 (inmate Rich) and threatened the inmates. Stating that he was locking them down under covid-19 protocols. Which he really did, without any grounds. We all stated that our sickness wasn't from covid-19, it was from the food we were fed out of the trash, as if were not even human. We still have the right to be treated accordingly, even though we messed up and broke the law. We were all currently awaiting transfer because we earned the right, by staying out of trouble.

The Lt. said, what more do you want us to do, we already fired the dumb "bitch". I could hear the inmates tell the Lt., that all they wanted was to be checked out to see if they had food poisoning. He then, locked the unit down because the inmates filed a HEALTH SERVICE REQUEST FORM went to see the Dr.

Although I filed a HEALTH SERVICE REQUEST FORM and wrote an electronic kite and informal complaint, I did not follow through with seeking medical attention. Out of the fear of retaliation from Lieutenant Tatman and the W.C.I administration.

At the time, I was a level two (2), medium security and was awaiting my transfer to London Correctional Institution, as stated before, I did not want the administration to delay my transfer or place me in Segregation. That would have raised my security back to a level 3 and It would have prevented me from transferring to my current institution.

Exhibit 3a

Douglas Thompson

-45-

Douglas Thompson

**SWORN AND SUBSCRIBED BEFORE ME PERSONALLY ON THIS,** 4th **DAY**

November (CM)
**OF** ~~JULY~~ **2022.**

Exhibit 3a

Notary Public

My Commission expires on 1/19/2027



CHERRI MARSHALL
NOTARY PUBLIC - OHIO
MY COMMISSION EXPIRES 01-19-2

- 46 -

**AFFIDAVIT OF JEREMY JOHNSON**

STATE OF OHIO)
        ) SS:
ROSS COUNTY )

I, Jeremy Johnson , certify that the below information is true to the best of my knowledge and belief and under the penalty of perjury:

On November 27, 2021, I went to eat evening chow in the cafeteria after the Ohio State / Michigan game I arrived in the dining hall, got my tray from the line by Aramark and its employees, sat down and ate the meal which mainly consisted of beans which I think it was burrito filling, I went back to my unit. A few hours later I started to feel sick. I didn't think much of it until the next morning when I started throwing up and had diarrhea.

    I sent in a paper Medical request form to be seen by Medical. I wrote on it "I don't know what's wrong I ate dinner a few days ago and I have been extremely sick". I turned in the request. During the same time, several inmates in my unit was experiencing the same thing, but I heard they was food poisoned, so I thought to myself I must have been food poisoned also.

    I Immediately Kited Inspector Bullock, he stated I needed to contact medical even though I had already and they had done nothing. I decided to file another request to be seen by medical, thinking maybe they are now aware of me being food poisoned the would rush to see me.

    I explained that I was worse than I had been days prior instead of getting better. I specifically indicated to medical in the kite that I believed I had been poisoned (sickened) by eating food served to me by Aramark.

    Medical did not send for me to be seen even though they were fully aware of what I was experiencing as by this time I had wrote around I think two request to be seen it could have been three but I certainly placed them on notice that I needed help.

    Sunday on December 05, 2021 at 6:30 am Lieutenant Tatman entered Unit 1-A and began screaming, yelling that he has a bunch of inmates in here on some "bull-shit" who are acting like "bitches" and yelled, "I'm locking the entire Unit down, because we fired the bitch what else do you want us to do?" He continued to yell, "Your sick so what... sleep it the fuck off" He can be seen on the camera's in 1-A walking around ranting. Lt. Tatman, went around to the cells in 1-A that requested to be seen by Medical, trying to intimidate me and the other inmates from going to Medical or further reporting what we were experiencing, he was saying "shit rolls downhill." If my staff gets in trouble over that Aramark bitch I will make your life hell. If you go to medical your ass is locked the fuck down" "it's your choice!" This can be seen by the cameras and recalled by the other inmates. Lt. Tatman, threats of lock down, and making our life hell resulted in me being intimidated into not going to Medical for fear of retaliation, even though I was sick. Lt. Tatman, stated "I've seen what each of you mother-fuckers wrote to medical".

Exhibit 3

-47

## PROOF OF SERVICE

I certify that a true copy of this motion has been sent by Regular U.S. mail to the below listed Defendant's:

OHIO DEPARTMENT OF
REHABILITATION AND
CORRECTION
4545 Fisher Rd.
Columbus Ohio, 45321

Wanza Mitchell –Jackson
5787 State route 63
Lebanon Ohio, 45036

Isaac Bullock
5787 State route 63
Lebanon Ohio, 45036

Sgt. J. Maggard
5787 State route 63
Lebanon Ohio, 45036

" Steven Williams"
5787 State route 63
Lebanon Ohio, 45036

"Case Manager Kearns"
5787 State route 63
Lebanon Ohio, 45036

Karen Stanforth
4545 Fisher Rd.,
Columbus Ohio, 45321.

David Agee
5787 State Route 63
Lebanon Ohio 45036

Tim Barttrum "President"
2400 Market Street
Philadelphia PA 19103-3041

Lt. Tim Tatman
5787 State route 63
Lebanon Ohio, 45036

"Lt David Sandridge "
5787 State route 63
Lebanon Ohio, 45036

"C.O Koch",
5787 State route 63
Lebanon Ohio, 45036

"C.O John Wells"
5787 State route 63
Lebanon Ohio, 45036

"C.O Ms. Sedlitz"
5787 State route 63
Lebanon Ohio, 45036

Dr. William Harlan
5787 State route 63
Lebanon Ohio, 45036

Meredyth McLaughlin
"Health Care Administrator"
5787 State route 63
Lebanon Ohio, 45036

" Nurse Practitioner "Sky Murray"
5787 State route 63
Lebanon Ohio, 45036

" Captain Jason Back"
5787 State route 63
Lebanon Ohio, 45036

C.O Ms. Kimberly Panunzio"
5787 State route 63
Lebanon Ohio, 45036

Deputy Warden
Douglas Luneke
5787 State route 63
Lebanon Ohio, 45036

Dr. Raymond Corbett
5787 State route 63
Lebanon Ohio, 45036

" Unit Manager
Rodney Macintosh"
5787 State Route 63
Lebanon Ohio, 45036

Aramark Correctional Services LLC
2400 Market Street
Philadelphia, Pa 19103-3041

Deputy Warden
Robert Welch
5787 State Route 63
Lebanon Ohio, 45036

" Nurse Practitioner "Rachel Allen"
5787 State route 63
Lebanon Ohio, 45036

Aramark manager "Ms. Woods"
2400 Market Street
Philadelphia Pa 19103-3041

C.O Larry Farmer
5787 State Route 63
Lebanon Ohio, 45036

C.O Fredrick Epperson
5787 State Route 63
Lebanon Ohio, 45036

Lt. Kayla Stebleton
5787 State Route 63
Lebanon Ohio, 45036

And electronically filed both on this __2__ day of January 2024.

_Franklin Woods_
Franklin Woods
Inmate No.730633
15802 State Route 104 N
Chillicothe, Ohio 45601

**PLAINTIFF-PRO SE.**

_48_