### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| **FRANKLIN WOODS,** | : | |
| | : | |
| **Plaintiff,** | : | **Case No.: 22-cv-4420** |
| | : | |
| **v.** | : | **Judge Algenon L. Marbley** |
| | : | |
| **ARAMARK CORRECTIONAL** | : | **Magistrate Judge Elizabeth P. Deavers** |
| **SERVICES, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

### OPINION & ORDER

This matter is before the Court on Plaintiff Franklin Woods's objections (ECF No. 107) to the Magistrate Judge's Report and Recommendation (ECF No. 102) recommending that this Court grant the pending motions for judgment on the pleadings and motion to dismiss (ECF Nos. 43, 83, 90). For the reasons that follow, Plaintiff's Objections (ECF No. 107) are **OVERRULED.** Accordingly, the Magistrate Judge's Report and Recommendation (ECF No. 102) is **ADOPTED.**

### I. BACKGROUND

Plaintiff brought this case alleging claims arising from an employee of Defendant Aramark serving Plaintiff and other inmates food removed from a trash can on November 27, 2021. (ECF No. 4). Plaintiff filed a complaint to which the Magistrate Judge issued a Report and Recommendation. (ECF No. 5). Plaintiff then filed an Amended Complaint (ECF No. 31) which the Magistrate Judge accepted as the operating complaint and vacated the initial Report and Recommendation. (ECF No. 22). Certain State Defendants and the State of Ohio as an interested party (collectively, the "ODRC Defendants") filed motions for judgment on the pleadings. (ECF Nos. 43, 83). Defendant Tim Barttrum moved to dismiss the Amended Complaint. (ECF Nos. 90).

1

The Magistrate Judge has now issued a new Report and Recommendation for this Court's consideration. (ECF No. 102).

In the Amended Complaint, Plaintiff alleges Defendants Aramark, Aramark coordinator Woods, John/Jane Doe Aramark supervisor (Defendant Tim Barttrum), and other correctional officers intentionally served, or failed to prevent the serving of, food out of a trash can to Plaintiff and other inmates. (ECF No. 31). Plaintiff alleges that hours after dinner, he had an upset stomach, cramps, severe diarrhea, and vomiting. (*Id*. ¶ 34). After his symptom persisted, Plaintiff alleges that correctional officers informed plaintiff that two inmate food workers—inmates Edward Smith and Richard Burton—alerted a lieutenant and officer that "'Ms. Woods' Aramark Correctional Services LLC Food Manager, had retrieved beans from a contaminated trash can, and had them placed on trays to be served." (*Id*. ¶ 48) According to Plaintiff, Smith and Burton were placed in segregation to try to silence them. (*Id*. ¶ 49).

On December 2, 2021, Plaintiff filed an informal complaint with Defendant Isaac Bullock concerning the November 27, 2021 dinner. (*Id*. ¶ 51). Plaintiff's complaint stated that "Monday - Wednesday I had been having abnormal bowel movements, and this may be the very cause. Please look into these issues for me." (*Id*. at 33). Bullock responded the "issue has been verified and addressed" and that "[c]orrective actions have been taken. You will need to complete a Health Service Request form to address your medical concerns" (*Id*.). Plaintiff alleges that instead of directing staff to send plaintiff to medical, Bullock informed Plaintiff that he would have to complete a health service request for his medical needs, which Plaintiff notes would take a couple of days. (*Id*. ¶ 51).

On some undisclosed date, Plaintiff submitted a health service request form explaining his health issues and indicating "[m]y stomach is upset and I have been having pains for the past couple

days." (*Id*. ¶ 39). Plaintiff also explains that, on some unknown date after receiving the December 3, 2021, response from Bullock, Plaintiff "did as he was instructed by the Inspector to contact Medical even though he had already sent in his first request to be seen. So Plaintiff filed another 'Health Service' request form explaining his illnesses and pains, this time he specifically indicated that he believed he had been poisoned (sickened) by digesting contaminated food served to him by Aramark and requested to be seen." (*Id*. ¶ 56).

Plaintiff alleges the medical staff refused to see him in attempt to cover up the fact that inmates were served contaminated food. (*Id*. ¶¶ 58, 59). At the same time, Plaintiff also alleges that, on December 5, 2021, he was escorted to the medical staff and returned on December 6, 2021. (*Id*. ¶¶ 89, 90).

On some undisclosed dates, family members of the impacted inmates allegedly called the institution, demanding that their family members be seen by medical or they would contact the state troopers. (*Id*. ¶ 69). When Plaintiff was finally escorted to see the medical staff on December 5, 2021, Plaintiff was there with nine other inmates and saw nurses, Defendants Skye Murry and Rachel Allen. (*Id*. ¶¶ 70-75). He reported "abnormal bowel movements, that his stomach and that he had vomited twice." (*Id*. ¶ 71). He alleges he received no treatment. (*Id*.). Instead, Plaintiff claims that the nurses conducted a "fake screening" consisting solely of checking their blood pressure before stating, "well we seen you." (*Id*.). Plaintiff further alleges that rather than providing him with any treatment, the defendant nurses made jokes about the inmates being fed out of the trash can and stated, "this is what you signed up for coming to prison." (*Id*. ¶ 74). Plaintiff claims the inmates were taken from medical and placed on "quarantine status" as a punishment for filing grievances and seeking medical treatment. (*Id*. ¶ 75).

