SCANNED AT CCI and E-Mailed
to USDC OHSD on ___4-11,
2025 by _____
No. of Pgs. __51

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTIRICT OF OHIO**
**WESTERN DIVISION**

Franklin Woods

      Plaintiff,

Vs.

Aramark Correctional Services et al,

      Defendant.

Case No: 2:22-CV-4420

Judge: Marbely

Magistrate Judge: Deavers

---

**PLAINTIFF'S MOTION TO ALTER OR AMEND**
**ITS MARCH 14, 2025 JUDGMENT**

---

Now comes Plaintiff Franklin Woods, acting in Pro Se, fashion, respectfully requesting

and urging this Most Honorable Court to Alter or Amend its March 14, 2025 ECF 111 PAGEID

1184-1207 entry and order under Fed. R. Civ. P. 59(e). Plaintiff requests in the alternative that he

be permitted to proceed with a Certificate of Appealability under 28 U.S.C. § 2253(c)(2) and

proceed informa paueris. Memorandum in Support attached hereto.

Franklin Woods
Inmate No. A730633
P.O BOX 5550
Chillicothe, Ohio 45601

**PLAINTIFF PRO SE.**

1

## MEMORANDUM IN SUPPORT

The Court considered Plaintiff Franklin Woods's (hereinafter "Plaintiff") objections at ECF No. 107 to the courts Report and Recommendation at ECF No. 102 which recommending the Court grant motions for judgment on the pleadings and a motion to dismiss filed at ECF Nos. 43; 83 and 90. On March 14, 2025, this court issued an entry and order in Woods v. Aramark Corr. Servs., 2025 U.S. Dist. LEXIS 46973 filed at ECF 111 PAGEID 1184-1207, overruling the Plaintiff's objections and adopted the courts R&R. The Plaintiff for the reasons stated below now moves this court to alter or amend the judgement pursuant to Fed. R. Civ. P. 59(e) to correct manifest errors of law and fact *** to otherwise prevent manifest injustice. Citing Templet v. HydroChem Inc., 367 F.3d at 479; Moore v. Coffee Cnty., 402 F. App'x 107, 108 (6th Cir. 2010) (citing GenCorp., Inc. v. Am. Int'l Underwriters, 178 F.3d 804, 834 (6th Cir. 1999)).

## CONCERNING TIM BARTTRUM'S MOTION TO DISMISS:

The Court's decision indicated that the M.J. recommended granting Barttrum's Motion to Dismiss claiming that Plaintiff's Amended Complaint contained no allegations of Barttrum's involvement. Opinion and Order at ECF 111 PAGEID 1189. The Court's Opinion and Order at ECF 111 PAGEID 1189 acknowledged that Plaintiff objected insinuating that he can demonstrate the existence of a policy or custom of Aramark's Tray Replacement Policy which pertained to serving contaminated food tray replacement and sanitation. explaining that Barttrum, as Aramark's president, was involved in the incident and that "Aramark maintained a custom or practice allowing employees to serve food removed from a trash can or that Aramark knew about the employee's alleged conduct. (ECF No. 107 at 3-4)." Citing Opinion and Order at ECF 111 PAGEID 1190. The Court is overlooking that Defendant Barttrum, in his role as Aramark's president in personally allowing uncorrected policies is equal to proof of personal

2

involvement of itself. Objection at ECF No. 107 at 2-4. ECF 111 PAGEID 1189 however the court stated that this is insufficient and fails to state a claim. Thereby overruling plaintiff's Objections. As stated in the objections Tim Barttrum reviews or signs off on the policy's and contracts that the managers and employees are to follow in their day to day. The court also did not consider that Aramark managers and employees are incentivized to abide by the policy of analytics data. These analytics data incentives come by way of food product purchases, sanitation materials purchase, eating utensils purchases, and labor costs which can be found on page 5 of the mandatory use contract for: operation and management of food service. Tim Barttrum pushes this behavior.  Again the policy's that Tim Barttrum has implemented are so intense and applies unreasonable pressures on Aramark managers and employees such as Josephine Woods resorting to scooping food out of a contaminated garbage can and feeding it to the Plaintiff resulting in food poisoning the court is urged to correct the manifest errors of law and fact and to prevent a manifest injustice.

**THE COURTS JUDGEMENT MOVES TO DISMISS DEFENDANT WOODS FROM THE ACTION OF WHICH SHE DID NOT MOVE THE COURT FOR SUMMARY JUDGEMENT, JUDGMENT ON THE PLEADINGS OR A MOTION TO DISMISS.**

The court's Opinion and Order at ECF 111 PAGEID 1184-1207 moves to dismiss Defendant Josephine Woods from the action of which she did not move the court for Summary Judgement, Judgment on the Pleadings or a Motion to Dismiss. For this reason, this error would create a manifest injustice, thereby reconsideration is urged.

**CONCERNING EIGHTH AMENDMENT CLAIM**
**SERVING CONTAMINATED FOOD:**

3

The court's Opinion and Order insinuates that the Plaintiff's assertion that this incident was "sufficiently serious" to meet the objective component, failed to indicate this in his Amended Complaint. Opinion and Order at ECF 111 PAGEID 1119.

**THE COURT HAS OVERLOOKED CONSIDERATION OF THE "TOTALITY OF THE CIRCUMSTANCES" PLAINTIFF HAS ALLEGED IN THE SECOND AMENDED COMPLAINT SUPPORT THE OBJECTIVE COMPONENT THAT THE DEPRIVATION WAS SUFFICIENTLY SERIOUS AS DISCUSSED IN FARMER V. BRENNAN, 511 U.S. 825. 834 (1994):**

The court has overlooked when viewed under the totality of the circumstances alleged in the second amended complaint Plaintiff meets the "sufficiently serious" standard against the Defendant's Sandridge and Sedlitz. Because although considering a single occurrence the Plaintiff was intentionally served contaminated food of which Sandridge and Sedlitz were placed on notice of it being retrieved from a contaminated trash can to be served, allowed it to be served, and sanctioned the reporting inmate for reporting what occurred and refused to act. Which by legal definition is an accomplice looking to the United States Supreme Courts Twitter v. Taamneh, 598 U.S. 471, 143 S. Ct. 1206, 215 L. Ed. 2d 444 (2023) where in Twitter, the Supreme Court explained that frameworks for analyzing accomplice liability are meant "to help courts capture the essence of aiding and abetting: participation in another's wrongdoing that is both significant and culpable enough to justify attributing the principal wrongdoing to the aider and abettor. 598 U.S. at 504. "Importantly, the concept of 'helping' in the commission of a crime—or a tort—has never been boundless. That is because, if it were, aiding-and-abetting liability could sweep in innocent bystanders as well as those who gave only tangential assistance." Id. at 488. But "the point of aiding and abetting is to impose liability on those who consciously and culpably participated in the tort at issue." Id. at 506, just as the Defendant's Sandridge and Sedlitz did to the Aramark worker, correctional staff have a duty to protect which

4

includes taking corrective actions relating to the inmates under their control of which includes the serving of food or prevention of the serving of contaminated food after being placed on notice of the contamination.

Again under the law an accomplice is defined as one who "knowingly, voluntarily, and with common intent participates with the principal offender in the commission of the crime alleged in the charging instrument." State v. Griffis, 964 S.W.2d 577, 588 (Tenn. Crim. App. 1997). Liability is only appropriate where there is "affirmative conduct" by the tortfeasor because a "failure to act or mere presence during the commission of a tort is insufficient for tort accomplice liability." Id. at 974. The Eighth Amendment imposes duties on prison officials "who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must "take reasonable measures to guarantee the safety of the inmates. Citing Farmer v. Brennan, 511 U.S. 825, 832, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994) (citing Hudson v. Palmer, 468 U.S. 517, 526-527, 104 S. Ct. 3194, 82 L. Ed. 2d 393 (1984); Betts v. New Castle Youth Dev. Ctr., 621 F.3d 249, 256 (3d Cir. 2010). Specifically, under the Eighth Amendment, "prison officials may not be deliberately indifferent to the exposure of inmates to a serious, communicable disease." Citing Helling v. McKinney, 509 U.S. 25, 33, 113 S. Ct. 2475, 125 L. Ed. 2d 22 (1993). In other words, prison officials have a limited duty to protect an inmate's future health. Id. To allege the objective component of such a claim, the plaintiff must show "that he is being exposed to" an unreasonable risk to his health. Id. at 35. This entails inquiry into "the seriousness of the potential harm" and "requires a court to assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk." Id. at 36; see Mammana v. Fed. Bureau of Prisons, 934 F.3d 368, 372-73 (3d Cir. 2019)

5

(quoting Farmer, 511 U.S. at 834) ("the deprivation alleged must be, objectively, 'sufficiently serious,'" resulting in "the denial of 'the minimal civilized measure of life's necessities.'")

The record establishes that the Defendant's Sandridge and Sedlitz were aware that Ms. Woods' Aramark Correctional Services LLC Food Manager, had retrieved beans from a contaminated trash can, and had them placed on trays to be served prior to him consuming it allowing it to happen when they could have prevented the consumption. The court's Opinion and Order at ECF 111 PAGEID 1194 agreed that "while intentionally serving contaminated food in one instance may allow a demonstration of knowing disregard as the court noted in Mitchell v. Beshear, 2011 U.S. Dist. LEXIS 41476, this finding goes to the subjective prong. Plaintiff satisfies the objective prong of being sufficiently serious.

The court closes Plaintiff's argument by mistakenly stating that Plaintiff only alleged that Defendants Sandridge and Sedlitz were aware of food taken from the trash can, *"not that they were involved in "intentionally tampering with" the food, that they were aware contaminated food was being served before or while the food was served, or that they had any opportunity to prevent it from happening."* See, e.g., Mitchell v. Beshear,, 2011 WL 1458309, at *3. The court noted the Plaintiff has insinuated that the Defendant's Sandridge and Sedlitz included themselves in to the situation by allowing the contaminated food to be served, Defendants Sandridge and Sedlitz had an opportunity to prevent it from happening, Defendants Sandridge and Sedlitz were placed on notice first and responded by attempting to conceal the matter allowing the Plaintiff to consume the food by acting indifferent to Plaintiff's health and safety. The Courts Opinion and Order at ECF 111 PAGEID 1195 conflicts with its Opinion and Order at ECF 111 PAGEID 1194 stating that:

> "Plaintiff also argues that ODRC Defendants Sandridge and Sedlitz are liable for a failure to prevent harm. Plaintiff maintains "that food was intentionally removed from a

contaminated trash can by Aramark Defendant Woods, which was brought to ODRC Defendants' Sandridge and Sedlitz attention (the complaint properly alleges that inmates reported the incident), the two had full knowledge and permitted (approved) the food to be served, the two were state employees supervising the meal who each intentionally permitted the contaminated food to be served to Plaintiff." (ECF No. 107 at 9-10). Indeed, Plaintiff has alleged harm was done, but not "every injury suffered by one prisoner at the hands of another" amount to "constitutional liability for prison officials responsible for the victim's safety." Farmer, 511 U.S. at 834. An Eighth Amendment violation occurs only when two requirements are met: the same subjective and objective components as this Court has examined. Crawford v. Tilley, 15 F.4th 752, 761 (6th Cir. 2021). Plaintiff's allegations are only that Defendants Sandridge and Sedlitz received a report that Aramark Defendant Woods had retrieved beans from a contaminated trash can and had them placed on trays to be served. (ECF No. 31 ¶ 48)."

Opinion and Order at ECF 111 PAGEID 1195.

Which is sufficient to state an Eight Amendment Claim against ODRC Defendants Sandridge and Sedlitz. The court is urged to correct the manifest errors of law and fact and to prevent a manifest injustice.

## CONCERNING EIGHTH AMENDMENT DELAYED OR DENIED MEDICAL TREATMENT:

The Courts Opinion and Order at ECF 111 PAGEID 1196 found that the Plaintiff's claim of delayed or denied medical treatment for his food poisoning symptoms in violation of the Eighth Amendment was not satisfied.