Plaintiff was escorted back to see doctors on December 6, 2021. (*Id*. ¶ 89). There, he was "seen by Defendant William Harlan or Raymond Corbett." (*Id*.). Plaintiff alleged he communicated that "his stomach still hurts extremely bad, and he couldn't keep any fluids down, and still had diarrhea." (*Id*.). The Amended Complaint includes that either one or both doctors "refused to diagnosis Plaintiff or the other inmates even with their clear symptoms, knowing they were fed out of a contaminated trash can and kept them on 'Quarantine Status' until Thursday, December 09, 2021." (*Id*. ¶ 95).

The Amended Complaint includes various allegations that Defendants tried to cover-up the incident and retaliated against inmates who sought medical attention or filed grievances. Plaintiff alleges that Medical provided a list to prison staff of all inmates who requested to be seen by medical. (*Id*. ¶ 62). The morning before inmates were escorted to medical, Defendant Lt. Tim Tatman—sent by Defendant Captain Agee—allegedly screamed at the inmates reporting symptoms, noting that he had seen their medical complaints and stating that "I'm locking the entire Unit down, because we fired the bitch what else do you want us to do? . . . "You[']r[e] sick so what . . . sleep it the fuck off." (*Id*. ¶¶ 65-68). Plaintiff claims this was to intimidate inmates from going to medical or further reporting their symptoms, threatening that he would make their lives living hell if his "staff gets in trouble over that Aramark bitch" and presented them with a choice to go to medical or remain locked down. (*Id*.). Plaintiff also alleges that between November 27, 2021 until December 10, 2021, he was so sick he could not leave his bed, but that Defendants Epperson and Farmer disregarded his requests to see medical. (*Id*. ¶ 76).

Plaintiff claims that defendants Luneke, Back, Williams, Macintosh, Wells, and several others subsequently held a "town hall meeting," during which Luneke stated that inmates were not transferring institutions for at least eight weeks, their doors were to remain closed, and no questions

were to be answered regarding "Aramark." (*Id.* ¶ 98). Plaintiff alleges that defendants placed them on lock-down "to prevent plaintiff and the other inmates from exposing that they were fed contaminated food by Aramark" and in retaliation for filing informal complaints and for seeking information and medical attention in connection with the allegedly contaminated food. (*Id.* ¶¶ 113, 118).

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 72(b), district judges must "determine de novo any part of the magistrate's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). In its review, the Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.*; 28 U.S.C. §636(b)(1). While the Court must consider all timely objections, the "filing of vague, general, or conclusory objections does not meet the requirement of specific objections and is tantamount to complete failure to object." *Slater v. Potter*, 28 Fed. App'x 512, 513 (6th Cir. 2002) (citing *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995)). The objections must also "be clear enough to enable the district court to discern those issues that are dispositive and contentious." *Miller*, 50 F.3d at 380 (citing *Howard v. Sec'y of Health & Hum. Servs*, 932 F.2d 505, 509 (6th Cir. 1991)).

The pleadings of a pro se litigant are held to "less stringent standards than formal pleadings drafted by lawyers." *Garrett v. Belmont Cnty. Sheriff's Dep't*, 374 F. App'x 612, 614 (6th Cir. 2010) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). Nevertheless, "basic pleading essentials" are still required. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989). Among such essentials are the obligations under Fed. R. Civ. P. 8(a)(2) to provide "a short and plain statement of the grounds for the court's jurisdiction" and "a short and plain statement of the claim showing that the pleader is entitled to relief."

5

### III.     LAW AND ANALYSIS

The Amended Complaint alleges that all Defendants committed various wrong doings, including violating Plaintiff's Eighth, Fourth, and Fourteenth Amendment rights. (ECF No. 31). The Report and Recommendation suggests dismissing all claims and granting the pending motions for judgment on the pleadings and motion to dismiss (ECF Nos. 43, 83, 90). (ECF No. 102).

Plaintiff objects to the recommendation. (ECF No. 107). ODRC Defendants and Defendant Tim Barttrum responded to the objections.

### A.  Tim Barttrum's Motion to Dismiss

This Court may dismiss a cause of action under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted." Such a motion "is a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual allegations." *Golden v. City of Columbus*, 404 F.3d 950, 958–59 (6th Cir. 2005). This Court cannot dismiss a complaint for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [plaintiff's] claim which would entitle [plaintiff] to relief." *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). The complaint should also be read as a whole, even if a specific alleged fact read in isolation appears meaningless. *Doe (R.A.) v. Best W. Int'l, Inc.*, No. 2:23-cv-3459, 2024 WL 3850958, at *1 (S.D. Ohio Aug. 16, 2024) (quoting *Ricchio v. McLean*, 853 F.3d 553, 557 (1st Cir. 2017)). A complaint's factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

The Magistrate Judge recommends granting Barttrum's Motion to Dismiss because Plaintiff's Amended Complaint contains no allegations of Barttrum's involvement. (ECF No. 102 at 9). Plaintiff objects to granting Barttrum's Motion to Dismiss because "Plaintiff can demonstrate the existence of a policy or custom"—Aramark's Tray Replacement Policy—which pertained to

serving contaminated food tray replacement and sanitation. Plaintiff explains that Barttrum, as Aramark's president, was involved in the incident and that Aramark maintained a custom or practice allowing employees to serve food removed from a trash can or that Aramark knew about the employee's alleged conduct. (ECF No. 107 at 3-4).