The Eighth Amendment forbids prison officials from 'unnecessarily and wantonly inflicting pain' on a prisoner by acting with 'deliberate indifference' to the prisoner's serious medical needs." Talal v. White, 403 F.3d 423, 426 (6th Cir. 2005) (quoting Blackmore v. Kalamazoo Cnty., 390 F.3d 890, 895 (6th Cir. 2004)). A claim for denial of adequate medical care has an objective and a subjective component. O'Brien v. Michigan Dep't of Corr., 592 F. App'x 338, 342 (6th Cir. 2014). To satisfy the objective component, the plaintiff must allege that he suffers from a sufficiently serious medical need. Id. In other words, the prisoner must show a sufficiently serious condition such that "denial of needed medical care would result in the

7

unnecessary and wanton infliction of pain or pose a substantial risk of serious harm." Amick v.

Ohio Dep't of Rehab. & Corr., 521 F. App'x 354, 358 (6th Cir. 2013).

**THE COURT DID NOT CONSIDER THE ACTIONS OF THE OTHER NAMED MEDICAL DEFENDANTS AND FOCUSED ONLY ON THE DOCTORS WHICH IS CONDUCT THAT THE UNITED STATES SUPREME COURT HAS FOUND TO BE ERROR:**

The United States Supreme Court in Estelle v. Gamble, 429 U.S. 97 at LEdHN[14]. The

Supreme Court stated:

> "The Court of Appeals focused primarily on the alleged actions of the doctors, and did not separately consider whether the allegations against the Director of the Department of Corrections, Estelle, and the warden of the prison, Husbands, stated a cause of action. Although we reverse the judgment as to the medical director, we remand the case to the Court of Appeals to allow it an opportunity to consider, in conformity with this opinion, whether a cause of action has been stated against the other prison officials."

Citing Estelle v. Gamble supra.

The Second Amended Complaint Mentions Defendant Nurse Rachel Allen, Defendant

Skye Murrray, Defendant Nurse Meredyth and Defendant Health Care Administrator

McLaughlin-Brewer.

The court has overlooked that the Plaintiff has asserted that the Defendants actions were

not just accidents, mistakes, negligence, or amounting to medical malpractice where the conduct

reached be each Defendant a constitutional magnitude looking to wanton infliction of pain.

**WANTON INFLICTION OF PAIN CAUSED BY THE DEFENDANT'S:**

The court has overlooked that the Plaintiff has claimed in his second amended complaint

that the Defendant's delay and denial of adequate medical treatment resulted in wanton infliction

of pain suffered by him. An official acts with deliberate indifference when he or she knows that

an inmate is in serious need of medical care, but fails or refuses to obtain medical treatment for

the inmate." Lancaster v. Monroe County, Ala., 116 F.3d 1419, 1425 (11th Cir.1997); Mandel v.

Doe, 888 F.2d 783, 788 (11th Cir.1989) (noting that "knowledge of the need for medical care and intentional refusal to provide that care constitute deliberate indifference"). Even where medical care is ultimately provided, a prison official may nonetheless act with deliberate indifference by delaying the treatment of serious medical needs, even for a period of hours, though the reason for the delay and the nature of the medical need is relevant in determining what type of delay is constitutionally intolerable. Citing Harris v. Coweta County, 21 F.3d 388, 393-94 (11th Cir.1994);

It is well settled that prison officials' deliberate indifference to prisoners' serious medical needs gives rise to a constitutional claim. In Estelle v. Gamble, 429 U.S. 97, 104-05, 97 S. Ct. 285, 291, 50 L. Ed. 2d 251 (1976), the Supreme Court held that deliberate indifference to serious medical needs is proscribed by the Eighth Amendment's prohibition against cruel and unusual punishment. The Court cautioned, however, that only those claims which rose to the level of a constitutional tort would be permitted to proceed under § 1983. Accidents, mistakes, negligence, and medical malpractice are not "constitutional violations merely because the victim is a prisoner." Id. at 106, 97 S. Ct. at 292. The contours of the legal norms on deliberate indifference to medical needs have been subsequently evolving, and the particularity that " Anderson v. Creighton, 483 U.S. at 640, 107 S. Ct. at 3039. requires has been given force by many reported cases testing the boundaries and details of deliberate indifference, including the features that make intentional delay in access to and interference with prescribed medical care actionable. Citing Harris v. Coweta County, 21 F.3d 388 at HN4.

**ODRC DEFENDANT'S AND MEDICAL DEPARTMENT DEFENDANT'S:**

Correctional staff may act with indifference to an inmate's medical needs by denying or delaying access to medical care or interfering with medical treatment once it was prescribed. See

9

Estelle v. Gamble, 429 U.S. 97, 104-05, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976) (prison guards act with deliberate indifference by intentionally denying, delaying, or interfering with inmate's medical treatment in violation of Eighth Amendment); Atutis v. Harder, No. 9:21-CV-715 (DNH/TWD), 2021 WL 12314320, at *6 (N.D.N.Y. July 20, 2021) (non-medical staff may violate Fourteenth Amendment for indifference to medical needs by denying, delaying or interfering with medical treatment). The Fourteenth Amendment standard set forth in Darnell applies also to a pretrial detainee's claims involving a denial in the provision of medical treatment to a pretrial detainee. See, e.g., Roice v. County of Fulton, 803 F. App'x 429, 430, 432 (2d Cir. 2020) (summary order) (applying Fourteenth Amendment Darnell standard to pretrial detainee's medical indifference claims).

The court has disregarded that the ODRC Defendants Lt. Tatman, Captain David Agee, Inspector Isaac Bullock, Wanza Mitchell –Jackson, Sgt. J. Maggard, Steven Williams, Case Manager Kearns, Karen Stanforth, David Agee, Lt David Sandridge, Ms. Sedlitz, Dr. William Harlan, Dr. Raymond Corbett, Meredyth McLaughlin, Sky Murray, Rachel Allen, Robert Welch, Douglas Luneke, Rodney Machintosh, Aramark manager "Ms. Josephine Woods", Lt. Kayla Stebleton, Tim Barttrum, Aramark Correctional Services LLC, Ohio Department of Rehabilitation and Corrections intimidated the Plaintiff intending with success in interfering with his medical treatment by prohibiting him from being seen or treated. Again the Plaintiff was locked down, restricted from going to medical himself just because he desired to be seen and treated for his worsening symptoms. He was restricted on the kiosk preventing additional kites to medical or of complaining or reporting what was happening.

The Medical Department Defendant's ignored his many Health Service Requests to be seen or treated and delayed him being seen or treated prior to Plaintiff being escorted to medical

10

which he asserted in his Second Amended complaint which also violated ODRC Policy 68-MED-01 (B)(9)(a)&(d) Sick Call Services, which reads:

> "a. IP's shall be able to place request for health services daily. Such request shall be conveyed through readily available Health Service Requests (DRC5373) or the electronic equivalent, which are triaged daily by medical staff, as outlined in ODRC Medical Protocol A-2.35, Nursing Sick Call Access.
>
> ***
>
> d. No member of the correctional staff shall disapprove an IP's request for attendance at sick call."

Although not directly pled in the action the medical Defendant were aware that Plaintiff suffers from a known medical condition of his gastro tract affecting his intestines called "diverticulitis" which can be found in his medical records and is not of dispute by the Defendant's. Citing Santacruz v. Daniels, 2025 U.S. Dist. LEXIS 28171 (9th Cir.)(finding that because of a prior diagnosis he has plausibly alleged that his gastrointestinal issues are likewise serious medical needs. ECF No. 47 at 2, 13.)

The Courts at ECF 111 PAGEID 1184-1207 also found that the M.J. properly addressed Plaintiff's allegations concerning being quarantined claiming that its more characterized as a disagreement as to whether his condition required treatment. Citing Opinion and Order at ECF 111 PAGEID 1184-1207 The Plaintiff agrees that "disagreement with a course of medical treatment does not rise to the level of a federal constitutional claim under the Eighth Amendment." Rhinehart v. Scutt, 894 F.3d 721, 744 (6th Cir. 2018). But points that the court is overlooking that this is not what occurred in this case.

The court acknowledged regarding Plaintiff's objections to whether the health issues alleged are "sufficiently serious," he argued that the medical defendants were aware that he had ate the contaminated food but refused to treat him by not prescribing medication or treatment to

relieve symptoms. Objections ECF 107 at 14-15. The Plaintiff gastrointestinal issues constituted a serious medical need because it was "one so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Id. at 13.Citing  Yarbrough v. Henderson Cnty., Tennessee, No. 23-5117, 2024 WL 229665, at *4 (6th Cir. Jan. 22, 2024)  The court acknowledged that this does not mean "it appears beyond doubt that the plaintiff can prove no set of facts in support of plaintiff's claim which would entitle him to relief." Opinion and Order at ECF 111 PAGEID 1184-1207 However the court has claimed that there is an ambiguity concerning the Plaintiff's symptoms referring to how he expressed them; the severity, and any clear chronological order which is incorrect. Yet the court does acknowledge that "upset stomach, cramps, abnormal bowel movements, and vomiting alleged may still be symptoms found to state a claim under the Eight Amendment, this has been the case when it was determined inmates experienced the need for medical treatment. This court cited Blackmore v. Kalamazoo Cnty., 390 F.3d 890, 900 (6th Cir.2004).

## NO AMBIGUITY IN PLAINTIFF'S TIMELINE OF SYMPTOMS:

The court states:

"Plaintiff has alleged an unclear timeline of symptoms and an even more unclear indication of the severity of the symptoms he expressed to Defendants. For example, Plaintiff alleges sending in requests to see medical, without alleging when these requests were sent. (ECF No. 31 ¶¶ 39, 46). Plaintiff mentioned he wrote "my stomach is upset and I have been having pains for the past couple days." (Id. ¶ 39). An "upset" stomach does not rise to the level of a serious medical need so obvious that one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."

Opinion and Order at ECF 111 PAGEID 1184-1206

The court has repeatedly overlooked that the Plaintiff first sought medical attention on December 2nd (See Plaintiff's exhibits (1) Informal Complaints) which the same day he filed a ICR "informal complaint resolution" where he expressed severity of his symptoms being an upset

12

stomach, cramps, abnormal bowel movements, and vomiting the court has pushed the starting date to December 5, 2021 which December 2, 2021 is not in dispute within the complaint, where Plaintiff complained that they were not taken to medical until after they were placed on lock down and after they were intimidated. The complaint outlined that they were escorted to Medical on December 5, 2021, where he again reported that he had "abnormal bowel movements, pain in his stomach and had vomited twice at that point See Complaint at ECF 31 ¶ 71. Prior to this point Plaintiff's received no treatment. Plaintiff saw "Defendant William Harlan or Raymond Corbett" on December 6, 2025, and reported that "his stomach still hurts extremely bad" that he "couldn't keep any fluids down, and still had diarrhea." The same symptoms. Plaintiff was quarantined for three days and then no longer reported asking to return, having any severe or worsening symptoms, or having any symptoms at all after the quarantine. The court does acknowledge that Plaintiff does allege that between November 27, 2021 and December 10, 2022, Defendants Fredrick Epperson and Larry Farmer were his "full-time unit 1-A C. O's that failed their duties as 2nd shift staff and was deliberate indifferent to the Plaintiff health and safety when they disregarded multiple requests from the Plaintiff to call medical because he was extremely sick to the point he couldn't make it out of the bed." (ECF No. 31 ¶ 76). The court stated that the above is questionable considering Plaintiff indicated being escorted to see the medical staff on December 5 and December 6. ECF No. 31 ¶¶ 70, 89 which is mistakenly contradictory where the court acknowledged on its own that the Plaintiff complained prior to the 5th of December.

**THE COURT HAS OVERLOOKED LT. KAYLA STEBELTON, KNOWLEDGE:**

Lt. Kayla Stebelton acted with deliberate indifference to Plaintiff health and safety when she failed her duties to make Plaintiff aware of the food being contaminated which was the reason he was ill. She was aware what inmates ate the contaminated food, and that he was ill

13

from it. Lt. Kayla knew on December 01, 2021 when she wrote the incident report which housing unit was fed contaminated food, and what inmates were requesting medical attention and what inmates were later locked down. Which is how on December 05, 2021 Lt Tatman knew what cells to go too because medical released that information. Plaintiff since December 2, 2021 had been sending in HSR "Health Service Request" forms and ICR "informal complaint resolution". Plaintiff sent in an exhibit with his second amended complaint of the ICR form to each of the Defendants. See Plaintiff's Exhibits[1] informal complaints. The court is urged to correct the manifest errors of law and fact and to prevent a manifest injustice.