Nonetheless, as Plaintiff has recognized and agreed, "proof of personal involvement is required for a supervisor to incur personal liability." *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008). Here, Plaintiff does nothing to cure the deficient allegations of personal involvement. The Magistrate Judge properly found that "Plaintiff's allegations do not give rise to a reasonable inference that Defendant Barttrum, in his role as Aramark's president, had any involvement in the food service incident at WCI on November 27, 2021, which forms the basis of Plaintiff's various claims here." (ECF No. 102 at 9). Plaintiff does not allege any conduct committed by Barttrum in the Amended Complaint and the objection only emphasizes that Defendant Barttrum is the president of Aramark and concludes that he should be held liable for policies, or lack thereof, in place. (ECF No. 107 at 2-4). This is insufficient and fails to state a claim.

Plaintiff's objection to granting Barttrum's Motion to Dismiss is **OVERRULED**.

## B. Motions for Judgment on the Pleadings

When a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is based on the argument that the complaint fails to state a claim upon which relief may be granted, the Court employs the same legal standard as a Rule 12(b)(6) motion. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 11 (6th Cir. 1987) ("Where the Rule 12(b)(6) defense is raised by a Rule 12(c) motion for judgment on the pleadings, we must apply the standard for a Rule 12(b)(6) motion"). The Court will grant the Rule 12(c) motion "when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *JPMorgan Chase Bank, N.A.*

*v. Winget*, 510 F.3d 577, 582 (6th Cir. 2007) (quoting *Paskvan v. City of Cleveland Civil Serv. Comm'n*, 946 F.2d 1233, 1235 (6th Cir. 1991)).

When a party moves for judgment on the pleadings, the Court must construe "all well-pleaded material allegations of the pleadings of the opposing party . . . as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Id.* at 581. The Court is not required, however, to accept as true mere legal conclusions unsupported by factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In addition to allegations in the complaint, the Court may take into account "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint." *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997) (citation omitted). Additionally, the Court "may consider exhibits attached to a motion for judgment on the pleadings 'so long as they are referred to in the Complaint and are central to the claims contained therein.'" *Roe v. Amazon.com*, 170 F. Supp. 3d 1028, 1032 (S.D. Ohio 2016), *aff'd*, 714 F. App'x 565 (6th Cir. 2017) (quoting *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir.2008)).

### 1. *Eighth Amendment Claim – Serving Contaminated Food*

The Magistrate Judge recommended granting the ODRC Defendants' Motions with respect to the Eighth Amendment claim because Plaintiff failed to allege the ODRC Defendants' personal involvement. (ECF No. 102 at 15). The Magistrate Judge noted that two defendants, Sandridge and Sedlitz, are vaguely alleged to have some involvement but nonetheless, Plaintiff failed to allege facts suggesting any of the requirements under the Eight Amendment. Plaintiff's objection focuses on Sandridge and Sedlitz and maintains that: (1) the isolated instance of serving contaminated food was "sufficiently serious" because it was intentional; and (2) Sandridge and Sedlitz were aware the

contaminated food was being served, so they were deliberately indifferent to Plaintiff's health and safety (ECF No. 107 at 8-10).

The Eighth Amendment "prohibits the infliction of 'cruel and unusual punishments' on those convicted of crimes." *Wilson v. Seiter,* 501 U.S. 294, 296 (1991). It requires prisoners be provided with basic human necessities such as "food, clothing, shelter, and medical care." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). For a conditions of confinement claim, courts "must ask both if 'the officials act[ed] with a sufficiently culpable state of mind' and if the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation." *Hudson v. McMillian*, 503 U.S. 1, 8 (1992) (quoting *Wilson,* 501 U.S. at 298, 303). "Extreme deprivations are required to make out a conditions of confinement claim. . . . 'only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation.'" *Id*. at 9 (quoting *Wilson,* 501 U.S. at 298).

In order to state an Eighth Amendment claim based on prison conditions, the claim must have both an objective component and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)*.* The objective component requires that the deprivation be "sufficiently serious." *Id*. at 834; *Hudson*, 503 U.S. at 8; *Wilson*, 501 U.S. at 928. A prisoner must show that he "is incarcerated under conditions posing a substantial risk of serious harm," *id.*; *see also Miller v. Calhoun Cnty.*, 408 F.3d 803, 812 (6th Cir. 2005), or that he has been deprived of the "minimal civilized measure of life's necessities," *Wilson*, 501 U.S. at 298 (quoting *Rhodes*, 452 U.S. at 347); *see also Hadix v. Johnson*, 367 F.3d 513, 525 (6th Cir. 2004).

The subjective component requires that prison officials had a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834. Plaintiffs must show that prison officials acted with "deliberate indifference" to a substantial risk that the prisoner would suffer serious harm. *Wilson*, 501 U.S. at

302 –03; *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 550 (6th Cir. 2009). A prison official must subjectively know of an excessive risk of harm to an inmate's health or safety and disregard that risk. *Farmer*, 511 U.S. at 837. Deliberate indifference is characterized by obduracy or wantonness, not inadvertence or good faith error. *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Mere negligence is not enough to satisfy this subjective element. *Id.*

Turning first to Plaintiff's assertion that this incident is "sufficiently serious" to meet the objective component, Plaintiff fails to indicate that this is alleged in his Amended Complaint. As the Magistrate Judge explained, it is well-established in courts in this Circuit that isolated instances of food contamination are not sufficiently serious to constitute an Eighth Amendment violation. *See Correa v. Cullum*, No. 1:17-CV-300, 2018 WL 2020615, at *4 (S.D. Ohio May 1, 2018), *report and recommendation adopted*, No. 1:17CV300, 2018 WL 2735635 (S.D. Ohio June 7, 2018). Plaintiff does not deny this well-established case law but attempts to distinguish this case from those found not sufficiently serious by asserting this case alleges intentionally served contaminated food. (ECF No. 107 at 7). The ODRC Defendants argue this attempt to distinguish may apply to Aramark, but not to the ODRC employees. (ECF No. 108 at 5).