## THE COURT HAS OVERLOOKED DEPUTY WARDEN ROBERT WELCH, KNOWLEDGE:

Deputy Warden Robert Welch on December 01, 2021 received an email from Lt Kayla stating that an Aramark manager served contaminated food from the trash can. Plaintiff sent in a copy of this incident report with his second amended complaint. Deputy Warden Robert Welch could have and should have sent the Plaintiff to the medical department, or could have asked Plaintiff housing unit if anyone felt sick from eating at the chow hall on the day in question but did nothing. The Defendants started to conspire on how to cover up the facts one of the contractors intentionally fed inmates out of the trash and got an entire unit sick. Then two ODRC employee allowed the food to be consumed, which was the reason Lt. Tatman entered Plaintiff housing unit on December 05, 2021 and acted the way he did these are facts that were not disputed by the Defendants. Deputy Warden Robert Welch at all times relevant was aware that inmates were being punished for seeking medical treatment for their symptoms. Plaintiff has alleged from the very beginning that ODRC employees Lt. Sandridge, and Ms. Sedlitz Lt.

---

[1] Plaintiff submitted all exhibits earlier in the proceedings of which are being renamed in this motion to alter or amend. The Plaintiff's exhibits are material to the court's ruling and provide prima facie evidence supporting his complaints and seeking medical attention prior to December 05, 2021 of which the court made a material point.

14

Tatman and the others acted intentional on the part of Aramark to hide and not address the intentional contamination where they acted as accomplices to hide what the plaintiff was experiencing. Plaintiff also alleges that the rest of the ODRC Defendants acted in such a way to determine that each Defendant was attempting to collude, and colluding with each other to discourage Plaintiff from seeking medical attention, and to cover up what happened on November 27, 2021. Plaintiff has also sent a copy of such behavior. If the facts were further developed Plaintiff can and will provide evidence of the truth, the court is urged to correct the manifest errors of law and fact and to prevent a manifest injustice.

## THE COURT HAS OVERLOOKED THAT BOTH DRS. HARLAN AND CORBETT SEEN THE PLAINTIFF AND BOTH SIGNED THEIR NAMES ON HIS MEDICAL FILES.

The court has overlooked that Plaintiff was seen by both Defendant Drs. Harlan and Defendant Dr. Corbett who both signed his medical files which the Second Amended Complaint did state Drs. *Harlan "or" Defendant Dr. Corbett*, until paragraph 95 which stated:

> "¶ 95. Defendant William Harlan, Raymond Corbett refused to properly diagnosis Plaintiff or the other inmates even with their clear symptoms, knowing they were fed out of a contaminated trash can and kept them on "Quarantine Status" until Thursday December 09, 2021."

Second Amended Complaint at ¶ 95.

Plaintiff can show that both Drs. Harlan at 3:34 and Corbett at 11:58. on December 8, 2021 signed off on their false quarantine stating that:

> "Pt. denies any S/S of covid and none detected Pt educated to report any SOB, new cough, new body aches or loss of taste or smell. Pt verbalized understanding."

The complaint makes clear that Plaintiff was never suspected of having COVID19 and in fact the Warden outlined that the inmates were not alleged to have COVID19 when the inmates demanded answers as to why they were being locked down prior to receiving conduct reports or

15

any screenings by medical in lieu of treatment for being fed contaminated food. The Supreme Court has stated that the Eighth Amendment encompasses "the evolving standards of decency that mark the progress of a maturing society" and "the unnecessary and wanton infliction of pain." Estelle v. Gamble, 429 U.S. 97, 102-03, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976) "These elementary principles establish the government's obligation to provide medical care for those whom it is punishing by incarceration." Id. Failure to provide medical care could produce pain and suffering, physical torture or a lingering death "inconsistent with contemporary standards of decency." Id. Accordingly, the "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." Id. at 104. "This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." Id. at 104-05.

Plaintiff was never tested to determine if blood was in his stool yet Doctors William Harlan and Raymond Corbett lied claiming that no blood was in his stool as if it were tested. Plaintiff complained directly to medical that he experienced abnormal bowel movements, pain in his stomach and vomiting for the past few days. See Complaint ¶ 39. The subjective component of a deliberate indifference claim requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." Brown v. Bargery, 207 F.3d 863, 867 (6th Cir. 2000) (citing Farmer, 511 U.S. at 834).

The Medical Defendant's each were on notice of what was transpiring with the Plaintiff and others as written in Plaintiff medial file, but refused to treat them, their action were more than mere negligence, they were deliberate indifferent. Plaintiff "*after*" being locked down but prior to allegedly being "quarantined" was punished by the ODRC Defendant's for reporting his

16

illness and the medical staff' had nothing to do with the quarantine regarding the decision to formally place plaintiff in quarantine was done not in furtherance of medical treatment but to assist in withholding the conspiracy from being further reported for the reasons mention above which is not a treatment for gastrointestinal symptoms and is sufficient to state a § 1983 claim.

Plaintiff seen both doctors William Harlan and Raymond Corbett, Plaintiff can show that each defendant acted with a mental state "equivalent to criminal recklessness, knew facts to infer a substantial risk to the Plaintiff, that they did in fact draw the inference, and that they then disregarded that risk by failing to take reasonable measures to abate it and instead tried to conceal it. Plaintiff's medical records and the testimony of an additional physician would circumstantially support the evidence to prove subjective recklessness, of which a jury is entitled to "conclude that a prison medical staff knew of a substantial risk from the very fact that the risk was obvious." And if a risk is well-documented and circumstances suggest that the official has been exposed to information so that he must have known of the risk, the evidence is sufficient for a jury to find that the official had knowledge.

Plaintiff should have been seen earlier and that he should have been provided medication or "transported to an outside hospital to be checked by a doctor, regarding bacteria or other infections." Objections ECF 31 at ¶ 72. Yet Plaintiff was locked down for reporting the incident and reporting his symptoms where each Medial Defendants refused to see him.  As stated above Plaintiff was not treated and the Defendants have not named any treatment received by Plaintiff, here there is no treatment to second guess. Medical staff joked additionally offering circumstantial evidence that they possessed a mental state of knowledge to encompass "culpable state of mind" which should proceed to a jury. Plaintiff can show a jury that his need for treatment was obvious. Medical care which is so cursory as to amount to no treatment at all may

17

amount to deliberate indifference." Mandel v. Doe, 888 F.2d 783, 789 (11th Cir. 1989) (a physician's assistant's failure to inform his superior or a medical doctor of a prisoner's known injured leg constitutes deliberate indifference); Cooper v. Dyke, 814 F.2d 941, 945-46 (4th Cir. 1987) (a prison employee's two-hour delay in providing medical care to an inmate known to have gunshot wounds constitutes deliberate indifference). Concluding that Drs. Harlan and Corbett, each denied and delayed medical treatment of the Plaintiff. Drs. Harlan and Corbett never prescribed any medication, never took any fluids, and in fact lied about the false quarantine. Each as described above was attempting to collude, and colluding with each other to discourage Plaintiff from seeking medical attention. The Plaintiff's allegations were specific to each Defendant enough to raise a right to relief to the level discussed in Bell Atl. Corp. v. Twombly, 550 U.S. 544 which holds that "a claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Twombly, 550 U.S. at 556 supra. The court is urged to correct the manifest errors of law and fact and to prevent a manifest injustice.

## THE COURT HAS OVERLOOKED THAT THE PLAINTIFF CAN STATE AN INDEPENDENT CLAIM UNDER THE FIRST AMENDMENT FOR RETALIATION AGAINST THE DEFENDANT'S:

The court's decision and entry ECF 111 at PAGEID 1202 correctly cited the proper requirement of which the Plaintiff would have been required to demonstrate (1) that he was engaged in protected conduct; (2) that an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) that the adverse action was motivated, at least in part, by the protected conduct. See Thaddeus-X v. Blatter, 175 F.3d 378, 394 (6th Cir. 1999).

The court's decision and entry ECF 111 at PAGEID 1202 stated that the Plaintiff argues he satisfies these three factors by showing: "(1) he filed Informal Complaint Resolutions (ICRs);

18

(2) he was yelled at, threatened with lockdown, and his Kiosk was blocked; and (3) the acts were done because of his reports and seeking medical attention. (ECF No. 107 at 21)."

**THE COURT HAS OVERLOOKED THAT THE PLAINTIFF HAS STATED AND INSINUATED THAT THE DEFENDANT'S LOCKED HIM DOWN DUE TO HIM ATTEMPTING TO BE SEEN BY MEDICAL AND FOR WRITING INFORMAL COMPLAINTS AGAINST ARAMARK RELATING TO THE INCIDENTS AND HIS TREATMENT BY THE STAFF OF WHICH THEIR KIOSK'S WERE RESTRICTED:**

The court has overlooked that the Plaintiff has always made a direct claim that the Defendant's locked him down due to him requesting to be seen by medical to receive treatment and for writing informal complaints against Aramark relating to the incident and his treatment by the staff of which their kiosks were restricted.

The Courts ECF 111 at PAGEID 1203 acknowledge that "These threats may be sufficient to state a claim if Plaintiff alleged sending any medical requests before December 5, 2021***" the court is overlooking that the Plaintiff has stated that fact indicating in the complaint that on December 2nd which was the same day he filed a ICR "Informal Complaint Resolution" where he expressed severity of his symptoms being an upset stomach, cramps, abnormal bowel movements, and vomiting. December 2, 2021 is not of dispute within the complaint or the parties. Plaintiff additionally complained that they were not taken to medical until after they were placed on lock down and after they were intimidated. The complaint outlined that they were escorted to Medical on December 5, 2021, where he again reported that he had "abnormal bowel movements, pain in his stomach and had vomited twice at that point See Complaint at ECF 31 ¶ 71. Which is attached as Plaintiff's exhibit (1) and of which was filed with the second amended complaint. The court cited Hill v. Lappin, 630 F.3d 468, 472-73 (6th Cir. 2010) ("Even the threat of an adverse action can satisfy this element if the threat is capable of deterring a person of ordinary firmness from engaging in the protected conduct.").

19

## CONCERNING DEFENDANT'S INSPECTOR ISAAC BULLOCK, CAPTAIN DAVID AGEE AND LT. TIM TATMAN:

Concerning Defendant's Inspector Isaac Bullock; Captain David Agee and Lt. Tim Tatman, each acted alone and together in an attempt to harass and intimidate Plaintiff and others to prevent and discourage them from seeking medical attention for the Aramark food poisoning. Defendants acted together and or separately when retaliating against Plaintiff as well as addressed in the complaint and of which the Defendants have not denied the court has made defenses that the Defendants have not even attempted to make. Additionally, the 6th Circuit has held that an inmate has an undisputed First Amendment right to file grievances against prison officials on his own behalf." Herron v. Harrison, 203 F.3d 410, 415 (6th Cir. 2000). The Defendants knowingly violated an established protected right known to them at the time of their conduct and the Defendants. And further committed a First Amendment right in violation in restricting their kiosk's preventing medical from being wrote up or further complaints about Aramark and punishing the Plaintiff for exercising those rights. As stated in the complaint Defendant Isaac Bullock post December 9th the other staff members each retaliated against Plaintiff and the other inmates to punish them for filing informal Complaints, going to medical and requesting information regarding Aramark Correctional Services LLC. Defendant Bullock, restricted Plaintiffs Kiosk from generating new informal complaint resolutions "ICR's" or grievances, concerning the paper ICR's Defendant Isaac Bullock prior to transferring ignored them a jury could find this point.

## CONCERNING PLAINTIFF'S FAILURE TO TRAIN CLAIM:

The Court has overlooked that Plaintiff can show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the

20

offending subordinate. In light of Crawford v. Tilley, 15 F.4th 752, 761 (6th Cir. 2021) (quoting Garza v. Lansing Sch. Dist., 972 F.3d 853, 865 (6th Cir. 2020)).

Defendant David Agee, admitted that he sent in Defendant Lieutenant Tatman as in the Plaintiff informal complaint resolution WCI1221001929. See Exhibit (1) Informal complaints these points are not in dispute by the Defendants. The Defendant David Agee, attempted to blame COVID-19 for his reason for locking down the Plaintiff and other inmates which conflicted with Lieutenant Tim Tatman's statements and actions as only people who went to medical related to upset stomachs, diarrhea, and vomiting were retaliated against by placing them on lockdown claiming COVID-19 with no testing and with the warden acknowledging that the Plaintiff and others were not suspected of having COVID. See Atutis v. Harder, No. 9:21-CV-715 (DNH/TWD), 2021 WL 12314320, at *6 (N.D.N.Y. July 20, 2021) (non-medical staff may violate Fourteenth Amendment for indifference to medical needs by denying, delaying or interfering with medical treatment). The court is urged to correct the manifest errors of law and fact and to prevent a manifest injustice.