In support of his assertion, Plaintiff references two cases of intentionally contaminated food being served to inmates and concludes that these cases represent that isolated incidents may be Eighth Amendment violations. (ECF No. 107 at 8). One case Plaintiff relies on is *Gray v. Boose*, No. 4:22-CV-10100, 2022 WL 662294 (E.D. Mich. Mar. 4, 2022). In *Gray* the plaintiff claimed that a deputy was poisoning his food trays. 2022 WL 662294, at *2. The court found the assertion that plaintiff was intentionally poisoned, resulting in headaches and muscle cramps, was sufficient to state an Eighth Amendment claim against the officer allegedly poisoning the plaintiff. *Id.* Here, however, Plaintiff does not allege this level of intention or action by Defendants Sandridge and

Sedlitz. Plaintiff only alleges they were alerted that "'Ms. Woods' Aramark Correctional Services LLC Food Manager, had retrieved beans from a contaminated trash can, and had them placed on trays to be served." (ECF No. 31 ¶ 48). Further, the comparison of the facts in *Gray* to the facts here further supports the well-established holding that isolated incidents of contaminated food is insufficient for an Eighth Amendment claim. In *Gray*, the defendant officer was not only alleged to be poisoning Plaintiff's food trays, but the food trays of various prisoners over time. *Gray*, No. 4:22-CV-10100, 2022 WL 662294, at *1. Here, there is one isolated incident at issue.

Plaintiff also relies on *Mitchell v. Beshear*, No. 5:09CV-00003-R, 2011 WL 1458309 (W.D. Ky. Apr. 15, 2011). In *Mitchell*, the court during summary judgment found that "*intentionally* tampering with an inmate's food might allow a plaintiff to demonstrate knowing disregard despite a one-time occurrence." *Mitchell*, 2011 WL 1458309, at *3 (W.D. Ky. Apr. 15, 2011). One defendant officer in *Mitchell* was told that food being served to inmates contained feces, and the officer thought the comment was figurative on the food quality, so she did not meet the subjective requirement for knowingly disregarding a serious risk. *Id*. at *4. The court found the defendants did not act in a way that rises to the level of a constitutional violation. *Id*. The court did not assess the objective prong after finding the subjective prong was not met. While intentionally serving contaminated food in one instance may allow a demonstration of knowing disregard as the court noted in *Mitchell*, this finding goes to the subjective prong. Plaintiff still must meet the objective prong.

Plaintiff's reliance on *Mitchell* or *Gray* are thus unconvincing for this Court's analysis on the objective prong. Even if this Court accepts Plaintiff's assertion that the objective prong was met, Plaintiff only alleges that Defendants Sandridge and Sedlitz were aware of food taken from the trash can, not that they were involved in "intentionally tampering with" the food, that they were aware

contaminated food was being served before or while the food was served, or that they had any opportunity to prevent it from happening. *See, e.g.*, *Mitchell*, 2011 WL 1458309, at *3.

The Magistrate Judge correctly concluded that alleging the knowledge that the food was in the trash can, without alleging anything further to show a risk was consciously disregarded, does no more than create speculation or suspicion of a cause of action. (ECF No. 102 at 18). This is insufficient as a matter of law to state a claim for relief. *See League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) ("The factual allegations, assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show entitlement to relief.").

It follows that, as well-established in this Circuit, this one isolated instance of food contamination does not meet the objective component. *See Correa*, 2018 WL 2020615, at *4. As such, the mere awareness of an Aramark employee taking food from the trash to serve it is insufficient to suggest that ODRC Defendants Sandridge and Sedlitz acted with deliberate indifference to a substantial risk of serious harm. Plaintiff thus does not state an Eighth Amendment conditions of confinement claim against the ODRC Defendants Sandridge and Sedlitz,

Plaintiff also argues that ODRC Defendants Sandridge and Sedlitz are liable for a failure to prevent harm. Plaintiff maintains "that food was intentionally removed from a contaminated trash can by Aramark Defendant Woods, which was brought to ODRC Defendants' Sandridge and Sedlitz attention (the complaint properly alleges that inmates reported the incident), the two had full knowledge and permitted (approved) the food to be served, the two were state employees supervising the meal who each intentionally permitted the contaminated food to be served to Plaintiff." (ECF No. 107 at 9–10). Indeed, Plaintiff has alleged harm was done, but not "every injury suffered by one prisoner at the hands of another" amount to "constitutional liability for prison

officials responsible for the victim's safety." *Farmer*, 511 U.S. at 834. An Eighth Amendment violation occurs only when two requirements are met: the same subjective and objective components as this Court has examined. *Crawford v. Tilley*, 15 F.4th 752, 761 (6th Cir. 2021). Plaintiff's allegations are only that Defendants Sandridge and Sedlitz received a report that Aramark Defendant Woods had retrieved beans from a contaminated trash can and had them placed on trays to be served. (ECF No. 31 ¶ 48). This is insufficient to state an Eighth Amendment claim. As the ODRC Defendants argue, Plaintiff did not allege that the ODRC Defendants contaminated, served, had prior ability to prevent the food from being served or consumed, or had reason to believe that the food would cause serious harm. (ECF No. 108 at 7).