## CONCERNING PLAINTIFF'S EQUAL PROTECTION CLAIM:

The Plaintiff's complaint outlined that he has claimed that he has been treated intentionally differently from the other inmates in his dorm of which he stated in the complaint that only the inmates who went to medical were restricted on their kiosk's or were locked down when the inmates who did not go to medical due to Tatman's threats were not punished and were removed from lockdown it is important to note that the Plaintiff was taken to medical on the 5 of December he was not seen or placed on the Sham quarantine until December 6 by Doctors Harlan and Corbett, (only personnel who could place inmates on medical quarantine) of which both knew that the Plaintiff or others were not suspected of having COVID but was already locked down and the other inmates were released from lock down when they declined to go to

21

medical for fear of additional retaliation by Tatman and his thugs. The Health Care Administrated acknowledged in response to a kite that she was aware that the inmates did not have COVID they were being locked down due to an incident in the Chow hall. See Exhibit (2) And this is being overlooked by the Court and for this reason this court is urged to reconsider this judgement. The court is urged to correct the manifest errors of law and fact and to prevent a manifest injustice.

## CONCERNING THE REMAINING ISSUES:

Defendant Kearns and the other ODRC Defendants were over his dorm and each received direct request by Plaintiff and were already informed of his sickness and the cause of it and were requested directly by Plaintiff to be permitted to be let out to be seen by medical and each named Defendant had the authority over him, reminding the court that he was being locked in a cell without a key where other inmates could move freely he was restricted by the named Defendant's prior to the fake quarantine by medical and as a direct result of reporting being fed contaminated food. Also the court overlooked that the Plaintiff has sent in video footage of the Defendants Josephine Woods committed this horrible act.

The video shows the defendant in the very act the Plaintiff has stated in his complaint. The video shows as the incident report claimed Defendant Woods purposefully, intentionally after trash was discarded on top of the food removed the beans from the trash can placed them on trays to be served to the Plaintiff. Defendant Woods can be seen on camera mentally processing her acts in real time and other than stopping what she was doing she dragged the trash can out of camera view and remained scooping the food out of the trash can. Inmate workers were so disgusted by what she was doing they refused to help her, and notified Defendant Lt. Sandridge, and Sedlitz who in returned placed them in segregation to silence them. Ultimately Plaintiff came through the chow

22

line unknown to him the food was contaminated. Plaintiff ate the food and later that night became ill, and through the weekend and into that following Monday as the Informal complaints states he was experiencing extreme bowel movements, vomiting. Plaintiff starting filing Health Service Request forms when he started writing informal complaints as of December 02, 2021. Again Defendants have yet to deny this happened to the Plaintiff. Plaintiff further stands by his complaint and submitted exhibits, and video footage as if fully restated and submitted herein. Looking to Atutis v. Harder, No. 9:21-CV-715 (DNH/TWD), 2021 WL 12314320, at *6 (N.D.N.Y. July 20, 2021) (non-medical staff may violate Fourteenth Amendment for indifference to medical needs by denying, delaying or interfering with medical treatment) for the proposition of being non-medical staff finding it reasonable that an indifference claim involving medical needs when they deny, delay or interfere with medical treatment just as the named ODRC defendant's did. The court is urged to correct the manifest errors of law and fact and to prevent a manifest injustice.

## CONCLUSION

Petitioner Franklin Woods presents evidence and parts of the record that suggests reconsideration is necessary to prevent manifest injustice. Citing Volunteer Energy Servs., Inc. v. Option Energy, LLC, 579 Fed. Appx. 319, 330-31 (6th Cir. 2014) at ¶ 31. Petitioner Motion is "to prevent manifest injustice." This standard "requires that there exists a fundamental flaw in the court's decision that without correction would lead to a result that is both inequitable and not in line with applicable policy." United States v. Allen, No. 14-20191, 2020 U.S. Dist. LEXIS 143194, 2020 WL 4592901, at *1 (E.D. Mich. Aug. 11, 2020) (quoting McDaniel v. Am. Gen, Fin. Servs., No. 04-2667, 2007 U.S. Dist. LEXIS 52217, 2007 WL 2084277, at *2 (W.D. Tenn. July 17, 2007) (internal quotation marks omitted)). Petitioner respectfully request that this most Honorable Court Alters or Amends its March 14, 2025 Entry and Order ECF 111 PAGEID 1184-1207 under Fed. R. Civ. P. 59(e) to prevent a manifest miscarriage of justice as pointed out

23

above. Petitioner in the alternative also requests Certificate of Appealabilty. Petitioner also requests the court for an application to proceed informa pauaeris if it declines the reconsideration.

Respectfully Submitted,

Franklin Woods

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTIRICT OF OHIO
WESTERN DIVISION**

Franklin Woods

      Plaintiff,

Vs.

Aramark Correctional Services et al,

      Defendant.

Case No: 2:22-CV-4420

Judge: Marbely

Magistrate Judge: Deavers

---

## PLAINTIFF'S ATTACHED EXHIBITS

---

Franklin Woods
Inmate No. A730633
P.O BOX 5550
Chillicothe, Ohio 45601

**PLAINTIFF PRO SE.**

25

# EXHIBITS

## PROOF OF SERVICE

I certify that a true copy of these Exhibits have been sent by Regular U.S. Mail and electrically filed on April 11th 2025 to counsels Kristen L. Wendell 600 Superior Avenue East, Fifth Third Center, Suite 2330, Cleveland Ohio, 44114; Matthew P. Convery, Marcy Vonderwell at 30 East Broad Street, Columbus, Ohio 43215. for the below listed Defendant's:

OHIO DEPARTMENT OF
REHABILITATION AND
CORRECTION
4545 Fisher Rd.
Columbus Ohio, 43228

James Maggard
4204 Pennyroyal Road
Lebanon Ohio, 45036

Karen Stanforth
4545 Fisher Rd.,
Columbus Ohio, 43228

Timothy Tatman
5787 State route 63
Lebanon Ohio, 45036

Melissa Sedlitz
5787 State route 63
Lebanon Ohio, 45036

Meredyth McLaughlin-Brewer
"Health Care Administrator"
5787 State route 63
Lebanon Ohio, 45036

Kimberly Panunzio
329 Kenderton Trail
Dayton Ohio, 45430

Kayla Stebelton
1120 Eubois Rd
Carlisle, Ohio 45005

Wanza Mitchell –Jackson
317 Sharon Ct
Midletown Ohio, 45042

Steven Williams
5787 State route 63
Lebanon Ohio, 45036

David Agee
5787 State Route 63
Lebanon Ohio 45036

David Sandridge
5787 State route 63
Lebanon Ohio, 45036

Dr. William Harlan
5787 State route 63
Lebanon Ohio, 45036

Skye Murray
5787 State route 63
Lebanon Ohio, 45036

Douglas Luneke
3791 State route 63
Lebanon Ohio, 45036

Josephine Woods
1221 Avenue B
Port Allen, Louisiana 70767

Isaac Bullock
13665 State Route 729 south
Solon Ohio, 43155

Renee Meyers-Carnes
5787 State route 63
Lebanon Ohio, 45036

Tim Barttrum "President"
2400 Market Street
Philadelphia PA 19103-3041

Dr. Raymond Corbett
5787 State route 63
Lebanon Ohio, 45036

Robert Welch
415 Marley Road
Dayton Ohio, 45405

Aramark Correctional Services LLC
2400 Market Street
Philadelphia, Pa 19103-3041

Fredrick Epperson
5787 State Route 63
Lebanon Ohio, 45036

And electronically filed both on this 11 day of April 2025.

*Franklin Woods*

Franklin Woods
Inmate No. A730633
15802 State Route 104 N.
Chillicothe, Ohio 45601

**PLAINTIFF-PRO SE.**

27

☐ Mark the form as confidential

# INCIDENT REPORT

| | Report Date (will be set when report is signed): |
| --- | --- |
| | 12/1/2021 |

| Work Location: | Location of Incident: |
| --- | --- |
| Warren Correctional Institution | Food Service |

| Name of Reporting Staff: | Title: | INCIDENT DATE: |
| --- | --- | --- |
| Kayla Stebelton | Correctional Lieutenant | Nov 27, 2021 |

| Involves: | INCIDENT TIME: |
| --- | --- |
| Aramark Manager Woods | 6:20 PM |

## Check Item Indication Subject Of This Report:

☒ Employee Action    ☐ Facility Maintenance    ☐ Medical    ☐ Recommendations

☐ Inmate/Offender Affairs    ☐ Security    ☐ Victim Issue    ☐ Crisis Intervention Team (CIT)

☐ Use of Force    ☐ Workplace Violence    ☐ Equipment Issue    ☐ Other: _____

## Description of Incident:

On 12/1/2021 I, Lieutenant Stebelton reviewed video footage of an alleged incident that occurred in rear food service on 11/27/2021. While reviewing the footage the following was found; on 11/27/2021 at 6:20 PM on WCI-Food Service Cook Area2 camera, Inmate Smith (743-659) dumps food from the serving container into the trash can. It appears they realized after dumping the food that they still needed it. At 6:25 PM Aramark Woods is observed using a pitcher and scooping food out of the trash can into an empty container that Inmate Smith is carrying. Inmate Smith is then observed carrying the food to the serving line in the small chow hall and the food is served to inmates coming to chow. At 6:26 PM a rear food service porter is seen sweeping the floor and dumping the dust pan into the same trash containing the remains of the discarded food. At 6:27 PM Aramark Woods brings another empty container near the trash can for Inmate Burton (667-877) to scoop more food from the trash can that has now had trash dumped on top from the porter who swept the floor. Aramark Woods stirs in water to the food in the container that came from the trash can and at 6:30 PM Inmate Burton takes the food to the main chow hall to be served. Aramark Woods is responsible for serving inmates food from a trash can which is a major health code violation. Both inmates involved have been removed from food service. Video footage has been captured and Deputy Warden Welch was notified. End of report.

Exhibit 4a

| Signature of Reporting Staff Member: | Date: |
| --- | --- |
| Kayla Stebelton | 12/1/2021 |

## Action Taken:

1. Notification to DWSS.
2. Video footage captured and incident report completed.
3. Inmates involved removed from food service.

K. Stebelton

| Signature of Managing Officer: | Date: 12/3/2021 |
| --- | --- |

Distribution: **ALL COPIES TO MANAGING OFFICER** who will check appropriate distribution list below and distribute the copies.