This Court does not minimize Plaintiff's claims of illness that resulted from this repulsive incident; nonetheless, under well-settled law, Plaintiff does not present sufficient allegations. Plaintiff has not provided this Court with allegations from which it could draw warranted inferences that Defendants were deliberately indifferent to a substantial risk of harm. Plaintiff has failed to state an Eighth Amendment claim with respect to the serving of the food, as such, the objection is **OVERRULED**.

### 2. *Eighth Amendment – Delayed/Denied Medical Treatment*

Plaintiff also objects to the recommended dismissal of the Eighth Amendment Claim related to Plaintiff's medical treatment. To begin, this Court notes that not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 843 (6th Cir. 2002) (quoting *Estelle v. Gamble*, 429 U.S. 97, 105 (1976)). With respect to medical claims, the Eighth Amendment is violated when there is a "deliberate indifference to serious medical needs of prisoners." *Farmer*, 511 U.S. at 835. This requires "more than ordinary lack of due care for the prisoner's interests or

safety." *Id*. (quoting *Whitley v. Albers,* 475 U.S. 312, 319). A plaintiff must satisfy an objective and subjective component. The objective component is whether there is "a sufficiently serious medical need." *Baynes v. Cleland*, 799 F.3d 600, 618 (6th Cir. 2015). "Routine discomforts of prison life do not suffice." *Parker v. Bowen*, No. 4:18cv1744, 2018 WL 6267182, at *2 (N.D. Ohio Nov. 30, 2018) (citing *Hudson*, 503 U.S. at 8).To satisfy the subjective component, the plaintiff must show the act was with deliberate indifference. *Baynes*, 799 F.3d 600, 618 (6th Cir. 2015) (quoting *McCarthy v. Place*, 313 Fed.Appx. 810, 814 (6th Cir. 2008)). This requires a showing "that the official: (1) subjectively knew of a risk to the inmate's health [or safety], (2) drew the inference that a substantial risk of harm to the inmate existed, and (3) consciously disregarded that risk." *Jones v. Muskegon Cty.*, 625 F.3d 935, 941 (6th Cir. 2010)

The Magistrate Judge found Plaintiff's allegations as insufficient to state a claim because Plaintiff's medical conditions did not constitute a serious medical need, and the allegations do not show that defendants satisfied the subjective element. (ECF No. 102 at 21–23). Moreover, even if the objective and subjective prongs were met, the claims against Defendants Harlan and Corbett fail because the Amended Complaint failed to identify whether his allegations were against Harlan, Corbett, or both. (*Id*. at 23). Plaintiff specifically accuses the Magistrate Judge of not addressing Plaintiff's allegation that he was quarantined in an effort to avoid treating or diagnosing him, and Plaintiff maintains that he can show his medical issue was sufficiently serious. (ECF No. 107 at 13–14). The Report and Recommendation, however, properly addressed Plaintiff's allegations about the quarantine by stating that, because Plaintiff was seen by medical staff, the "claim is more properly characterized as a disagreement as to whether his condition required treatment." (ECF No. 102 at 22). Indeed, "disagreement with a course of medical treatment does not rise to the level of a

federal constitutional claim under the Eighth Amendment." *Rhinehart v. Scutt*, 894 F.3d 721, 744 (6th Cir. 2018).

Regarding Plaintiff's objection to whether the health issues alleged are "sufficiently serious," Plaintiff argues that the medical defendants were aware Plaintiff ate the contaminated food but refused to treat him by not prescribing medication or treatment to relieve symptoms. (ECF No. 107 at 14–15). Plaintiff asserts that his alleged gastrointestinal issues constitute a serious medical need because it is "one so obvious that even a lay person would easily recognize the necessity for a doctor's attention." (*Id*. at 13).

"A sufficiently serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Yarbrough v. Henderson Cnty., Tennessee*, No. 23-5117, 2024 WL 229665, at *4 (6th Cir. Jan. 22, 2024) (quoting *Griffith v. Franklin Cnty., Kentucky*, 975 F.3d 554, 567 (6th Cir. 2020) (internal quotation marks omitted)). Indeed, "[c]ourts are reluctant to find that gastrointestinal symptoms alone may constitute a sufficiently serious medical need." (ECF No. 102 at 21). This alone, however, does not mean "it appears beyond doubt that the plaintiff can prove no set of facts in support of [plaintiff's] claim which would entitle [plaintiff] to relief." *Mayer*, 988 F.2d at 638. Even so, it is compelling when there is a lack of allegations of Plaintiff's symptoms (and how he expressed them), the severity, and any clear chronological order. While the upset stomach, cramps, abnormal bowel movements, and vomiting alleged may still be symptoms found to state a claim under the Eight Amendment, this has been the case when it was determined inmates experienced the *need* for medical treatment. *Blackmore v. Kalamazoo Cnty.,* 390 F.3d 890, 900 (6th Cir.2004).