☑ Operations    ☐ Administration    ☑ Special Services    ☐ Department Head _____

☐ Investigator    ☐ EEO    ☐ Personnel Officer    ☐ Administrative Assistant

☐ Record Officer    ☐ Medical    ☐ Health & Safety    ☐ Office of Victim Services

28

DRC1000 E (Rev. 10-19)

Page 1 of 1

| Shift Commander | E. Kendrick | | 2nd Shift | Saturday November 27 2021 | Officers on Overtime 11 |
|---|---|---|---|---|---|
| Captain: | | Lieutenant: Sandridge 227 | | Lieutenant: | Henness 221! |
| Captain: | | Lieutenant: Barrett 212! | | Lieutenant: | |
| Captain: | | Lieutenant: Kriss 214 | | Lieutenant: | |

| POST | OFFICER | On Grounds | Relief | Off Grounds | |
|---|---|---|---|---|---|
| | | Total Posts: 41 | | Good Days | Leaves |
| | | Added Post | Morehouse, M." | Kaufman, K. | Vacation Lv. |
| Unit 1A | Donthnier | RH REC: Firman | | Cates, B. | Cunningham, S. |
| Unit 1A | McIntosh | | Deegan, J. | Fulmer, P. | O'Connor, K. |
| Unit 1B | Shostak (OT) | | | Epperson, F. | Avery, E.*** |
| Unit 1C | Lane | RH Esc: Lenzier (OT) | | Rumpler, E. | Kerns, D. |
| Unit 1C | Loughman | | Donthnier, B. | Robinson, E. | Henris |
| Unit 1D | Rucker (OT) | 3D ESC: Finley, T. | | Cates, J. | Anderson - Rob |
| Unit 1D | Heilshorn (VF) | | Couzens, A.*** | Montgomery, J. | |
| Unit 2A | Closed | | Huddleston, T.* | Reedy, M. | Personal Lv. |
| Unit 2A | Closed | Visiting: Williams, K. (VF) | Morris, A.*** | Robinson, B. | Calhoun - 3 |
| Unit 2B | Lipsky | | Lane, C. | Dunn, K. | |
| Unit 2B | Quinn | | Loughman, A. | Robertson Jr, T. | |
| Unit 2C | Chevalier | | Lipsky, L. | Foster, K. | Sick Lv. |
| Unit 2C | Chambers | | Jones, J. | James, J. | |
| Unit 2D | Randall, M. | | Davis, J. | Weybright, J. | |
| Unit 2D | Adams | | | Hill, H. | |
| Unit 3A | CLOSED | | | Mann, B. | |
| Unit 3A | CLOSED | | | Starkey, B. | |
| Unit 3B | Ballard, C. | | McIntosh, J. | Knick, J. | |
| Unit 3B | Saggus, J. | | Chambers, D. | Long, T. | Military Lv. |
| Unit 3C | Collins, R.! | | Firman, A. | Anderson, C.$ | Winning, C. |
| Unit 3C | Austin | | Chevalier, E.** | | Kasten, J. |
| Unit 3D | Zimmerman, D.$ | | Quinn, A. | | Webb, R. |
| Unit 3D | Wheeler, M. | | Adams | | Perry, S. |
| Unit 3DXTRA | Edwards, G. | | Austin | | Luker, J. |
| Medical | Morris | | Sommer | | Other Leaves |
| TPU | Sommer | On-Site Training | | | Miller, S. |
| TPU | Jones, A. | Merbs, K. | | | |
| TPU | Shinno, D. | | | | |
| North Util | Deegan | | | | |
| South Util | Morehouse | | | | |
| East Util | Huddleston | | | | |
| West Util | Couzens | | | | |
| High Side Veh | Harrison (OT) | | | | |
| Low Side Veh | Cates B. (OT) | | | | |
| Front Entry | Emery (VF) | | | | |
| Front Entry | Closed | | RTWP | | TWL |
| Recreation | Jones, J | | Godby | | |
| Recreation | Davis | | Anderson | | |
| 1 pm - 9 pm | 1 pm - 9 pm | | Langfeld | | KEY |
| Control | Copeland (OT) | | | | !: SRT |
| Control | Tipton (OT) | | | | $: C.I.T. |
| Food Service | Groshek (VF) | | | | *** Female |
| Food Service | Sedlitz, M.*** | | | | |

Exhibit 1b "Roll Call"

39

| Shift Commander | Casstar | | 1st Shift | Sunday, Dec 05, 2021 | Officers on Overtime 7 |
|---|---|---|---|---|---|

Captain: D Agee 120  
Lieutenant: T. Tatman 230  
Lieutenant:  
Lieutenant: M. Kiser 215  
Lieutenant: S Vetere 216  

Supervisor VAC

| POST | OFFICER | Added Post (On Grounds 12) | Relief (14) | Good Days (Off Grounds) | Leaves |
|---|---|---|---|---|---|
| Unit 1A | Pannunzio, K*** | 3DX: Howard | Branch, K | Landis, M | Vacation Lv. |
| Unit 1A | Koch | 3D Escort: Combs | | Hewitt, V | Barrett, C. |
| Unit 1B | Shostak, R | TPU Rec Util: CLOSED | | Jones, D | Burke, D $ |
| Unit 1C | Crawford | | | Brennan, R | Carpenter, J |
| Unit 1C | Briggs, D | 1C Watch: Dawler | McKenzie, W | Davison, D | Williams, K |
| Unit 1D | Halsey OT | | Howard, S | Wetzel, J | |
| Unit 1D | Baker | | Leazier, B | Barnett, B | |
| Unit 2A | CLOSED | | Howe, A | Moody, C | D. Lane |
| Unit 2A | CLOSED | | Edwards | Borck, M | Personal Lv. |
| Unit 2B | Keith (OT) | | | Heineman, C | |
| Unit 2B | Burris, A $ | | Milner, N | Eagle, L | |
| Unit 2C | Spicer, B | | Rittenhouse, M | Wolf, L | |
| Unit 2C | Lindsey, J | Deeaaur | Goodyk, J*** | Watson, B | Sick Lv. |
| Unit 2D | Milner | Dawler | Lipsky | Clarkson, N | |
| Unit 2D | Lipsky | Koch | Briggs, D | Gilland, E | |
| Unit 3A | CLOSED | | | Kallschmidt, M | |
| Unit 3A | CLOSED | | | Rook, N | |
| Unit 3B | Deegan | | | | |
| Unit 3B | Harrison, A | | | | |
| Unit 3C | Williams, T | | | | |
| Unit 3C | Davenport, J | | Resigned | | Ext Sick Lv |
| Unit 3D | Snelling, J | | Wilson | | |
| Unit 3D | Howe | | Heilshorn | | |
| Medical | Goodyk | | Estep | | |
| TPU | Leazier | | | | |
| TPU | Rittenhouse | | | | Other Leaves |
| TPU | Eltzroth, K | | | | Wadlington, W milt |
| North Util | W. Barrett 64 | In-Service | | | Luker - milt 8/1/22 |
| South Util | Seititz OT | Deems, W | Freeze List | | |
| East Util | McKenzie | | | | Lary BB + Mud |
| West Util | Emery, D | | | | |
| High Side Veh | Bakuzonis (OT) | | | | |
| Low Side Veh | Rucker (OT) | | | | |
| Front Entry | Branch | | | | TWL |
| Front Entry | CLOSED | | | | |
| Recreation | Bezue (OT) | | | | |
| Recreation | Edwards | | | | |
| 5 am - 1 pm | | Special Details | | SRT/STAR | |
| Control | Janiszewski, M* | | | | KEY |
| Control | Mowery | | RTWP | | !: SRT |
| Food Service | Tipton | | Bailey | | $: Crisis (CIT) |
| Food Service | Lai | | | | ^: ESA |
| | Total Posts: 44 | | | | |

Exhibit 1c "Roll Call"

30  40

| Shift Commander *Capt. Teague* | | 2nd Shift | Sunday December 5 2021 | Officers on Overtime __11__ |
|---|---|---|---|---|
| **Captain:** Teague 112 | | **Lieutenant:** Barrett 212! | **Lieutenant:** | |
| **Lieutenant:** Harrison 228S | | **Lieutenant:** Kriss 214 | **Lieutenant:** | |

| POST | OFFICER | On Grounds Total Posts: 42 | Relief | Off Grounds Good Days | Leaves |
|---|---|---|---|---|---|
| | | Added Post | Morehouse, M.*! | Kaufman, K. | Vacation Lv. |
| Unit 1A | Firman | RH REC: *Herzog (OT)* | Avery, E.*** | Cates, B. | Finley, T. |
| Unit 1A | Morris | | | Fulmer, P. | Robertson Jr, T. |
| Unit 1B | SHOSTAK (VF) | | Godby, R. | Epperson, F. | Mann, B. |
| Unit 1C | Wrightman | RH Esc: *Couzens* | Couzens, A.*** | Rumpler, E. | Henness 221! |
| Unit 1C | RUGGLER (OT) | | | Robinson, E. | *Lane - )5* |
| Unit 1D | BRIGGS (VF) | 3D ESC: *DAVENPORT* (VF) | Donthnier, B. | Reedy, M. | |
| Unit 1D | Foster, K. | | | Robinson, B.$ *J Cates* | |
| Unit 2A | CLOSED | | Huddleston, T.** | Dunn, K.$ | Personal Lv. |
| Unit 2A | CLOSED | PM Chol *Hichles* | Morris, A.*** | James, J. | |
| Unit 2B | Onien | *is cw: McIntosh* | | Cunningham, S. | |
| Unit 2B | Godby | | Loughman, A. | Miller, S. | |
| Unit 2C | Ewen | | | Starkey, B. | Sick Lv. |
| Unit 2C | Sommer | | Jones, J. | Calhoun, J!. | |
| Unit 2D | Lengefeld | | Davis, J. | Webb, R. | |
| Unit 2D | BAILER (OT) | | Ewen, T. | Zimmerman, D.$ | |
| Unit 3A | CLOSED | | Lengefeld, H. | Herzog, A. | |
| Unit 3A | CLOSED | | McIntosh, J. | O'Connor, K. | |
| Unit 3B | Ballard, C. | | Chambers, D. | Jones, A. | |
| Unit 3B | Saggus, J. | | Firman, A. | Wheeler, M | Military Lv. |
| Unit 3C | Collins, R.I | | Chevalier, E.** | | Winning, C. |
| Unit 3C | Anderson, F. | | | | Kasten, J. |
| Unit 3D | Austin | | Adams, C. | | Perry, S. |
| Unit 3D | CHambers | | Austin, L. | | |
| Unit 3DXTRA | Davis | | Sommer | | |
| Medical | Chevalier | | Ewen | | |
| TPU | Adams | On-Site Training | | | Other Leaves |
| TPU | Shinno, D. | Anderson, C.$ | | | Montgomery, J. |
| TPU | Hill, H. | | | | |
| North Util | Morehouse | | | | |
| South Util | CHAMBLIN (OT) | | | | |
| East Util | KOCH (VF) | | | | |
| West Util | Avery | | | | |
| High Side Veh | Kerns, D. | CTA | | | |
| Low Side Veh | B. CATES (OT) | | | | |
| Front Entry | Donthier | | | | |
| Front Entry | Closed | | | | TWL |
| Recreation | Long, T.$ | | | | |
| Recreation | J. Jones | | RTWP | | |
| 1 pm - 9 pm | 1 pm - 9 pm | | | | KEY |
| Control | WHITE (OT) | | | | !: SRT |
| Control | ENGLEHARD (OT) | | | | $: C.I.T. |
| Food Service | Weybright, J. | | | | *** Female |
| Food Service | Sedlitz, M.*** | | | | |

J. Jones late for work

Shinno late for work

(34)

Exhibit 1d

**Shift Commander** CPT Ab~~~  **1st Shift**  Monday, Dec 06, 2021  Officers on Overtime __2__

Lieutenant: S Vetere 216  Supervisor VAC

Captain: D Agee 120
Lieutenant: T. Tatman 230
Lieutenant: D. Lane 211 (7-3)

| POST | OFFICER | Added Post | Relief | Good Days | Vacation Lv. |
|---|---|---|---|---|---|
| | | On Grounds 9 | | Off Grounds | |
| | | | | Good Days | Leaves |
| Unit 1A | Pannunzio, K*** | 3DX :Burke, D $ | Branch, K | Hewitt, V | Vacation Lv. |
| Unit 1A | Wells | 3D Escort: CLOSED | Moore | Gilland, E | Williams, K ! |
| Unit 1B | Shostak, R | TPU Rec Util: Closed | Wells | Ross, C | Tipton, D*** |
| Unit 1C | Crawford, J $ | | Lambe, D | Kallschmidt, M | Lail, S*** |
| Unit 1C | Briggs, D | IC Work: Landis | McKenzie, W | Davison, D | Spicer, B |
| Unit 1D | Moore C | | Howard | Wolf, L | |
| Unit 1D | Ibezue VP | | Howe, A | McDonough, A*** | |
| Unit 2A | CLOSED | Edwards | Wadlington, W | Milner, N | |
| Unit 2A | CLOSED | | Dauber B | Heineman, C | Personal Lv. |
| Unit 2B | Mowery | | Kocht, K | Deems, W | |
| Unit 2B | Burns | | Baker, Sam | Hoffer, C | |
| Unit 2C | Baker | | | Leazier, B | |
| Unit 2C | Lindsey, J | | | Snelling, J | Sick Lv. |
| Unit 2D | Edwards | | | Watson, B | |
| Unit 2D | Carpenter, J | | | Heilshorn, O*** | |
| Unit 3A | CLOSED | | | Rittenhouse, M | |
| Unit 3A | CLOSED | | | Rook, N | |
| Unit 3B | Wadlington | | Resigned Wilson | Deegan, J | |
| Unit 3B | Harrison, A | | | Lipsky, L | |
| Unit 3C | Davenport, J | | | | Ext Sick Lv |
| Unit 3C | Williams, T | | | | |
| Unit 3D | Howard | | | | |
| Unit 3D | Branch | | | | |
| Medical | Borck, M | | | | |
| TPU | Eltzroth, K | | | | Other Leaves |
| TPU | Ross | | | | Luker - milt 8/1/22 |
| TPU | Howe | | | | Lamb - milt |
| North Util | Rawler | | | InService | |
| South Util | Brennan, R $ | | | Goodyk, J*** | |
| East Util | McKenzie | | | Haineman (et) | |
| West Util | Emery, D | | | Snelling (ot) | |
| High Side Veh | Jones, D | | Freeze List | InS.Instruct. | |
| Low Side Veh | Eagle, L*** | | | Wetzalel | |
| Front Entry | Closed | | | | TWL |
| Front Entry | Bakazonis IOT | | | | |
| Recreation | Barnett, B $ | | | SRT/STAR | |
| Recreation | Clarkson, N | | | Leazier, B | |
| | 5 am - 1 pm | Special Details | RTWP | | |
| Control | Wenzel | Landis - Orientation | Landis, M 1D | | KEY |
| Control | Janiszewski, M* | | Bailey | | I: SRT |
| Food Service | Koch | | | | $: Crisis (CIT) |
| Food Service | Barrett, C. | | | | ^: ESA |
| | Total Posts: 44 | | | | |