15

For example, in *Blackmore*, the court found that plaintiff did not need to show that the medical condition worsened or deteriorated because he could show that he experienced the need for medical treatment. *Id*. After two days of "unrelenting complaints and vomiting" and complaining of "severe" stomach pain, he was diagnosed with "classic signs of appendicitis" and had an appendectomy. *Id*. Similarly, in *Preyor v. City of Ferndale*, 248 F. App'x 636, 642 (6th Cir. 2007), the plaintiff was a detainee with diabetes and in need of periodic shots of insulin. He showed signs of detoxing from a heroin addiction, was found with a "large amount of green vomit" on the floor, was seen lying on the cell floor, and suffered from "severe" stomach pain, vomiting, and diarrhea causing dehydration. *Id*.

Here, Plaintiff has alleged an unclear timeline of symptoms and an even more unclear indication of the severity of the symptoms he expressed to Defendants. For example, Plaintiff alleges sending in requests to see medical, without alleging when these requests were sent. (ECF No. 31 ¶¶ 39, 46). Plaintiff mentioned he wrote "[m]y stomach is upset and I have been having pains for the past couple days." (*Id*. ¶ 39). An "upset" stomach does not rise to the level of a serious medical need so obvious that one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.

Plaintiff has shown that he had symptoms, but his allegations fall short of demonstrating serious medical need. Plaintiff indicated being escorted to Medical on December 5, 2021, and reporting that he had "abnormal bowel movements, pain in his stomach and had vomited twice." (ECF No. 31 ¶ 71). He alleges not receiving any treatment. (*Id*.). When returning the next day, Plaintiff saw "Defendant William Harlan or Raymond Corbett" on December 6, 2025, and reported that "his stomach still hurts extremely bad" that he "couldn't keep any fluids down, and still had diarrhea." (*Id*. ¶ 90). Plaintiff was quarantined for three days and then no longer reports asking to

return, having any severe or worsening symptoms, or having any symptoms at all after the quarantine. Plaintiff does allege that between November 27, 2021 and December 10, 2022, Defendants Fredrick Epperson and Larry Farmer were Plaintiff's "full-time unit 1-A C. O's that failed their duties as 2nd shift staff and was deliberate indifferent to the Plaintiff health and safety when they disregarded multiple requests from the Plaintiff to call medical because he was extremely sick to the point he couldn't make it out of the bed." (ECF No. 31 ¶ 76). This, however, is a questionable conclusion considering Plaintiff indicating being escorted to see the medical staff on December 5 and December 6. (ECF No. 31 ¶¶ 70, 89). The allegations in the Amended Complaint do not suggest facts that would meet the objective prong of the Eighth Amendment analysis.

As to the subjective component, it is not alleged that the defendants had the "sufficiently culpable state of mind." *Phillips v. Roane Cnty., Tenn.*, 534 F.3d 531, 541 (6th Cir. 2008). The subjective requirement "prevent[s] the constitutionalization of medical malpractice claims; thus, a plaintiff alleging deliberate indifference must show more than negligence or the misdiagnosis of an ailment." *Rouster v. Cnty. of Saginaw*, 749 F.3d 437, 446–47 (6th Cir. 2014) (quoting *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir.2001). Each officer must be addressed individually for deliberate indifference claims. *Phillips*, 534 F.3d at 542. Plaintiff provides conclusory statements for Defendants. For example, Plaintiff alleges "Lt. Kayla Stebelton acted with deliberate indifference to Plaintiff health and safety when she failed her duties to make Plaintiff aware of the food being contaminated which was the reason he was ill." (ECF No. 31 ⊮ 43). Similarly, "Lt. Kayla Stebelton, also was deliberate indifferent to the Plaintiffs health and safety when she failed her duties and allowed the administration to falsely quarantine the Plaintiff when he sought medical attention for his illness." (*Id*. ⊮ 44). While Plaintiff explains Lt. Kayla Stebelton was aware of food being served from the trash (*Id*. ⊮ 42), Plaintiff fails to allege why this defendant would know that Plaintiff

indeed ate the food from the trash, was suffering from any symptoms or conditions, that these symptoms were severe or a substantial risk to health, or that the medical team did not properly address Plaintiff's symptoms or conditions. While Plaintiff need not allege each fact, the complaint's factual allegations "must be enough to raise a right to relief above the speculative level" and Plaintiff has not met this standard. *Twombly*, 550 U.S. at 555.

Another relevant example is that Plaintiff alleges Deputy Warden Robert Welch was aware of the food served from the trash and "was deliberate indifferent to Plaintiffs health and safety when he didn't issue W.C.I. administration to escort the Plaintiff to medical immediately upon his knowing of this incident." (*Id*. ¶¶ 45, 46). But Plaintiff fails to allege why the defendant would know of the severity Plaintiff's symptoms or conditions, or that he was not being seen and properly treated by medical. Plaintiff's allegations fail to this extent throughout the Amended Complaint. As the Magistrate Judge correctly concluded "Plaintiff's conclusory allegations of deliberate indifference are unaccompanied by any facts suggesting that any ODRC Defendants possessed a 'sufficiently culpable state of mind, rising above negligence or even gross negligence and being tantamount to intent to punish.'" (ECF No. 102 at 23 (quoting *Broyles v. Corr. Med. Servs., Inc*., 478 F. App'x 971, 975 (6th Cir. 2012)).