Exhibit 1e "Rollcall"

# 90

| POST | OFFICER | On Grounds | | Off Grounds | |
|---|---|---|---|---|---|
| **Shift Commander** GM 53 | | | **2nd Shift** | **Monday December 6 2021** | **Officers on Overtime** 9 |
| Captain: | Teague 112 | Lieutenant: Harrison 228$ | | Lieutenant: | Kriss 214 |
| Captain: | | Lieutenant: | | Lieutenant: | |
| | | | | | |
| | | | | | |
| | | **On Grounds** | | **Off Grounds** | |
| | | Total Posts: 42 | Relief | Good Days | Leaves |
| Unit 1A | Fulmer, P. | Added Post | Morehouse, M.*** | Cunningham, | Vacation Lv. |
| Unit 1A | Epperson, F. | RH REC: CLOSED | Avery, E.*** | Miller, S. | |
| Unit 1B | Dorsania | | | Calhoun, J. ! | Robertson Jr, T. |
| Unit 1C | CRAWFORD (VF) | RH Esc: Morehouse | Godby, R. | Webb, R. | Mann, B. |
| Unit 1C | BRIGGS (VF) | | Conthnier, B | Zimmerman, | Henness 221! |
| Unit 1D | ELTZROTH (VF) | 3D ESC: Huddleston | | Herzog, A. | Wrybright R. |
| Unit 1D | Foster, K. | | Genzens, A.*** | O'Connor, K. | Starkey |
| Unit 2A | CLOSED | 1c whole! Cates | | Jones, A. | Huddleston - 2nd vac 0A |
| Unit 2A | CLOSED | | | Wheeler, M. | Personal Lv. |
| Unit 2B | Godby | | Morris, A.*** | Sedlitz, M.*** | |
| Unit 2B | Sommer | | Loughman, A. | Edwards, G. | |
| Unit 2C | Meras | | | Finley, T. | |
| Unit 2C | Ewen | | Jones, J. | Godby, R. | Sick Lv. |
| Unit 2D | Leguatold | | Davis, J. | Lane, C. | |
| Unit 2D | RAILER (VF) | | Ewen, T. | Chevalier, E. | |
| Unit 3A | CLOSED | | Lengefeld, H. | Quinn, A. | |
| Unit 3A | CLOSED | | McIntosh, J. | Adams, C. | |
| Unit 3B | Ballard, C. | | | Austin, L. | |
| Unit 3B | Mann's | | Sommer | Orum | |
| Unit 3C | Collins, R.! | | | Timman | Military Lv. |
| Unit 3C | Anderson, F. | | | | Winning, C. |
| Unit 3D | McIntosh | | | | Kasten, J. |
| Unit 3D | Davis | | | | Perry, S. |
| Unit 3DXTRA | Cousins | | | | |
| Medical | James, J. | | | | Other Leaves |
| TPU | Shinno, D. | On-Site Training | | | |
| TPU | Hill, H. | Robinson, E. | CJM | | |
| TPU | LT. LANE (OT) | | Sergts | | |
| North Util | EDWARDS (VF) | | | | |
| South Util | Dunn, K.$ | | | | |
| East Util | CARPENTER (VF) | | | | |
| West Util | Avery | | | | |
| High Side Veh | Kerns, D. | | | | |
| Low Side Veh | Cates, B. | CTA | | | |
| Front Entry | Kaufman, K. | Anderson - HU? | RTWP | | |
| Front Entry | DOWLER (VF) | | Cates, J.-1D | | TWL |
| Recreation | Long, T.$ | | | | |
| Recreation | Knick, J. | | | | |
| 1 pm - 9 pm | 1 pm - 9 pm | | | | KEY |
| Control | Robinson, B.S | | | | !: SRT |
| Control | WETZEL (VF) | | | | $: C.I.T. |
| Food Service | Loughman | | | | *** Female |
| Food Service | O- Jones | | | | |

Exhibit 1 F

"Roll Call"

EM 33

| Item# WCI122T000220 | Housing: AZ18LA | |
|---|---|---|
| ID#: a730633 | Name:WOODS,FRANKLIN | |
| Form:Appeal | Subject:Deputy Warden Administration | Description:Other |
| Urgent:No | Time left:n/a | Status:Closed |

## Original Form

1 of 2

This is in regards to the Aramark isssue where we were serve beans from the trash can and the aramark worker has been relived of her duties.
Monday - Wednesday I had been having abnormal bowel movements , and this may be the very cause .
Please look into these issues for me .

Exhibit 2

## Communications / Case Actions

The following issue has been verified and addressed. Corrective actions have been taken.
You will need to complete a Health Service Request form to address your medical concerns.

Due to being incarcarated and to preserve my constitutional rights I must follow the proper procedure to exaust my remedies at this level.
This Is a very important issue and needs further action taken , This is not a isolated incident this type of behavior has been on going for years.
Thank you for your time and Cooporation I hope this does'nt result in any type of retalitory conduct on behalf of Atamark employees or from any Prison Officals.

Your grievance fails to meet the guidelines established in AR 5120-9-31 (The filing of the notification of grievance- step two).
Additional issues raised in the grievance that were not raised in the ICR will not be addressed in this disposition.
Therefore, your grievance is denied. This office will take no further action regarding this matter.

Information is being with held from us due to the Aramark situation , I would like the name of the Lt that was over he chow hall the night of 11/27/21.
We was subjected to cruel and unsusal punishment a violation of the 8th amendment, being feed out of a trash can is deliberate indifference to my heath and safety.
The adminastarion is contributory negigence

The office of the Chief Inspector is in receipt of your Appeal to the Chief Inspector. A thorough review of your appeal has been completed. Please be advised that the Inspector is reconsidering your complaint and will issue a supplemental disposition of grievance.
Based on this review, the decision rendered by the Inspector is hereby: Modified with an additional response required.
This office will take no further action on this matter at this time.

The Office of the Inspector of Institutional Services is in receipt of your grievance.
The grievance is being granted. The issues listed in your grievance were verified and are against policy and administrative rules. Appropriate corrective actions were taken to address the issue that occurred within food service.
As stated above your grievance is granted and this office will take no further action regarding this matter.

To be in compliance to the prison litigation reform act inmates proceeding with a 42 U.S.C 1983 muct first exhaust all administrative remedies.
Issues unresolved due to administration not releasing the names of the food sevice coordinator the violated the right of the inmates by serving beans from a contaminated trash can.
Inmated Woods has requested the names of the coordinator involved , the name of the Lieutenant that was working the chow hall on 11-27-21.
This information has yet to be released , in fact the inmates that files Health service request forms was retaliated against and placed on quarantine .
Unmated Woods is seeking redress for the deliberate indifference the Aramark employess and the staff at warren correction has shown him.
The staff is in violation of his eighth amendment right and is to be free from cruel and unusal pinishment.

34a

The action from Aramark and th estaff shows a complete disregauard for inmates health and saftey.
Thank you for your time .
Franklin Woods

No further action will be taken regarding the Supplemental Disposition of Grievance requested by this office as you have exhausted your appeal pursuant to administrative rule 5120-9-31. If you believe an injury or illness exist because of this claim, you should contact Medical Services at your institution for an appointment.

Exhibit 2

35

| Ref# WCI1221000396 | Housing:1A215LA | Date Created:12/04/2021 |
|---|---|---|
| ID#: a730633 | Name:WOODS,FRANKLIN | |
| Form:Kite | Subject:Food Service | Description:Food Service |
| Urgent:No | Time left:n/a | Status:Closed |

**Original Form**

Mr Welch ,
This is in rgards to the incident with former "ARAMARK" employee Mrs Woods retrieveing BEANS from a trash can and feeding them to unit 1A on Saturday November 27th ,can you please send me information of the specfic time stamp thats recorded on the surveilence footage.
Thank you for your cooporation.
God Bless

**Manual Fill-In**

Exhibit 2a

| | | |
|---|---|---|
| Item: WOI122100T929 | Housing: 1A215LA | Date Created: 12/16/2021 |
| ID#: a730633 | Name: WOODS, FRANKLIN | |
| Form: Appeal | Subject: Shift 1 Captain | Description: Other |
| Urgent: No | Time left: n/a | Status: Closed |

1 of 2

## Original Form

On Dec 05 2021 at approximately 6:45 am Lt Tateman entered into unit 1A and went to cell number 111 and 112 and advised the inmates if they went to medical for stomach pains they would be locked down due to covid symptoms.
Lt Tateman proceed ed and locked the whole block down.
When asked why inmates was being locked down Lt Tateman said because they inmates are on some "bullshit".
around 9:30 am 9 inmates was escorted to medical because the had been experencing diareah and stomach pains.
after the check up inmates was escorted back to the block and went on a 72 hour quantine , because of
" INFLUENZA " inmates was locked in there cell for over 72 hours ..
The inmates that filed informal complaints was targeted for exercising there right acordding to the PLRA.
These inmates have been subjected to cruel and unusal punishment which directly violates there eighth amendment.
these issues are unresolved and redress is sought for the damages done.
Thank you for your time and cooperation
Franklin Woods

## Communications / Case Actions

Multiple inmates were reporting symptoms consistent with the COVID-19 virus currently causing a worldwide pandemic. The unit was placed on quarantine status to slow the spread of the virus. Lt. Tatman was following my orders which were mandated by our medical policy which is in place to slow the spread of said virus.
Captain Agee

So you gave Lt Tatman orders to place unit 1A in quarantine status prior to being seen by medical ?
because as stated before in my original complaint at 630 am on sunday 12 -05-21 I was instructed that I was not able to have dayroom time until i was seen by medical ( per C.O. Cook) .
at 645 Lt Tatman tells the entire unit that these inmates are on some bullshit and are the reasons they are being placed on quarantine.
9 inmates went to see medical ver possible food posioning symptoms and never gave covid19 symptoms, as in sortness of breathe and no smell or taste , my symptoms was diareeha and stomachs pains .
Tatman said he would lock us down if we went to medical , and he proceeded with that threat , which is a violation of 5120-09-04(b) harrasment , inappropriate supervision.
there was inmates that went to medical earlier in the week and never was placed on quarantine .
so my medical records were relaesed with out my permission , and because I went to seek medical attention at the advise of Inspector Bullock , I was retaliated against.
The institution in in violation of my eighth admendment rights to be free from cruel and unusal punishment, and there is a deliberate indifference to my health and safety.
Medical had no right relasing my personnel medical records with my permission.
Administration had there mind made u to quarantine inmates the morning of 12-05-21 prior to being seen by medical.
Inmates was never checked for covid 19 , and no tests were ever run for food posioning.
Redress is sought for deliberate indifference, negligence , and violation on constitutional right .

The Office of the Inspector of Institutional Service is in receipt of your grievance. The grievance alleges on December 5, 2021, Lieutenant Tatman placed 1A on lock down due to COVID symptoms. The grievance alleges Lieutenant Tatman locked the unit down out of retaliation of inmates complaining of food poisoning.