As to the allegations against Drs. Harlan and Corbett, the Magistrate Judge concludes that Plaintiff's complaint also fails for not identifying which defendant committed the wrongdoing. Plaintiff makes general arguments in his objections regarding the medical department having fabricated reports, and specifically addresses Dr. Harlan and Dr. Corbett. At any rate, the Amended Complaint is not specific when alleging the conduct of these doctors; rather, it alleges "Defendant William Harlan or Raymond Corbett" committed an act, but in using the disjunctive "or" does not state which of the defendants—Harlan or Corbett—committed the act in question. Plaintiff,

18

however, must attribute factual allegations to particular defendants. *Chappell v. Unknown Party #1*, No. 1:24-CV-358, 2024 WL 2075804, at *3 (W.D. Mich. May 7, 2024) (citing Twombly, 550 U.S. at 544)).

### 3. *First Amendment Retaliation*

The Magistrate Judge found that "Plaintiff's allegations as to any claim of retaliation are non-specific and conclusory" and that there were contradictory statements in the Amended Complaint. (ECF No. 102 at 25 –27). Plaintiff objects to this and the finding that Plaintiff "broadly alleges retaliation" and thus failed to state a First Amendment retaliation claim. (ECF No. 107 at 20).

Plaintiff's objection asserts that he alleged the required factors for First Amendment Retaliation. (*Id*. at 21). To state a First Amendment Claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). Plaintiff argues he satisfies these three factors by showing: (1) he filed Informal Complaint Resolutions (ICRs); (2) he was yelled at, threatened with lockdown, and his Kiosk was blocked; and (3) the acts were done because of his reports and seeking medical attention. (ECF No. 107 at 21).

When focusing on the adverse acts Plaintiff alleged in his objection—yelling, threatening, and blocking his kiosk—the retaliation claim fails Plaintiff references three specific paragraphs where he maintains he has alleged First Amendment retaliation:

> 65. On December 05, 2021 at approximately 6:45am Defendant Lieutenant Tatman entered Unit 1-A and began screaming, yelling that he has a bunch of inmates in here on some "bull-shit" who are acting like "bitches" and yelled, "I'm locking the entire Unit down, because we fired the bitch what else do you want us to do?" He continued

19

to yell, "Your sick so what. . sleep it the fuck off' He can be seen on the camera's in 1-A walking around ranting.

66. Defendant Lt. Tim Tatman, went around to the cells in 1-A that requested to be seen by Medical, trying to intimidate the inmates from going to Medical or further reporting what they were experiencing, he was saying "shit rolls downhill." if my staff gets in trouble over that Aramark bitch I will make your life hell. If you go to medical your ass is locked the fuck down" "it's your choice!" This can be seen by the cameras and recalled by the other inmates. See Exhibit (3) attached Affidavit's.

67. Defendant Lt. Tim Tatman, threats of lock down and making inmates lives hell resulted in some inmates being intimidated into not going to Medical for fear of retaliation even though they were sick.

(ECF Nos. 31 ¶¶ 65–67; 107 at 21–22).

Presumably, Tatman's yelling, and threatening with lockdown, are the two of the three adverse acts Plaintiff references in his objection. Also included in the Amended Complaint is that "Defendant Lt. Tim Tatman, stated 'I've seen what each of you mother-fuckers wrote to medical', which is confidential according to ODRC's Policy 07-ORD-11 Release of Medical Records." (ECF No. 31 ¶ 68). These threats may be sufficient to state a claim if Plaintiff alleged sending any medical requests before December 5, 2021, but Plaintiff makes no such clear statement. *See, e.g.*, *Hill v. Lappin*, 630 F.3d 468, 472–73 (6th Cir. 2010) ("Even the threat of an adverse action can satisfy this element if the threat is capable of deterring a person of ordinary firmness from engaging in the protected conduct."). To the extent that this is meant to serve as allegations to suggest the quarantine was due to Tatman, Plaintiff fails to allege such fact in his Amended Complaint. Rather, Plaintiff alleges "Defendant William Harlan, Raymond Corbett" kept Plaintiff on "quarantine status" when Plaintiff had symptoms. (ECF No. 31 ¶ 95).

The third adverse act alleged by Plaintiff in his objection is the blocking of his Kiosk. (ECF No. 107 at 21). What was alleged in the Amended Complaint, however, is insufficient. With respect to Defendant Bullock, for example, Plaintiff states:

113. Defendant Isaac Bullock and the other staff members each retaliated against Plaintiff and the other inmates to punish them for filing informal Complaints, going to medical and requesting information regarding Aramark Correctional Services LLC.

115. Defendant Isaac Bullock, was the only known staff person who had the authority to restrict Plaintiffs Kiosk from generating new informal complaint resolutions "ICR's" or grievances.

117. Plaintiff requested information concerning the paper ICR's and was ignored by Defendant Isaac Bullock prior to transferring.

(ECF No. 31 ¶¶ 113–17). These allegations show that Defendant Bullock had authority to restrict Plaintiffs Kiosk from new ICRs, Plaintiff was ignored by Bullock at some point, and then concludes Plaintiff was harassed and retaliated against after going to the medical staff to report his condition. This does not allege any facts to suggest that Defendant Bullock blocked the Kiosk or that he was motivated by Plaintiff's protected activity.