Exhibit 2 b

37

RSI# WCI122100 1929 | Housing: 1A2 15LA | Date Created: 12/16/2021

2 OF 2

The following were reviewed to investigate your grievance:
ODRC policy 64-DCM-01
Administrative Rule 5120-9-31
Spoke with the Operations Deputy and Health Care Administrator.
While investigating your grievance this Inspector spoke with the Health Care Administrator. She advised medical had received a lot of complaints from 1A regarding the offender population related to COVID symptoms. The HCA and Deputy of Operations stated as a precautionary measure unit 1A was placed on quarantine status. Be advise WCI goal is to protect the health and safety of our population and staff. Furthermore, it's important to understand changes were designed to provide a safe environment for our population.
Based off the above there is no merit within your grievance. Your grievance is denied. This office will take no further action regarding this matter.

LT Tatman is clearly in violation of 64-DCM-01 and 5120-09-4 (B).
The reason set forth are all the symtoms given in the Heath sevice request forms , were at the advise from the Inspector himself.
All the compaints is from a direct incident to 11/27/21 Inspector and Lt Tatman knew about the complaints filed.
Which is why he came into 1A on he morning of the fifth of December 2021 and went to offender Nottingham and offender Rich cel and state if the go to medical he is locking the them down.
Officer Cook refused offender Woods from coming out of his cell at 630 am .
The minds of staff was already made up .
The offenders went to medical and was placed on a 72 hour quarantine, because the filed informal complaints of food posioning because they had been fed food that had been through away, in the trash can.
Administation knew about the complaints and knew that the HSR forms was related to that specfic incident .
The is a clear violation of the eighth amendent cruel and unusal punishment , debliberate indifference, to the health and saftey of the inmates , violation of the Adminstative rule 5120-09-04 (B) Inappropriate supervison and 64 -DCM- 01 ( Harrasment).

Affirmed.
The Office of the Chief Inspector has reviewed your grievance concerning a decision to "lock down" or medically isolate your dorm area on December 5, 2021. This was done due to a large number of the residents in this area exhibiting suspect signs and symptoms of either the Covid or Flu virus, both of which are highly contagious in a confined population.
Additionally, there was no release of your medical records to any unauthorized employee or other individual. You were also not provided information about other patients. With that said, you profess to know that nine people in your dorm had food poisoning without validation. If you are discussing actual individuals names, you yourself could be participating in the spread of confidential medical information depending on how you gained this information.
The involved staff were following CDC guidelines as well as state and federal recommendations. As in the community population, decisions are being made on an hourly basis since the entire Covid pandemic is something not experienced before in the past. There are no indications you have been treated with deliberate indifference or negligence by any staff member during this situation. Everything done and every decision made was an attempt to protect you and others in your environment. Please continue to follow all guidelines for which you have been educated as we continue to manage this difficult situation.
Karen Stanforth, Assistant Chief Inspector, Medical
Karen Stanforth, Assistant Chief Inspector, Medical

Exhibit 2 b

38

| Ref# WC122002729 | Housing: H2/H-JL-1 | |
|---|---|---|
| ID#: a730633 | Name:WOODS,FRANKLIN | |
| Form: Grievance Against the Inspector | Subject:Inspector of Institutional Services | Description:Violation of Administrative Rule |
| Urgent:No | Time left:n/a | Status:Closed |

## Original Form

A.R 5120-9-29 (D)

States The inspector should conduct regular inspection of institutional services and serve as a liason between the inmate population and institutional personnel.

On 12-20-21 at 4:45 Inmate Woods was exciting the chow hall line and inspector Bullock ask if there was a "PROBLEM" Woods showed the inspector the tray or inproperly made noodles and Bullock stated to kite the dietian , Inmate Woods stated that is was the diet  it was that they was improperly preparded, and that was substituted from( parsley rice) .

Inspecotr bullock dismissed Woods by repeatedly saying "GOODBYE".

The inpestor at W.C .I is unapproachable and does not serve as a liason between inmates and adminstration, He has shown a complete disreguard from the health and well being of our 2500 calorie diet , he has been systematically Bias towards the inmates, during these complicated time for them .

Since 11-27-21 Inmates has been targeted for complaining about Aramark , and Adminstration.

Inspector Bullock is in direct violation of A.R 5120-9-29 (D)

## Communications / Case Actions

Mr. Woods, upon review of your complaint and administrative rule 5120-9-31, I find the requirement to show the inspector of institutional services was personally and knowingly involved in a violation of law, rule or policy, or personally and knowingly approved or condoned such a violation has not been met.

Since you were unable to resolve your concern verbally, I recommend filing an Informal Complaint on the quality of food in the dinning hall. In accordance with administrative rule 5120-9-31, if you are not satisfied with an ICR response or a response is not forthcoming, you may escalate the ICR to a grievance for further review and response. Likewise, if you are not satisfied with a grievance response or a response is not forthcoming, you may escalate your grievance to an appeal with my office at OSC for further review and response.

Accordingly, pursuant to administrative rule 5120-9-31, this grievance is DENIED. This office will take no further action.

Exhibit 2c

39

| ID#: a730633 | Name:WOODS,FRANKLIN | |
|---|---|---|
| Form:Kite | Subject:Inspector | Description:Inspector |
| Urgent:No | Time left:n/a | Status:Closed |

## Original Form

This is in regard to the previous issues we had with aramark , I had requested the names of the personnel that over saw the the chow hall the evening of 11/27/21.

I have the understanding that Mrs Woods was the name of the food service coordinator the was relieved of her duties and walked out due to Serving Beans from the Trash can, also I would like the name of the Lt and correction officers that was in the chow hall that night.

I respectfully request this information pursuant to the O.R.C 149.43 public records request, IM only requesting the names of the individuals involved NOT ADDRESS only names.

Respectfully
Franklin Woods

## Communications / Case Actions

Be advise the Institutional Inspector does not process public records request.

Exhibit 2d

40

| Ref# WCI0122000939 | Housing:1A215LA | Date Created:01/10/2022 |
|---|---|---|
| ID#: a730633 | Name:WOODS,FRANKLIN | |
| Form:Kite | Subject:Inspector | Description:Inspector |
| Urgent:No | Time left:n/a | Status:Closed |

## Original Form

Mr Bullock ,

Im sure by now your aware of the mass ride out from unit 1A .

I would like to request a legal box due to the excess legal materials I have obtained , since Im currently fighting an( open ) case .

I currenty have an open Habeas Corpus Case ,and half of my box takes up trial transcripts , and the other half is school books from me being currently enrolled in an outside BLACKSTONE PARALEGAL STUDIES, so could you please authorize a legal box so i can take my legal materials.

Respectfully

Franklin Woods

## Communications / Case Actions

The following process (below) is in place for a legal box.  Do to you transferring within the next two days, you did not take the necessary steps to obtain an approved legal box from this office.  You are being encouraged to adjust your property so that you are 2.4 compliant.

• General and personal legal materials shall be maintained within the inmate's overall 2.4 cubic feet property limitation as provided in Administrative Rule 5120-9-33, Packages and Property Restriction, and applicable institutional policies. General legal materials are subject to the general possession limits applicable to books, law books, stationery, or writing materials, etc. as provided in Administrative Rule 5120-9-33, Packages and Property Restrictions, and Department Policy 61-PRP-01, Offender Personal Property, and applicable institutional rules and policies.

• Inmates are required to keep personal legal materials organized by title and case number. Each document associated with a particular case shall be identified with at least the correct case number.

• Inmates may be required to produce a list of their active cases any time such materials are packed up and placed in storage for any reason. This list shall identify each active case by title of the case, case number, and the court in which the action is pending.

## Manual Fill-In

Exhibit 2e

41 49

Page: 1

| Ref# WCI0122000952 | Housing:1A215LA | Date Created:01/10/2022 |
|---|---|---|
| ID#: a730633 | Name:WOODS,FRANKLIN | |
| Form:Kite | Subject:Inspector | Description:Inspector |
| Urgent:No | Time left:n/a | Status:Closed |

## Original Form

Mr Bullock,
here is the following cases that Im still litigating.
FRANKLIN WOODS
V
WARDEN
warren correctional insitution
case number
1:20-cv-618
HABEAS CORPUS
FRANKLIN WOODS
V
MELODY LINTON
CASE NUMBER
2014-PT-71
Mr Bullock , by all due resepct I need this legal box , I've sent the approriate cse numbers to the open caes that im still in the process of continous litigation, I hope that your reasoning for denying me the proper legal is in any way retaliation for or differences through out this last month , considering that in still waiting on my copies of the informal complaints I asked about on 1-3-22 and you said I would get them through the institutional mail and I still havent received them .
Mr Bullock I need to transfer my legal materials with me , and I was advised that you also approved 2 legal boxes today for offeners that is transfering.
Respectfully
Franklin Woods

## Communications / Case Actions

Previously answered on reference number WCI0122000939.

## Manual Fill-In

Exhibit 2f

42

Page: 1

| Ref# WCI0122000992 | Housing:1A215LA | Date Created:01/11/2022 | |
|---|---|---|---|
| ID#: a730633 | Name:WOODS,FRANKLIN | | |
| Form:Kite | Subject:Deputy Warden Operations | Description:Deputy Warden Operations | |
| Urgent:No | Time left:n/a | Status:Closed | |

## Original Form

This is in regards to the mass ride out in 1A , I requested a legal box yesterday and was denied .
I have 2 open cases and explained this to the inspector, and he is being uncooperating, all this is due to the prior encounter we have had , and the informal complaints Ive filed for harrassment and inappropriate supervision.
O.D.R.C policy 59-LEG-01 provides an exception to personal property restriction and llows an inmate to request extra personal storage space to accomodaye his personal legal files if he accumalates more than can be stored in the standard 2.4 cubic meter footlocker.
however , the policy only allows extra storage space to accomodate excess legal files for cases that are still active and requores the inmate to provide a list of active cases.

## Communications / Case Actions

Sir, the inspector does not report to the DWO, the inspector is responsible for the legal mail storage. I would suggest that you work and identify what material you need now.
thank you
DL

## Manual Fill-In

Exhibit 2 g

43

| Ref# WCI0122001022 | Housing:1A215LA | Date Created:01/11/2022 |
|---|---|---|
| ID#: a730633 | Name:WOODS,FRANKLIN | |
| Form:Kite | Subject:Warden | Description:Warden |
| Urgent:No | Time left:n/a | Status:Closed |

Original Form

Mrs Wanza-Jackson,
Im sure your aware that unit 1A is moving ahaead with the mass ride out to CCI.
I have requested a legal box rom your inspector and to no avail , there has been no legal box provided to me.
I have informed Mr Bullock that O.D.R.C ploicy 59-LEG-01 , provides an exception to personal property restriction and allows an inmate to request extra storage space to accomodate more than can be stored in the standard 2.4 box.
However I am aware the policy only allows extra storage space to acccomodate excess legal files for cases that are still active and requires the inmate to provide a list of cases .
I have provided the list of cases to Inspector Bullock and he has still denied me of the extra legal box.
Franklin Woods
v
Warden
Wanza-Jackson
1:20-cv-618
HABEAS CORPUS
this is an open case and im a pro se litigant and need my legal materials .
I feel totally violated and have been subjected to the most unsual behavior from staff and adminstration, and it seems like the behavior continues all the way out the door.
I have no chocie to belevie this behavior is a direct result from from greviences and informal complant filed because inmates has been subjected to food posioning because they was fed food out of a trash can and when myself and the inmates went to medical we was pinished , that day 12-06-21 whwen we seen you we told you what was happening .
all im asking for is a legal box to transfer with me
Franklin Woods
PROSE

Communications / Case Actions

This issue has been resolved by the UM and IIS.

Manual Fill-In

Exhibit 2 h

44

STATE OF OHIO )
                  )SS:
ROSS COUNTY )

I, state that the following is true to the best of my knowledge and belief and against the penalty of perjury:

I, Douglas Thompson       , am currently incarcerated at Chillicothe Correctional Institution. On November 27, 2021, I was housed at the Warren Correctional Institution, In Cell "113". On the above evening in question, I ate the scheduled dinner in the chow hall. Within The next few days, I experienced stomach pains and irregular bowel movements. I kited the Medical Department and the Institution Inspector, explained to him what happened. I notified them, stated that I wasn't feeling to well, it most likely was due to the fact that we were fed beans out of the trash, that were contaminated. At one point, those beans were garbage. Not even fit for a dog. An inmate blew the whistle, he was punished for doing so. These actions were actually caught on camera, as I'm sure your aware of. I was advised to fill out an HEALTH SERVICE REQUEST FORM, which I did.