Plaintiff merely draws conclusions without alleging specific facts for the required showings to state a claim for retaliation. For another example, with respect to Defendant David Agee, Plaintiff alleges:

63. Defendant David Agee, retaliated against Plaintiff and the other inmates who reported upset stomach, cramping pains, severe diarrhea or vomiting related to the Aramark food served.

64. Defendant David Agee, self-proclaimed that he personally sent in Defendant Lieutenant Tatman as in the Plaintiff informal complaint resolution WCI1221001929. See Exhibit (1) Informal complaints

79. Defendant David Agee, attempted to blame COVID- 19 for his reason for locking down the Plaintiff and other inmates which conflicted with Lieutenant Tim Tatman's statements and actions as only people who went to medical related to upset stomachs, diarrhea, and vomiting were retaliated against by placing them on lockdown claiming COVID-19.

(*Id.* ¶¶ 76, 88, 105). These are more conclusory statements. The Magistrate Judge correctly found that Plaintiff's allegations as to any claim of retaliation are non-specific and conclusory. (ECF No.

107 at 26). Plaintiff does not allege First Amendment retaliation in his Amended Complaint for any defendant.

Plaintiff's objection is **OVERRULED**.

### 4. *Failure to Train*

The Magistrate Judge found that this claim fails because: (1) it improperly inflates a § 1983 claim for supervisory liability with one for municipal liability; and (2) the Amended Complaint fails to allege a supervisory defendant met the requirements for a supervisory liability claim. (ECF No. 102 at 27–29). "[T]o succeed on a supervisory liability claim, [a plaintiff] must show that 'a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate.'" *Crawford v. Tilley*, 15 F.4th 752, 761 (6th Cir. 2021) (quoting *Garza v. Lansing Sch. Dist.*, 972 F.3d 853, 865 (6th Cir. 2020)). Plaintiff objects, stating that he has named defendants who were actively engaged in official duties and violated his constitutional rights. (ECF No. 107 at 24). ODRC Defendants responded, indicating that Plaintiff has identified no supervisors thus he did not state a claim by alleging what each defendant allegedly did or failed to do and that the claim nonetheless conflates § 1983 supervisory liability for municipal liability. (ECF No. 108 at 14).

For the same reasons stated above, Plaintiff fails to state a claim. The allegations in the Amended Complaint are conclusory formulaic recitations of elements for constitutional violations and does not suggest causal connections to any constitutional violations. Plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

*5. Equal Protection*

Similarly, the Magistrate Judge concluded the Equal Protection claim should also be dismissed because of Plaintiff's formulaic recitation of elements. (ECF No. 102 at 30). To state a claim, Plaintiff must show "he or 'she has been intentionally treated differently from others similarly situated'; and (2) 'there is no rational basis for the difference in treatment.' *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011) (quoting *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)).

Plaintiff believes he has alleged the required facts and references an affidavit filed. (ECF No. 107 at 25). The affidavit provided only indicates that the entire unit was locked down rather than only those who specifically filed a medical request, grievance, or complained of being sick. As the ODRC Defendants indicate, "Plaintiff fails to identify an inmate that was treated differently, by State Defendants." (ECF No. 108 at 15).

The affidavit fails to support an Equal Protection Claim. "Similarly situated' is a term of art" and "a comparator" in the situation "must be similar in 'all relevant respects.'" *Paterek v. Vill. of Armada, Michigan*, 801 F.3d 630, 650 (6th Cir. 2015) (quoting *United States v. Green,* 654 F.3d 637, 651 (6th Cir. 2011)). A supportive fact would be that the Defendants do not quarantine large groups of individuals who seek medical care with the same or similar symptoms. This affidavit, as well as the formulaic recitation of elements in the Amended Complaint, fail to state a claim under the Equal Protection Clause.

Plaintiff's objection is **OVERRULED**.

*6. Remaining Issues*

The Magistrate Judge recognized that there are various parts in the Amended Complaint that make allegations but do not state a claim. (ECF No. 102 at 30). Defendant Kearns's inaction and

23

failure to respond to demands for information, for example, are not § 1983 claims. (*Id.*). Further, yelling and the use of degrading language alone do not rise to a constitutional violation. (*Id.*).

Plaintiff attempts to clarify the role and authority of Kearns and the threatening nature of the degrading language and yelling. (ECF No. 107 at 26). Nonetheless, the allegations about Kearns's role were not in the Amended Complaint and, as the Magistrate Judge noted, inaction and failure to respond to demands for information and using degrading language alone are not § 1983 claims. (ECF No. 102 at 30). As such, this objection is **OVERRULED**.

> 7. *Dismissal of Claims Against Remaining Defendants and State Law Claims*

Plaintiff simply states that he believes these findings in the Report and Recommendation should be denied as moot based on his other objections. Given this Court has overruled Plaintiffs' other objections, these objections are **OVERRULED** as well.

### IV.    CONCLUSION

Accordingly, Plaintiff's Objections (ECF No. 107) are **OVERRULED**. This Court **ADOPTS** the Magistrate Judge's Report and Recommendation (ECF No. 102) as this Court's findings of facts and law and the Defendants' Motions for Judgment on the Pleadings and Motion to Dismiss (ECF Nos. 43, 83, 90) are **GRANTED**. The Motion to Stay Discovery is **DENIED as Moot.** (ECF. No. 103). Plaintiff's claims are **DISMISSED,** and his case is **CLOSED.**

**IT IS SO ORDERED.**

**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**DATED:  March 14, 2025**

24