On Sunday December 05, 2021 Lieutenant Tatman entered into our unit, which was "1A". At the time I was being housed there. He started yelling about the inmates being on some "bullshit", because we chose to speak up due to concerns over our health. Lieutenant Tatman aggressively proceeded to make his rounds through-out our unit, yelling, threatening to lock the whole unit down if inmates went to medical.

Exhibit 3a

45

Lieutenant Tatman and the Administration at W.C.I are known for abusing inmates, Using Excessive Force. Lieutenant Tatman repeatedly screamed, threatened, "is this what you guys really want to do?".

Lieutenant Tatman then went to cell 111 (inmate Andy Nottingham) and cell 112 (inmate Rich) and threatened the inmates. Stating that he was locking them down under covid-19 protocols. Which he really did, without any grounds. We all stated that our sickness wasn't from covid-19, it was from the food we were fed out of the trash, as if were not even human. We still have the right to be treated accordingly, even though we messed up and broke the law. We were all currently awaiting transfer because we earned the right, by staying out of trouble.

The Lt. said, what more do you want us to do, we already fired the dumb "bitch". I could hear the inmates tell the Lt., that all they wanted was to be checked out to see if they had food poisoning. He then, locked the unit down because the inmates filed a HEALTH SERVICE REQUEST FORM went to see the Dr.

Although I filed a HEALTH SERVICE REQUEST FORM and wrote an electronic kite and informal complaint, I did not follow through with seeking medical attention. Out of the fear of retaliation from Lieutenant Tatman and the W.C.I administration.

At the time, I was a level two (2), medium security and was awaiting my transfer to London Correctional Institution, as stated before, I did not want the administration to delay my transfer or place me in Segregation. That would have raised my security back to a level 3 and It would have prevented me from transferring to my current institution.

Exhibit 3a

.Douglas Thompson

Douglas Thompson

SWORN AND SUBSCRIBED BEFORE ME PERSONALLY ON THIS, __4th__ DAY
OF ~~JULY~~ November (CM) 2022.

Exhibit 39

Notary Public

My Commission expires on 1/19/2027



CHERRI MARSHALL
NOTARY PUBLIC - OHIO
MY COMMISSION EXPIRES 01-19-2

47

## AFFIDAVIT OF JEREMY JOHNSON

STATE OF OHIO)
          ) SS:
ROSS COUNTY )

I, Jeremy Johnson , certify that the below information is true to the best of my knowledge and belief and under the penalty of perjury:

On November 27, 2021, I went to eat evening chow in the cafeteria after the Ohio State / Michigan game I arrived in the dining hall, got my tray from the line by Aramark and its employees, sat down and ate the meal which mainly consisted of beans which I think it was burrito filling, I went back to my unit. A few hours later I started to feel sick. I didn't think much of it until the next morning when I started throwing up and had diarrhea.

I sent in a paper Medical request form to be seen by Medical. I wrote on it "I don't know what's wrong I ate dinner a few days ago and I have been extremely sick". I turned in the request. During the same time, several inmates in my unit was experiencing the same thing, but I heard they was food poisoned, so I thought to myself I must have been food poisoned also.

I Immediately Kited Inspector Bullock, he stated I needed to contact medical even though I had already and they had done nothing. I decided to file another request to be seen by medical, thinking maybe they are now aware of me being food poisoned the would rush to see me.

I explained that I was worse than I had been days prior instead of getting better. I specifically indicated to medical in the kite that I believed I had been poisoned (sickened) by eating food served to me by Aramark.

Medical did not send for me to be seen even though they were fully aware of what I was experiencing as by this time I had wrote around I think two request to be seen it could have been three but I certainly placed them on notice that I needed help.

Sunday on December 05, 2021 at 6:30 am Lieutenant Tatman entered Unit 1-A and began screaming, yelling that he has a bunch of inmates in here on some "bull-shit" who are acting like "bitches" and yelled, "I'm locking the entire Unit down, because we fired the bitch what else do you want us to do?" He continued to yell, "Your sick so what... sleep it the fuck off" He can be seen on the camera's in 1-A walking around ranting. Lt. Tatman, went around to the cells in 1-A that requested to be seen by Medical, trying to intimidate me and the other inmates from going to Medical or further reporting what we were experiencing, he was saying "shit rolls downhill." If my staff gets in trouble over that Aramark bitch I will make your life hell. If you go to medical your ass is locked the fuck down" "it's your choice!" This can be seen by the cameras and recalled by the other inmates. Lt. Tatman, threats of lock down, and making our life hell resulted in me being intimidated into not going to Medical for fear of retaliation, even though I was sick. Lt. Tatman, stated "I've seen what each of you mother-fuckers wrote to medical".

Exhibit 3

48

At approximately 9:30 am I witnessed (9) nine other inmates being escorted to medical by C.O. Ms. Penunzio, I was wondering and asking why wasn't I called for to go see medical, but after Lt. Tatman came into the Unit I got really discouraged and was waiting until the other inmates came back thinking they would get me next.

After the inmates returned to the unit they were quarantined and Ms. Penunzio stated medical told them they had Covid-19.

Medical however, never did send for me and after seeing the inmates being punished I stopped requesting to be seen out of fear I was never quarantined or punished only the initial (9) people that went to medical was quarantined and punished.

Between December 09, 2021- January 10, 2022 Lt. "Luneke", held a "town hall meeting" where he stated that inmates weren't transferring institutions for at least 8 weeks, doors were to remain closed, and he wasn't answering any questions regarding "Aramark". The attendees of that meeting were "Back", Captain; "Williams", Unit Manager; "Macintosh", Chief Unit Manager; "Wells", C.O. and several other C. O's. Also during this time frame Lt. Jane Doe known as" Health-Care Administrator and or Employee for Medical" came into our unit and retrieved medical paper work held at the desk area of the unit which contained inmate's information during their quarantine status. Morris C.O. was working second shift when this occurred, it was approximately 4:30 pm- 9:00 pm.

I was never locked down, my questions were answered I was given recreation, and was able to move about the same as I always have. I was able to attend recreation, Church programming when it was available. My mail was never restricted, and I had a working J-pay the entirety of the weeks this was going on with the other inmates.

I have experienced extreme emotional distress over this matter Aramark and O.D.R.C has broken the trust I had in them to make sure I was treated humanly and with some dignity. I have heightened anxiety levels due to having to continue to eat the food served by Aramark, and its employees. Causing me to have a regular loss of appetite requiring me to force eat to avoid becoming ill or malnourished this is reoccurring behavior from both Aramark and O.D.R.C they don't care about the health and welfare of incarcerated adults.

Exhibit 3

_Jeremy Johnson_
Jeremy Johnson

SWORN AND SUBSCRIBED BEFORE ME PERSONALLY ON THIS __17th__ DAY OF

March 20 23.

_Cherri Marshall_
Notary Public

My commission expires on __1/19/2027__

CHERRI MARSHALL
NOTARY PUBLIC - OHIO
MY COMMISSION EXPIRES 01-19-27

## PROOF OF SERVICE

I certify that a true copy of this complaint has been sent by Regular U.S. mail to the below listed Defendant's:

OHIO DEPARTMENT OF
REHABILITATION AND
CORRECTION
4545 Fisher Rd.
Columbus Ohio, 45321

Wanza Mitchell –Jackson
5787 State route 63
Lebanon Ohio, 45036

Isaac Bullock
5787 State route 63
Lebanon Ohio, 45036

Sgt. J. Maggard
5787 State route 63
Lebanon Ohio, 45036

Unit Manager
" Steven Williams"
5787 State route 63
Lebanon Ohio, 45036

"Case Manager Kearns"
5787 State route 63
Lebanon Ohio, 45036

Karen Stanforth
4545 Fisher Rd.,
Columbus Ohio, 45321.

David Agee
5787 State Route 63
Lebanon Ohio 45036

Aramark "supervisor"
5787 State route 63
Lebanon Ohio, 45036

Lt. Tim Tatman
5787 State route 63
Lebanon Ohio, 45036

"Lt David Sandridge "
5787 State route 63
Lebanon Ohio, 45036

John Doe known as
"C.O Koch",
5787 State route 63
Lebanon Ohio, 45036

"C.O John Wells"
5787 State route 63
Lebanon Ohio, 45036

"C.O Ms. Sedlitz"
5787 State route 63
Lebanon Ohio, 45036

Dr. William Harlan
5787 State route 63
Lebanon Ohio, 45036

Meredyth McLaughlin
"Health Care Administrator"
5787 State route 63
Lebanon Ohio, 45036

" Nurse Practitioner "Sky Murray"
5787 State route 63
Lebanon Ohio, 45036

" Captain Jason Back"
5787 State route 63
Lebanon Ohio, 45036

C.O Ms. Kimberly Panunzio"
5787 State route 63
Lebanon Ohio, 45036

Deputy Warden
Douglas Luneke
5787 State route 63
Lebanon Ohio, 45036

Dr. Raymond Corbett
5787 State route 63
Lebanon Ohio, 45036

" Unit Manager
Rodney Machintosh"
5787 State Route 63
Lebanon Ohio, 45036

Aramark Correctional Services LLC
2400 Market Street
Philadelphia, Pa 19103-3041

Deputy Warden
Robert Welch
5787 State Route 63
Lebanon Ohio, 45036

" Nurse Practitioner "Rachel Allen"
5787 State route 63
Lebanon Ohio, 45036

Aramark manager "Ms. Woods"
2400 Market Street
Philadelphia Pa 19103-3041

C.O Larry Farmer
5787 State Route 63
Lebanon Ohio, 45036

C.O Fredrick Epperson
5787 State Route 63
Lebanon Ohio, 45036

Lt. Kayla Stebleton
5787 State Route 63
Lebanon Ohio, 45036

And electronically filed both on this ___ day of October 2023.

Franklin Woods
Inmate No.730633
15802 State Route 104 N
Chillicothe, Ohio 45601

PLAINTIFF-PRO SE.

50

## **PROOF OF SERVICE**

I certify that a true copy of this Motion to Alter or Amend Judgement has been sent by Regular U.S. Mail and electrically filed on April 11th 2025 to counsels Kristen L. Wendell 600 Superior Avenue East, Fifth Third Center, Suite 2330, Cleveland Ohio, 44114; Matthew P. Convery, Marcy Vonderwell at 30 East Broad Street, Columbus, Ohio 43215. for the below listed Defendant's:

OHIO DEPARTMENT OF
REHABILITATION AND
CORRECTION
4545 Fisher Rd.
Columbus Ohio, 43228

James Maggard
4204 Pennyroyal Road
Lebanon Ohio, 45036

Karen Stanforth
4545 Fisher Rd.,
Columbus Ohio, 43228

Timothy Tatman
5787 State route 63
Lebanon Ohio, 45036

Melissa Sedlitz
5787 State route 63
Lebanon Ohio, 45036

Meredyth McLaughlin-Brewer
"Health Care Administrator"
5787 State route 63
Lebanon Ohio, 45036

Kimberly Panunzio
329 Kenderton Trail
Dayton Ohio, 45430

Kayla Stebelton
1120 Eubois Rd
Carlisle, Ohio 45005

Wanza Mitchell –Jackson
317 Sharon Ct
Midletown Ohio, 45042

Steven Williams
5787 State route 63
Lebanon Ohio, 45036

David Agee
5787 State Route 63
Lebanon Ohio 45036

David Sandridge
5787 State route 63
Lebanon Ohio, 45036

Dr. William Harlan
5787 State route 63
Lebanon Ohio, 45036

Skye Murray
5787 State route 63
Lebanon Ohio, 45036

Douglas Luneke
3791 State route 63
Lebanon Ohio, 45036

Josephine Woods
1221 Avenue B
Port Allen, Louisiana 70767

Isaac Bullock
13665 State Route 729 south
Solon Ohio, 43155

Renee Meyers-Carnes
5787 State route 63
Lebanon Ohio, 45036

Tim Barttrum "President"
2400 Market Street
Philadelphia PA 19103-3041

Dr. Raymond Corbett
5787 State route 63
Lebanon Ohio, 45036

Robert Welch
415 Marley Road
Dayton Ohio, 45405

Aramark Correctional Services LLC
2400 Market Street
Philadelphia, Pa 19103-3041

Fredrick Epperson
5787 State Route 63
Lebanon Ohio, 45036

And electronically filed both on this 11 day of April 2025.

*Franklin Woods*

Franklin Woods
Inmate No. A730633
15802 State Route 104 N.
Chillicothe, Ohio 45601

**PLAINTIFF-PRO SE.**

51